No. 23-10062

---

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

CURTRINA MARTIN, individually and as Parent and
Next Friend of, G.W., a minor, and HILLIARD TOI CLIATT,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA, LAWRENCE GUERRA,
SIX UNKNOWN FBI AGENTS,

*Defendants-Appellees.*

---

On remand from the United States Supreme Court
Case No. 24-362

On appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:19-cv-04106

---

## Plaintiffs-Appellants' Supplemental Brief

Lisa C. Lambert
LAW OFFICE OF
LISA C. LAMBERT
245 N. Highland Ave.,
Suite 230-139
Atlanta, GA 30307

Jeffrey R. Filipovits
SPEARS & FILIPOVITS
315 W. Ponce de Leon Ave.,
Suite 865
Decatur, GA 30030

Zack Greenamyre
MITCHELL SHAPIRO
GREENAMYRE & FUNT
881 Piedmont Ave. NE
Atlanta, GA 30309

Patrick Jaicomo
  *Lead Counsel*
Anya Bidwell
Dylan Moore
Jared McClain
INSTITUTE FOR JUSTICE
901 N. Glebe Rd.,
Suite 900
Arlington, VA 22203
(703) 682-9320
pjaicomo@ij.org

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

The undersigned hereby certifies under Eleventh Circuit Rule 26.1-2 that the Certificates of Interested Persons filed with this Court on July 25, 2025 (C.A.Docs. 51, 52) are complete, and no additional interested persons need to be added at this time. He also certifies under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-3(b) that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

September 22, 2025

/s/ Patrick Jaicomo
*Counsel for Plaintiffs-Appellants*

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

In its August 12, 2025 Order inviting the parties to submit supplemental briefing (C.A.Doc. 53), the Court instructed the clerk to set this case for oral argument after briefing. Plaintiffs maintain that oral argument will assist the Court in addressing the issues presented after remand.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CITATIONS .................................................................................v

STATEMENT OF JURISDICTION.................................................................xii

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE CASE ........................................................................ 2

    I.    The Federal Tort Claims Act waives sovereign immunity for the negligent and wrongful acts of federal employees............................. 2

    II.    By an easily avoidable mistake, the FBI raided an innocent family's home. ................................................................................. 4

    III.    This Court granted the government sovereign immunity for the mistaken raid of Plaintiffs' home........................................................ 6

    IV.    The Supreme Court vacated this Court's judgment, instructing it to conduct a "careful reexamination of this case in the first instance." ............................................................................................ 9

STANDARD OF REVIEW ...........................................................................12

SUMMARY OF THE ARGUMENT ................................................................12

ARGUMENT.............................................................................................14

    I.    Negligent- and intentional-tort claims arising out of wrong-house raids are not barred by the discretionary-function exception. ............16

A. The discretionary-function exception protects the creation and implementation of regulatory policy from collateral attack. ........................................................19

 1. "Discretionary function" is a term of art inextricably tied to regulatory law. ...................................... 20

 2. Supreme Court caselaw demonstrates the necessary connection between a "discretionary function" and regulatory policy. ...........................................................26

B. Under *Gaubert*'s first prong, law-enforcement officers lack discretion to execute a search warrant at the wrong address...............................................................................30

C. Under *Gaubert*'s second prong, raiding the wrong house has no connection to public policy............................................34

 1. When there is no policy, the discretionary-function exception has nothing to shield. ....................................35

 2. As the government concedes, the discretionary-function exception does not immunize unconstitutional conduct. ..................................................... 40

 3. The discretionary-function exception does not immunize careless conduct. ..........................................46

II. Applying the discretionary-function exception to intentional-tort claims arising from a wrong-house raid is particularly inappropriate. ......................................................................................50

A. The law-enforcement proviso waives sovereign immunity for certain intentional torts that are necessarily unlawful. ....... 51

B. An all-encompassing interpretation of the discretionary-function exception would nullify the proviso...........................55

iii

C.    The historical context confirms that wrong-house raids are actionable under the FTCA. ...................................................57

III.    A private individual would be liable under Georgia law for the torts committed against Plaintiffs, and no defense in 28 U.S.C. § 2674 applies. . ...............................................................................59

CONCLUSION...............................................................................................61

CERTIFICATE OF COMPLIANCE.........................................................63

CERTIFICATE OF SERVICE....................................................................64

iv

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Babb v. Wilkie*,
   589 U.S. 399 (2020) ................................................................ 21, 24

*Berkovitz v. United States*,
   486 U.S. 531 (1988) ................................... 17, 18, 32, 34–35, 37–38, 46

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...........................................................................52

*Brownback v. King*,
   592 U.S. 209 (2021) ........................................................................... 2

*Caban v. United States*,
   671 F.2d 1230 (2d Cir. 1982) ...........................................................55

*Carlson v. Green*,
   446 U.S. 14 (1980) .................................................................. 4, 57–58

*Castro v. United States*,
   34 F.3d 106 (2d Cir. 1994) ................................................................33

*Cestonaro v. United States*,
   211 F.3d 749 (3d Cir. 2000) .............................................................. 48

*Cope v. Cope*,
   137 U.S. 682 (1891) ...........................................................................52

*Coulthurst v. United States*,
   214 F.3d 106 (2d Cir. 2000) ............................................................. 48

*Dalehite v. United States*,
   346 U.S. 15 (1953) ..................................................17, 20, 24–25, 27, 29, 37

*Dalia v. United States*,
   441 U.S. 238 (1979) ...........................................................................32

*Denson v. United States*,
574 F.3d 1318 (11th Cir. 2009) ........................................................ 9–10

*E. Air Lines, Inc. v. Union Tr. Co.*,
221 F.2d 62 (D.C. Cir. 1955) ................................................................ 47

*Feres v. United States*,
340 U.S. 135 (1950) .........................................................................2, 49

*Fischer v. United States*,
603 U.S. 480 (2024)............................................................................... 21

*Garcia v. United States*,
826 F.2d 806 (9th Cir. 1987) ................................................................55

*Gonzalez v. United States*,
814 F.3d 1022 (9th Cir. 2016)............................................................. 48

*Gray v. Bell*,
712 F.2d 490 (D.C. Cir. 1983) ..............................................................55

*Haile v. Pittman*,
389 S.E.2d 564 (Ga. Ct. App. 1989)....................................................53

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ...................................................................... 41–42

*Hartsfield v. Lemacks*,
50 F.3d 950 (11th Cir. 1995) ................................................... 33, 45, 46

*\*Hatahley v. United States*,
351 U.S. 173 (1956) ..............................................................30, 36–38, 40, 50

*Hendricks v. S. Bell Tel. & Tel. Co.*,
387 S.E.2d 593 (Ga. Ct. App. 1989)....................................................59

*Indian Towing Co. v. United States*,
350 U.S. 61 (1955) ............................................... 29–30, 36, 38, 42, 47

*Jones v. UPS Ground Freight*,
  683 F.3d 1283 (11th Cir. 2012)............................................................12

*Kendall v. Stokes*,
  44 U.S. (3 How.) 87 (1845)............................................................ 24

*Kiehn v. United States*,
  984 F.2d 1100 (10th Cir. 1993) ............................................ 48

*Kordash v. United States*,
  51 F.4th 1289 (11th Cir. 2022) ....................................................8, 10

*Limone v. United States*,
  579 F.3d 79 (1st Cir. 2009) ............................................ 40

*Loumiet v. United States*,
  828 F.3d 935 (D.C. Cir. 2016) ............................................ 43, 55

*Lucia v. SEC*,
  585 U.S. 237 (2018)............................................................23

*Lyttle v. United States*,
  867 F. Supp. 2d 1256 (M.D. Ga. 2012) ..........................................59

*Marron v. United States*,
  275 U.S. 192 (1927) ............................................ 31

*Martin v. United States*,
  145 S. Ct. 1689 (2025)
  ........................1, 4–6, 9–12, 14, 16, 19, 26, 40–42, 44, 46, 49–51, 55–56, 57–59, 61

*Maryland v. Garrison*,
  480 U.S. 79 (1987)............................................................ 33, 44

*Mass. Bonding & Ins. Co. v. United States*,
  352 U.S. 128 (1956) ............................................................49

*Mesa v. United States*,
  123 F.3d 1435 (11th Cir. 1997)............................................ 16, 33

*Meyers & Meyers, Inc. v. USPS*,
   527 F.2d 1252 (2d Cir. 1975)............................................................ 40

*Millbrook v. United States*,
   569 U.S. 50 (2013)................................................................... 52, 55

*Molzof v. United States*,
   502 U.S. 301 (1992).....................................................................25

*Nguyen v. United States*,
   556 F.3d 1244 (11th Cir. 2009) ...............................................6, 10, 57

*Palay v. United States*,
   349 F.3d 418 (7th Cir. 2003)........................................................ 48

*Payton v. New York*,
   445 U.S. 573 (1980) ................................................................... 44

*Pooler v. United States*,
   787 F.2d 868 (3d Cir. 1986).........................................................55

*Rayonier Inc. v. United States*,
   352 U.S. 315 (1957).....................................................................47

*Rich v. United States*,
   811 F.3d 140 (4th Cir. 2015) ........................................................ 48

*Richards v. United States*,
   369 U.S. 1 (1962).......................................................................16

*Sheridan v. United States*,
   487 U.S. 392 (1988).....................................................................54

*Shivers v. United States*,
   1 F.4th 924 (11th Cir. 2021)..................................9, 11, 16, 26, 40, 56

*State Farm Mut. Auto. Ins. Co. v. Spangler*,
   64 F.4th 1173 (11th Cir. 2023) .......................................................12

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) .................................................................. 22

*Torres-Estrada v. Cases*,
88 F.4th 14 (1st Cir. 2023)..................................................... 43, 55

*Union Tr. Co. v. E. Air Lines, Inc.*,
350 U.S. 907 (1955) ....................................................................47

*United States v. Gaubert*,
499 U.S. 315 (1991)
.........................3, 11, 13, 15–16, 18, 24, 27–28, 30, 32–35, 37, 39, 41, 43, 47, 56, 58

*United States v. Union Tr. Co.*,
350 U.S. 907 (1955) ............................................................... 36, 47

*United States v. Varig Airlines*,
467 U.S. 797 (1984) .......................................17, 26, 28, 35, 37, 40, 49

*United States v. Yellow Cab Co.*,
340 U.S. 543 (1951) ....................................................................49

*Utah v. Strieff*,
579 U.S. 232 (2016)....................................................................33

*Villafranca v. United States*,
587 F.3d 257 (5th Cir. 2009)..........................................................61

*Westfall v. Erwin*,
484 U.S. 292 (1988) .................................................................30, 60

*Wilbur v. United States*,
281 U.S. 206 (1930)................................................................... 24

*Willis v. Boyd*,
993 F.3d 545 (8th Cir. 2021)........................................................ 48

*Wyatt* v. Cole,
504 U.S. 158 (1992) ................................................................. 42

ix

*Xi v. Haugen*,
  68 F.4th 824 (3d Cir. 2023) .................................................... 19, 40,42–43, 50, 55

## Statutory & Constitutional Provisions

5 U.S.C. § 554(d)(2) ................................................................................23

5 U.S.C. § 701(a)(2)................................................................................25

28 U.S.C. § 1346(b)(1) ........................................................................ 3, 53

28 U.S.C. § 2674........................................................................1, 16, 42, 59–61

28 U.S.C. § 2679........................................................................... 60

28 U.S.C. § 2680(a) .........................................................1, 3, 6, 17, 20–23

28 U.S.C. § 2680(h) ........................................................... 3, 41, 51–52

Administrative Procedure Act,
  Pub. L. 79-404, 60 Stat. 237 (1946).......................................................23

Ga. Code Ann. § 51-1-13................................................................53

Ga. Code Ann. § 51-1-14 ...............................................................53

Ga. Code Ann. § 51-7-1 .................................................................53

Ga. Code Ann. § 51-7-20................................................................53

Ga. Code Ann. § 51-7-40................................................................53

Ga. Code Ann. § 51-7-81 ...............................................................53

Reorganization Act of 1945,
  Pub. L. 79-263, 59 Stat. 613 (1945).......................................................23

U.S. Const. amend. IV ...............................................................31

## Rules

Fed. R. Civ. P. 56(a)................................................................12

Fed. R. Crim. P. 41(e)(2)(A) ............................................................... 31

**Other Authorities**

*Black's Law Dictionary* (3d ed. 1933) ...............................................22, 24

Cornelius J. Peck, *The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception*, 31 Wash. L. Rev. & State Bar J. 207 (1956) ......................................................................................26, 28

Gregory C. Sisk, *Immunity for Imaginary Policy in Tort Claims Against the Federal Government*, 100 Notre Dame L. Rev. 729 (2025) ........................... 47–48

Gregory C. Sisk, *The Continuing Drift of Federal Sovereign Immunity Jurisprudence*, 50 Wm. & Mary L. Rev. 517 (2008) .............................................38

H.R. Rep. No. 100-700 (1988) ............................................................ 60

John C. Boger et al., *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis*, 54 N.C. L. Rev. 497 (1976) ............... 4, 52

Off. of Att'y Gen., *Final Report of the Attorney General's Committee on Administrative Procedure* 119 (1941) .................................................25

Petition for Certiorari, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362) ............................................... 40

Respondent's Brief, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362) ......................................41–42, 55

Respondent's Brief in Opposition to Certiorari, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362) .......................................19, 40–41

S. Rep. No. 93-588 (1973) ............................................................. 4, 57

Transcript of Oral Argument, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362) .............................................19, 30, 35–36, 39

## STATEMENT OF JURISDICTION

This case returns to this Court on remand from the Supreme Court. The United States District Court for the Northern District of Georgia entered its final order granting summary judgment to the United States and Special Agent Lawrence Guerra on December 30, 2022. Doc. 141.[1] Plaintiffs timely filed a notice of appeal on January 6, 2023. Doc. 143. This Court affirmed the judgment below on April 22, 2024. Doc. 147. Plaintiffs timely moved for panel rehearing on May 13, 2025, C.A.Doc. 35, but the Court denied their motion on May 30, 2025, C.A.Doc. 37. Plaintiffs timely filed for a writ of certiorari on September 27, 2024, which the Supreme Court granted on January 27, 2025. The Supreme Court vacated this Court's judgment and remanded for further proceedings. *Martin v. United States*, 145 S. Ct. 1689, 1703 (2025).

Because Plaintiffs' claims arise out of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, the district court had original jurisdiction under 28 U.S.C. § 1331. This Court maintains jurisdiction under 28 U.S.C. § 1291.

---

[1] "Doc." citations refer to the district court's docket; "C.A.Doc." citations refer to this Court's docket. All record citations refer to ECF page numbers.

xii

## STATEMENT OF THE ISSUES

Plaintiffs are innocent victims of a wrong-house FBI SWAT raid in Atlanta, Georgia. Seeking a remedy for torts committed against them, Plaintiffs brought claims against the United States under the Federal Tort Claims Act. This Court previously held that all of Plaintiffs' FTCA claims were barred by sovereign immunity. The Supreme Court vacated that opinion in its entirety, instructing this Court to conduct a "careful reexamination of this case in the first instance." *Martin*, 145 S. Ct. at 1703. On remand, the issues presented are:

I. Whether the Federal Tort Claims Act's discretionary-function exception, 28 U.S.C. § 2680(a), bars Plaintiffs' negligent- and intentional-tort claims arising out of the mistaken raid of their home.

II. Whether, under Georgia law, a private individual under like circumstances would be liable for the torts Plaintiffs allege, given the defenses available to the United States under 28 U.S.C. § 2674.

1

## STATEMENT OF THE CASE

I.   **The Federal Tort Claims Act waives sovereign immunity for the negligent and wrongful acts of federal employees.**

Passed in 1946, the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, was not "an isolated and spontaneous flash of congressional generosity." *Feres v. United States*, 340 U.S. 135, 139 (1950). Rather, it was "the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit" and address the "multiplying number of remediless wrongs . . . which would have been actionable if inflicted by an individual or a corporation but remediless solely because their perpetrator was an officer or employee of the Government." *Id.* at 139–40.

To accomplish these purposes, the FTCA creates a federal cause of action for damages, "allow[ing] a plaintiff to bring certain state-law tort suits against the Federal government." *Brownback v. King*, 592 U.S. 209, 210–11 (2021). The Act provides a broad grant of jurisdiction to federal courts and a broad waiver of sovereign immunity:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a

2

> private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

Claims that satisfy Section 1346(b)(1) may still be defeated by sovereign immunity, however, if they fall within Section 2680's exceptions. Among these are the discretionary-function and intentional-tort exceptions.

The discretionary-function exception bars claims "based upon the exercise or performance [of] a discretionary function." 28 U.S.C. § 2680(a). This precludes claims premised on actions that "involve an element of judgment or choice" and are "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991) (cleaned up). The public-policy requirement helps separate discretionary *functions* from discretionary *acts*. A government function is "based on the purposes that [a] regulatory regime seeks to accomplish." *Id.* at 325 & n.7. So, as the Supreme Court has emphasized, there "are obviously discretionary acts" that are not "functions" subject to the exception. *Id.*

The intentional-tort exception bars claims arising out of eleven listed torts. 28 U.S.C. § 2680(h). But Congress amended the exception in 1974 to add a law-enforcement proviso, reviving claims for six intentional torts committed by law-enforcement officers. *Id.* Congress enacted the proviso in response to wrong-house

3

raids conducted in 1973 by federal police in Collinsville, Illinois. *See generally* John C. Boger et al., *The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis*, 54 N.C. L. Rev. 497, 499–517 (1976). Through the proviso, Congress guaranteed "innocent individuals who are subject to raids . . . a cause of action against . . . the Federal Government." *Carlson v. Green*, 446 U.S. 14, 19–20 (1980) (quoting S. Rep. No. 93-588, at 3 (1973)).

Plaintiffs are such innocent individuals.

## II.    By an easily avoidable mistake, the FBI raided an innocent family's home.

Before dawn on October 18, 2017, FBI Special Agent Lawrence Guerra led a six-agent SWAT team to 3756 Denville Trace. Because Guerra ignored "[1] the street sign for 'Denville Trace,' . . . [2] the house number, which was visible on the mailbox[,]" and (3) the fact that a car unassociated with his suspect was parked in the driveway, *Martin*, 145 S. Ct. at 1695, Guerra mistakenly believed he had arrived at 3741 Landau Lane—the home of gang member Joseph Riley for which Guerra had a search warrant. At the time, Guerra knew that the target house had its address posted on the mailbox, but he did not check. He also knew which cars Riley and his associates were known to drive, but none matched the car parked at 3756 Denville Trace. Doc. 147 at 2–4, 6; Doc. 124 at 5 & n.3.

Failing to confirm that the house matched the information on their warrant, the heavily armed SWAT team smashed Plaintiffs' front door, detonated a flashbang grenade in their entryway, and rushed inside. *Martin*, 145 S. Ct. at 1694. The explosion startled Plaintiffs awake, leaving them terrified that criminals were attacking their home. Curtrina Martin's first instinct was to run to her son's room to shield him from the intruders, but Hilliard Toi Cliatt, acting to protect his partner, pulled Martin into a walk-in closet. Doc. 147 at 7; Doc. 83-2 at 4. Meanwhile, seven-year-old G.W. hid under his covers, as his mother screamed, "I need to go get my son." Doc. 83-3 at 4.

Masked FBI agents threw open the door to the closet where Cliatt and Martin had barricaded themselves. The agents "dragged Mr. Cliatt from the closet, threw him down on the floor, [and] handcuffed him." *Martin*, 145 S. Ct. at 1694 (cleaned up). And Martin—half naked—fell to the floor in a room full of hostile strangers. As Martin pleaded with one of the agents to let her go to her son, the SWAT team pointed guns at her and Cliatt. *Id.*; *see also* Doc. 147 at 7; Doc. 83-3 at 4–5.

The agents "began bombarding [Cliatt] with questions." *Martin*, 145 S. Ct. at 1694 (quotation marks omitted). But when he told them his address—3756 Denville Trace—"all the noise just ended." Doc. 83-2 at 5; Doc. 147 at 7. Realizing his SWAT

5

team had raided the wrong house, Agent Guerra pulled Cliatt off the floor, unshackled him, and said, "I'll be right back." Doc. 83-2 at 5; Doc. 147 at 7–8.

The agents then went down the block to 3741 Landau Lane and raided the correct address. Guerra later returned to 3756 Denville Trace, apologized, documented the property damage he caused, handed Cliatt a business card with his supervisor's information, and left the family in stunned disbelief. Doc. 147 at 7–8.

### III.    This Court granted the government sovereign immunity for the mistaken raid of Plaintiffs' home.

"Left with personal injuries and property damage—but few explanations and no compensation—Mr. Cliatt and Ms. Martin sued the United States" for the negligent and wrongful acts of the FBI agents who raided their home, pleading five counts. *Martin*, 145 S. Ct. at 1695; Doc. 124 at 29. Citing the discretionary-function exception, 28 U.S.C. § 2680(a), the government moved for summary judgment. The district court granted it in part. Doc. 124 at 37.

At that time, caselaw in this Circuit held that the FTCA's law-enforcement proviso overrode the discretionary-function exception if the two conflicted. *See Nguyen v. United States*, 556 F.3d 1244, 1260 (11th Cir. 2009). So the district court

6

broke Plaintiffs' FTCA claims into two groups: proviso claims[2] and non-proviso claims.[3] Doc. 124 at 28–29.

The district court denied summary judgment for three of the four proviso claims. Although the record did not support a claim for false arrest "because the arrest in this case was not executed pursuant to a warrant that named Plaintiffs[,]" Doc. 124 at 32, the record did support a claim for false imprisonment because the "warrants were void as to Plaintiffs, and Defendants have not demonstrated that the arrest was otherwise legal," *id.* at 34. Plaintiffs' assault and battery claims likewise could proceed because the FBI agents had unlawfully touched Plaintiffs. *Id.* at 35–37.

But the district court granted summary judgment on the non-proviso claims, citing the discretionary-function exception. Because "Guerra's efforts in preparing to execute the warrant at 3741 Landau involved judgment and choice" and "no statute, regulation or even internal operating procedure prescrib[ed] Guerra's course of action," the district court concluded that his decisions "involve[d] policy

---

[2] These claims are false arrest/false imprisonment (Count I) and assault and battery (Count II).

[3] These claims are trespass/interference with private property (Count III), negligent/intentional infliction of emotional distress (Count IV), and negligence (Count V).

considerations and should not be subject to judicial second-guessing." Doc. 124 at 26.

A month later, this Court issued *Kordash v. United States*, 51 F.4th 1289 (11th Cir. 2022). There, this Court ruled that the Supremacy Clause bars FTCA claims if a federal employee's actions had "some nexus with furthering federal policy" and could "reasonably be characterized as complying with the full range of federal law." *Id.* at 1293–94 (citation omitted). The government moved to reconsider the district court's denial of summary judgment under *Kordash*, and the district court did, holding that the Supremacy Clause barred Plaintiffs' proviso claims. Doc. 141 at 12.

Plaintiffs appealed, and this Court affirmed. Like the district court, this Court divided the lawsuit into proviso and non-proviso claims. It held that the former were barred by the Supremacy Clause and the latter by the discretionary-function exception. Doc. 147 at 18.

This Court explained that the discretionary-function exception applies when a government employee's action (1) "'involved an element of judgment or choice'" and (2) "represented the kind of conduct 'that the discretionary function exception was designed to shield.'" Doc. 147 at 14. "Similar to the discretionary function exception," the Court found, "the Supremacy Clause ensures that states do not

8

impede or burden the execution of federal law." *Id.* at 15 (citing *Denson v. United States*, 574 F.3d 1318, 1336–37 (11th Cir. 2009)). Because Guerra "acted within the scope of his discretionary authority" in conducting the raid and was otherwise entitled to qualified immunity, the Supremacy Clause barred Plaintiffs' proviso claims. *Id.* at 17.

Plaintiffs' non-proviso claims were similarly barred, this Court explained, because "[t]he discretionary function exception applies *unless* a source of federal law 'specifically prescribes' a course of conduct." Doc. 147 at 15 (quoting *Shivers v. United States*, 1 F.4th 924, 931 (11th Cir. 2021)). And since "the FBI did not have stringent policies or procedures in place that dictate *how* agents are to prepare for warrant executions[,]" the Court found that "Guerra enjoyed discretion in how he prepared for the warrant execution" *Id.* at 16.

## IV.    The Supreme Court vacated this Court's judgment, instructing it to conduct a "careful reexamination of this case in the first instance."

Plaintiffs filed a petition for a writ of certiorari, which the Supreme Court granted. Upon review, the Supreme Court vacated this Court's judgment dismissing Plaintiffs' negligent- and intentional-tort claims, "clear[ing] away the two faulty assumptions on which" this Court's decision rested. *Martin*, 145 S. Ct. at 1703.

9

First was the scope of the law-enforcement proviso. Overruling this Court's decision in *Nguyen*, the Supreme Court held that the proviso "countermand[s] only § 2680(h)'s intentional tort exception" rather than overriding all exceptions in Section 2680. *Id.* at 1697.

Second was the Supremacy Clause bar. Overruling this Court's decisions in *Denson* and *Kordash*, the Supreme Court held that the Supremacy Clause cannot independently foreclose FTCA claims. *Id.* at 1702. As the Court explained, the FTCA imposes a private-person standard of liability, and "Georgia law would permit a homeowner to sue a private person for damages if that person intentionally or negligently raided his house and assaulted him." *Id.* at 1700.

The Supreme Court remanded the case, instructing this Court to take a fresh look. *Id.* at 1703. Specifically, the Supreme Court directed this Court to consider anew (1) "whether [the] discretionary-function exception bars either the plaintiffs' negligent- or intentional-tort claims[,]" and (2) "whether, under Georgia state law, a 'private individual under like circumstances' would be liable for the acts and omissions the plaintiffs allege, subject to the defenses discussed in § 2674[.]" *Id.*

Expanding on the first question it presented, the Supreme Court noted that this Court "has suggested that the discretionary-function exception bars any claim

10

'*unless* a source of federal law "specifically prescribes" a course of conduct[.]'" *Id.* (quoting *Shivers*, 1 F.4th at 931). It then offered several reasons why *Shivers*'s "suggest[ion]" may be mistaken, including that the discretionary-function exception does not shield ministerial acts, constitutional violations, or carelessness. *Id.*

Concurring, Justice Sotomayor (joined by Justice Jackson) identified an additional "reason to question" *Shivers* and its application here: *Shivers*'s "suggestion" about the discretionary-function exception's sweep "run[s] headlong into" Supreme Court precedent. *Id.* at 1705 (Sotomayor, J., concurring). "*Gaubert*, after all, applies the discretionary-function exception only where an official's actions both involve an element of judgment and rely on public policy considerations." *Id.* (citations omitted). Justice Sotomayor also explained that, when construing the discretionary-function exception, "[c]ourts . . . should not ignore the existence of the law enforcement proviso, or the factual context that inspired its passage[.]" *Id.* at 1706. Only by considering the provisions in tandem can courts ensure they "allow for liability in the very cases Congress amended the FTCA to remedy"—like wrong-house raids. *Id.*

11

Ultimately, the unanimous Court recognized "that important questions surround whether and under what circumstances [the discretionary-function] exception may *ever* foreclose a suit like this one." *Id.* at 1703 (emphasis added). Before deciding those questions itself, however, the Court explained it "would benefit from [this Court's] careful reexamination of this case in the first instance." *Id.*

## STANDARD OF REVIEW

This Court reviews "an entry of summary judgment de novo, construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012). "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *State Farm Mut. Auto. Ins. Co. v. Spangler*, 64 F.4th 1173, 1178 (11th Cir. 2023) (quoting Fed. R. Civ. P. 56(a)).

## SUMMARY OF THE ARGUMENT

The Supreme Court instructed this Court to evaluate whether the discretionary-function exception "may *ever* foreclose a suit like this one[.]" *Martin*, 145 S. Ct. at 1703 (emphasis added). It cannot.

12

Congress enacted the discretionary-function exception to prevent people injured by administrative policies (and their faithful execution) from challenging policy decisions through tort suits. To accomplish this, Congress employed a term of art—"discretionary function"—which cannot be disentangled from administrative law. *See* Part I.A, *infra*. The Supreme Court has long recognized the discretionary-function exception's relationship to administrative regulation. Its most recent case discussing the exception, *United States v. Gaubert*, 499 U.S. 315 (1991), makes clear that the exception does not cover wrong-house raids for two reasons. First, no federal law or regulation gives law-enforcement officers discretion to execute a search warrant at the wrong place. *See* Part I.B, *infra*. Second, even if officers could enjoy discretion to raid the wrong house, their decision to do so is not based on any public-policy consideration of the type Congress enacted the exception to shield. *See* Part I.C, *infra*.

The discretionary-function exception's contours are sharpened when it is considered alongside the FTCA's law-enforcement proviso. While the discretionary-function exception protects administrative policy, the law-enforcement proviso allows claims for certain ordinary common-law torts, the adjudication of which does not challenge administrative policy. *See* Part II.A, *infra*.

13

Put simply, Congress does not grant federal employees discretion to commit intentional torts. As a result, the exception and the proviso rarely (if ever) intersect, and the Supreme Court has never identified any overlap. Moreover, reading the discretionary-function exception too broadly would invalidate the proviso in its core applications. *See* Part II.B, *infra*. Historical context confirms that Congress enacted the proviso to waive sovereign immunity in cases *exactly* like this one. *See* Part II.C, *infra*.

With the discretionary-function exception cleared away, the Court must next assess whether, under Georgia law, a private person would be liable for the torts Guerra and his SWAT team inflicted on Plaintiffs, notwithstanding the defenses laid out in 28 U.S.C. § 2674. The Supreme Court has simplified this inquiry by explaining that Georgia law imposes liability on a private person in an analogous case. *Martin*, 145 S. Ct. at 1700. So this Court need only decide whether Section 2674 supplies any special defenses. Because it does not, this Court should hold that Plaintiffs' claims may proceed. *See* Part III, *infra*.

## ARGUMENT

Plaintiffs' claims for the negligent and intentional torts inflicted against them when Guerra's SWAT team raided their home are not subject to the discretionary-

14

function exception. Congress enacted the exception to shield regulatory policy and its implementation from collateral attack in tort, a concern not implicated by wrong-house raids. Indeed, *Gaubert*'s two-step test shows that the exception has no application here. At step one, no policy confers discretion on federal law-enforcement officers to execute search warrants at the wrong place. Not only is this common sense, it is constitutionally required and confirmed by the text of all lawful warrants, which command execution at a specified location—nowhere else. At step two, even if executing warrants involves some level of policy judgment, executing them at the wrong house does not. Doing so is, however, unconstitutional, incompetent, and harmful. So the exception does not bar any of Plaintiffs' claims.

The discretionary-function exception is particularly inapplicable to Plaintiffs' intentional-tort claims. These claims arise from the law-enforcement proviso, which Congress enacted specifically to safeguard claims—like Plaintiffs'—alleging harm from federal law-enforcement raids. Reading the proviso and the exception in harmony respects Congress's will and ensures that the proviso does not become a dead-letter in its heartland cases.

The Supreme Court's instructions on remand direct this Court to address these important doctrinal questions from the ground up. In the past, this Court has

15

"suggested that the discretionary function exception bars any claim '*unless* a source of federal law "specifically prescribes" a course of conduct.'" *Martin*, 145 S. Ct. at 1703 (quoting *Shivers*, 1 F.4th at 931). It has also suggested that an officer's "decision as to how to locate and identify the subject of an arrest warrant" is protected by the discretionary-function exception. *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997). But *Martin*'s instruction to conduct a "careful reexamination of this case in the first instance," 145 S. Ct. at 1703, suggests that this Court should not simply apply precedent the Supreme Court has called into doubt.

This Court should, instead, consider the "important questions" at issue here on a blank slate. *Martin*, 145 S. Ct. at 1703. From there, it should hold that the discretionary-function exception does not apply and that no other defense in 28 U.S.C. § 2674 bars Plaintiffs' claims.

## I.    Negligent- and intentional-tort claims arising out of wrong-house raids are not barred by the discretionary-function exception.

Congress designed the FTCA "to remove the sovereign immunity of the United States from suits in tort and . . . render the Government liable in tort as a private individual would be under like circumstances," subject to certain exceptions laid out in 28 U.S.C. § 2680. *Richards v. United States*, 369 U.S. 1, 6 (1962). Among

16

these is the discretionary-function exception, which bars claims "based upon the exercise or performance [of] a discretionary function." 28 U.S.C. § 2680(a).

Through the discretionary-function exception, "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). The exception bars negligence suits that can be resolved only by forcing the judiciary to assess "the validity of legislation or discretionary administrative action[.]" *Dalehite v. United States*, 346 U.S. 15, 27 (1953) (citation omitted).

While the discretionary-function exception precludes claims that disguise policy disputes as tort suits, it leaves federal employees' "common law torts . . . within the scope of" the FTCA. *Varig Airlines*, 467 U.S. at 810 (citation omitted). As a result, the Supreme Court's discretionary-function jurisprudence distinguishes between claims that require courts to second-guess administrative policies (which are barred) and those that do not (which may proceed). *See, e.g.*, *Berkovitz v. United States*, 486 U.S. 531, 544–47 (1988) (allowing claims that alleged a violation of agency vaccine-regulation policy to proceed, while barring claims that questioned the validity of the policy).

17

The Supreme Court last addressed the discretionary-function exception in *United States v. Gaubert*, 499 U.S. 315 (1991). There, the Court created a two-step test to determine whether the exception applies. Step one asks whether a federal employee's act is "discretionary in nature," *id.* at 322, which means that "a regulation allows the employee discretion" to take the allegedly tortious action, *id.* at 324. If so, step two asks "whether [the employee's exercise of his] judgment is of the kind that the discretionary function exception was designed to shield[,]" which means that his decision was "based on considerations of public policy." *Id.* at 322–23 (citing *Berkovitz*, 486 U.S. at 536–37). The exception does not apply unless the answer to both questions is "yes." *Id.*

This section begins by explaining that, in enacting Section 2680(a), Congress employed a term of art: "discretionary function." This term is grounded in regulatory law, and the Supreme Court has consistently recognized that Congress passed the discretionary-function exception to protect the federal government's administrative-policy decisions from negligence suits.

The section then turns to modern doctrine, demonstrating that Guerra's decision to unleash a SWAT team at the wrong house fails both prongs of *Gaubert*. At step one, law-enforcement officials lack discretion to execute a search warrant at

18

any place other than the place specified on the warrant—as the government conceded in oral argument before the Supreme Court. Transcript of Oral Argument at 35–36, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362) ("*Martin Transcript*"). At step two, Guerra's decision to raid a home full of innocent people is not a "discretionary function" because it bears no relationship to public policy—let alone any policy Congress intended to protect. What's more, as other courts have recognized—and as the government also conceded before the Supreme Court—the discretionary-function exception does not protect actions that violate the Constitution. *See Xi v. Haugen*, 68 F.4th 824, 838 n.10 (3d Cir. 2023) (collecting cases); BIO at 13, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362). Nor does it immunize carelessness. *See Xi*, 68 F.4th at 843 (Bibas, J., concurring) (collecting cases).

### A. The discretionary-function exception protects the creation and implementation of regulatory policy from collateral attack.

The discretionary-function exception bars:

> Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

19

28 U.S.C. § 2680(a). Since the Supreme Court's earliest case construing this exception, it has emphasized Congress's desire to protect "discretionary *administrative* action" and "acts of a governmental nature or function" from tort suits. *Dalehite*, 346 U.S. at 27–28 (emphasis added). So although the exception covers a limited range of non-regulatory activities (like "the expenditure of Federal funds[,]" *id.* at 27), the exception's focus is regulatory policy and its execution, *id.* at 38–41.

This is no accident. By reinstating sovereign immunity for "discretionary functions," Congress employed a term of art from regulatory law. *See Dalehite*, 346 U.S. at 34. In doing so, Congress signaled that the exception applies *only* when a claim requires a court to evaluate the exercise of discretion vested in an employee to fulfill the definite ends of an administrative regime. This interpretation flows from the plain text of the FTCA and is confirmed by the term's use in contemporaneous laws and Supreme Court precedent.

>    1.    **"Discretionary function" is a term of art inextricably tied to regulatory law.**

Before diving into discretionary-function-exception caselaw, it is worthwhile to construe the exception from first principles. Doing so provides the background necessary to understand why, each time the Supreme Court has found the exception

to apply, it has been in the context of negligence suits challenging regulatory affairs—

a context completely unrelated to the facts here. *See* Parts I.A.2 & I.B, *infra*.

The starting point for a first-principles analysis is the text. *Babb v. Wilkie*, 589

U.S. 399, 404 (2020). And the text of the discretionary-function exception

demonstrates its roots in regulatory law. At the outset, the discretionary-function

exception is the only exception in the FTCA that references an "agency." 28 U.S.C.

§ 2680(a). More specifically, the exception begins by immunizing discretionary

functions "on the part of a federal agency[.]" *Id.* This language protects federal

agencies' regulatory policy from attack in tort. The exception then immunizes

discretionary functions "on the part of . . . an employee of the federal government."

*Id.* This language protects the implementation of protected policy that textually

precedes it. *See Fischer v. United States*, 603 U.S. 480, 487 (2024) (explaining that "a

word is given more precise context by the neighboring words with which it is

associated" to "avoid[] ascribing to one word a meaning so broad that it is

inconsistent with the company it keeps" (cleaned up)).

Thus, just as plaintiffs cannot bring an FTCA claim based on agency policy

itself, they cannot bring a claim based on the regulatory decisions of employees who

are legally empowered to administer agency policy. This reading of the discretionary-

function exception follows from the commonsense proposition that it would be strange to insulate *policies* from suit without also insulating the *implementation* of those policies.

Similarly, by immunizing federal employees' "functions" rather than their "acts," Congress drew from regulatory law. Again, Section 2680(a)'s text makes this distinction. The first exception in Section 2680(a) (the due-care exception) refers to an "*act* or omission of an employee" enforcing a statute or regulation (emphasis added). The second exception in Section 2680(a) (the discretionary-function exception) is limited to "a discretionary *function* or duty on the part of a federal agency or an employee[.]" 28 U.S.C. § 2680(a) (same). Readers of statutory text in the 1940s understood that "function" meant "[o]ffice; duty; fulfillment of a definite end or set of ends by correct adjustment of means." *Black's Law Dictionary* 827 (3d ed. 1933). "Act," meanwhile, carried a much more general meaning: "something done voluntarily by a person[.]" *Id.* at 34.

Congress's decision to contrast a "narrower" phrase with a "more open-ended formulation[]" signals "that the different term denotes a different idea." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (cleaned up). Here, the broader language of the due-care exception ("act") shows that the neighboring, narrower

22

language of the discretionary-function exception ("function") requires a relationship between an employee's conduct and specific, policy-related ends.

Contemporaneous acts of Congress underscore the link between "functions" and administrative policy. The same year the FTCA was passed, for instance, Congress enacted the Administrative Procedure Act, Pub. L. No. 79-404, 60 Stat. 237 (1946), which separated certain "functions" within federal agencies, *see* 5 U.S.C. § 554(d)(2). And just a year earlier, in the Reorganization Act of 1945, Pub. L. No. 79-263, 59 Stat. 613 (1945), Congress instructed the president to recognize federal agencies—repeatedly using the word "function" to describe an agency's statutorily-defined powers, *see, e.g.*, 59 Stat. at 615, § 5(a)(4) (establishing that a reorganization plan could not extend "any function beyond the period authorized by law for its exercise"). Even today, "function" refers to a specific grant of authority in the administrative-law context. *See, e.g.*, *Lucia v. SEC*, 585 U.S. 237, 238 (2018) (describing the discretion vested in an ALJ to carry out the functions involved in presiding over adversarial hearings).

But Section 2680(a) does not protect all administrative functions. Instead, the government employee's fulfilment of his function must also be "discretionary." 28 U.S.C. § 2680(a). Readers at the time would have known that, "[w]hen applied to

23

public functionaries, discretion means a power or right conferred upon them by law of acting officially in certain circumstances[.]" *Black's Law Dictionary* 587 (3d ed. 1933). Indeed, Congress borrowed this term from the law of mandamus and damages suits against government officials, where it carried the same meaning. *See Dalehite*, 346 U.S. at 34 & n.30 (citing mandamus and damages cases). In mandamus actions, courts distinguished "ministerial" duties (which could be compelled by a court) from those that "involve judgment or discretion" legally vested in an official (which could not). *Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218 (1930). Similarly, in damages actions against government officials, courts drew a distinction between "ministerial" acts (which gave rise to liability) and those for which the officer was specifically empowered to "exercise judgment and discretion" (which did not). *Kendall v. Stokes*, 44 U.S. (3 How.) 87, 98 (1845). Thus, to be discretionary under the FTCA, an administrative function must flow from a "statute, regulation, or agency guideline[]" that "allows a Government agent to exercise discretion[.]"[4] *Gaubert*, 499 U.S. at 324.

---

[4] For sovereign immunity to remain intact, the mere presence of a "discretionary function" is not enough. Instead, the claim must be "based upon" the exercise or the failure to exercise a discretionary function (as opposed to "arising" out of some act, as with some of the FTCA's other exceptions). With this language, Congress created a but-for causality requirement. *Cf. Babb v. Wilkie*, 589 U.S. 399, 405–06 (2020). So

24

Again, the APA provides a useful comparison. Like the discretionary-function exception, the APA places constraints on judicial review of certain claims concerning "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Then-Attorney General Robert Jackson explained that the APA limits judicial interference with the types of policy determinations legally entrusted to agencies' discretion. Off. of Att'y Gen., *Final Report of the Attorney General's Committee on Administrative Procedure* 119 (1941). The examples he gave—such as the likelihood that certain equipment will reduce locomotive accidents and the amount of pesticide that can safely remain on apples—track the type of discretionary functions Section 2680(a) exempts from FTCA liability. *See, e.g.*, *Dalehite*, 346 U.S. at 37 ("[T]he cabinet-level decision to institute the fertilizer export program was a discretionary act[.]").

When Congress enacted the discretionary-function exception, it adopted "the cluster of ideas that were attached to each borrowed word[.]" *Molzof v. United States*, 502 U.S. 301, 307 (1991) (citation omitted). By putting the terms "discretionary" and "function" together, Congress signaled that the discretionary-function

---

for the exception to apply, a claim must have been the *direct result* of the implementation of government policy—which is no different from a challenge to policy itself.

25

exception applies only when an administrative official uses power conferred on him by law in defined circumstances to fulfill a specific, policy-based end. *See* Cornelius J. Peck, *The Federal Tort Claims Act: A Proposed Construction of the Discretionary Function Exception*, 31 Wash. L. Rev. & State Bar J. 207, 212–13 (1956). As a result, Congress did not understand "discretionary function" to mean "anything federal law does not specifically forbid." *See Martin*, 145 S. Ct. at 1705 (Sotomayor, J., concurring) (noting that not even the United States defends this interpretation). *Contra Shivers*, 1 F.4th at 931.

### 2. Supreme Court caselaw demonstrates the necessary connection between a "discretionary function" and regulatory policy.

The Supreme Court has consistently applied the discretionary-function exception only when doing so would protect regulatory policy and its implementation. As the Court has explained, Congress enacted the exception "to make clear that the Act was not to be extended into the realm of the validity of legislation or discretionary administrative action." *Varig Airlines*, 467 U.S. at 810. This concern is rooted in the separation of powers—courts ought not use tort suits to determine the propriety of an administration's policy decisions. *See id.* (noting that Congress "believed that claims of the kind embraced by the discretionary

26

function exception would have been exempted from the waiver of sovereign immunity by judicial construction" even without the exception); *see also Dalehite*, 346 U.S. at 40 (barring claims that attacked "a plan developed at a high level under a direct delegation of plan-making authority from the apex of the Executive Department").

As a result, Section 2680(a) reinstates sovereign immunity when "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion," and the agent exercises his discretion to further that "established" policy. *Gaubert*, 499 U.S. at 324. The exception applies because a negligence claim asserting that a federal employee should have exercised his legally-conferred discretion differently amounts to a claim that the law or regulation conferring that discretion was somehow negligent to begin with. Such questions are improper for judicial resolution.

The discretionary-function exception does not reinstate sovereign immunity, however, for ordinary common-law torts unmoored from established policy. Actionable torts can involve "obviously discretionary acts" because, even when a federal employee has some modicum of discretion, ordinary torts do not involve the type of discretion necessary to achieve "the purposes that [a] regulatory regime

27

seeks to accomplish." *Id.* at 325 n.7. The quintessential example is driving: "Although driving requires the constant exercise of discretion," this discretion "can hardly be said to be grounded in regulatory policy." *Id.* When a case involves torts disconnected from policy, the separation-of-powers concerns that animate the discretionary-function exception fall away, and the claims can proceed.[5]

Through the decades, the Supreme Court has applied this distinction to determine whether the discretionary-function exception reinstates sovereign immunity. *Varig Airlines* is a representative example. There, the Court held that the exception barred the families of those killed in a commercial airplane fire from suing the United States for the FAA's "alleged negligence in certificating" the defective aircraft for use despite its failure to satisfy federal standards. *Varig Airlines*, 467 U.S. at 821. The families did not contend that FAA employees negligently inspected the *particular airplane* that caught fire. *Id.* at 814. Instead, they challenged the FAA's policy of "spot-checking" airplanes for compliance. *Id.* at 815–16. But that policy vested regulators with discretion to set the frequency and intensity of inspections,

---

[5] *See* Peck, *supra*, at 230–31 ("[W]here the act or omission involved is not one which was directed, or a risk knowingly, deliberately, or necessarily encountered in the furtherance of the objectives or purposes for which authority was given, . . . courts are free to use the ordinary principles of negligence[.]").

28

and it did not require them to inspect every plane a manufacturer produced. *Id.* at 817–18. The families' claims therefore failed because they could not point to any act of government negligence that caused injury aside from alleged negligence in setting the "spot-check" policy itself. *Id.* at 820. "It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent." *Id.*; *see also Dalehite*, 345 U.S. at 23 ("Since no individual acts of negligence could be shown, the suits . . . necessarily predicated government liability on the participation of the United States in the manufacture and transportation of [fertilizer]."). Had a regulator inspected the defective plane and wrongly certified it to fly, however, the families' claims likely could have proceeded—they would have been based on ordinary negligence rather than allegedly negligent policy.

The Supreme Court's other discretionary-function-exception cases draw the same distinction: Claims that require courts to assess the wisdom of regulatory policy are barred, while claims that can be resolved without questioning policy may proceed. *See, e.g.*, *Dalehite*, 345 U.S. at 38–41 (exception protects fertilizer manufacturing consistent with a federal agency's written directives); *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955) (exception does not protect Coast Guard's negligent upkeep of a lighthouse); *Hatahley v. United States*, 351 U.S. 173,

29

181 (1956) (exception does not protect trespass unauthorized by agency policy). This line of precedent ends with *Gaubert*, where the Court reaffirmed that the discretionary-function exception shields "conduct . . . grounded in the *policy of the regulatory regime*." 499 U.S. at 325 (emphasis added).

**B.    Under *Gaubert*'s first prong, law-enforcement officers lack discretion to execute a search warrant at the wrong address.**

In *Gaubert*, the Supreme Court explained that if no "regulation allows [a federal] employee discretion" to choose between alternatives, the discretionary-function exception does not apply. 499 U.S. at 324. As a corollary, if an employee disobeys a federal rule that "specifically prescribes a course of action[,]" the exception cannot shield his tortious conduct "because the employee has no rightful option but to adhere to the directive." *Id.* at 322 (cleaned up); *see also Westfall v. Erwin*, 484 U.S. 292, 296–97 (1988) ("When an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct.").

As the government conceded before the Supreme Court, federal agents lack discretion to execute a search warrant at the wrong place. *Martin* Transcript at 35–36, ("[I]t's the . . . United States' policy to execute the warrants at the right house[.]"). This concession makes sense—the Fourth Amendment commands that

30

"no Warrants shall issue" unless they "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Search warrants, by their very nature, cannot let officers choose where to execute them. *Cf.* Fed. R. Crim. P. 41(e)(2)(A) (explaining that a warrant must "identify the person or property to be searched" and "command the officer to . . . execute the warrant" there). As a result, "nothing" about where to search or what to seize "is left to the discretion of the officer[.]" *Marron v. United States*, 275 U.S. 192, 196 (1927).

The warrant in this case is no different. It ordered Guerra to search 3741 Landau Lane—not Plaintiffs' home at 3756 Denville Trace:



ATTACHMENT B

DESCRIPTION OF LOCATIONS TO BE SEARCHED

*3741 Landau Lane SW, Atlanta, Georgia 30331*

3741 Landau Lane, Atlanta, Georgia is a single family home located on the northwest corner of the intersection of Landau Lane and Cranford Drive.

Doc. 89 at 24. This warrant did not provide Guerra a menu of options. It "mandate[d] particular conduct" and left "no room for choice" as to where it could be executed. *Gaubert*, 499 U.S. at 324. Because Guerra violated the warrant's command, his conduct "did not involve the permissible exercise of policy discretion[.]" *Berkovitz*, 486 U.S. at 548.

Before the Supreme Court vacated this Court's judgment, this Court concluded that Guerra's actions satisfied *Gaubert*'s first prong because he "enjoyed discretion in how he prepared for the warrant execution." Doc. 147 at 16. But that analysis began from the wrong premise. Whatever discretion officers enjoy in the "details of how best to proceed" with a search, *Dalia v. United States*, 441 U.S. 238, 257 (1979), their discretion cannot extend to the fundamental question of where the warrant may be executed, *cf. Berkovitz*, 486 U.S. at 536 ("[A] court must first consider whether the action is a matter of choice for the acting employee."). Plaintiffs do not challenge anything Guerra did as he *prepared* to execute the warrant; they allege—and it is undisputed—that Guerra led a SWAT team that smashed into their home and assaulted them without legal authority.

This Court seemed to conflate whether Guerra's mistake was constitutionally reasonable with whether Guerra was delegated discretion to execute the warrant

32

anywhere other than 3741 Landau Lane. But only the second question matters for *Gaubert* step one. While officers may enjoy some constitutional leeway to make reasonable mistakes when executing search warrants, *see Maryland v. Garrison*, 480 U.S. 79, 88 (1987), they lack *discretion* to search the wrong location, *see Utah v. Strieff*, 579 U.S. 232, 240 (2016) (explaining that executing an arrest warrant is "a ministerial act" that is "independently compelled" by the warrant). *Contra Mesa*, 123 F.3d at 1438. Thus, unlike in constitutional cases brought under 42 U.S.C. § 1983 or *Bivens*, FTCA claims do not require plaintiffs to prove that an officer's actions were unreasonable under the Fourth Amendment to defeat immunity.[6] Instead, plaintiffs need only show that an officer's actions lacked authorization. *Compare, e.g.*, *Hartsfield v. Lemacks*, 50 F.3d 950 (11th Cir. 1995) (holding that a wrong-house raid violated the Fourth Amendment because the officers violated clearly-established law), *with Castro v. United States*, 34 F.3d 106, 110–11 (2d Cir. 1994) (holding that the discretionary-function exception did not bar claims arising out of a wrong-house raid by focusing on the "authority . . . vested in" the officers).

---

[6] Unconstitutionality is a sufficient—but not a necessary—condition for defeating the discretionary-function exception. *See* Part I.C.2, *infra*.

33

When it comes to executing a specific warrant at a specific place, an officer's authority is binary: Either he has it or he doesn't. Guerra's warrant authorized him to search a house—but not Plaintiffs' house. Thus, he had no legal discretion to search Plaintiffs' house or seize their persons. Yet he did both. This alone establishes that Plaintiffs' claims are not subject to the discretionary-function exception.

> **C.    Under *Gaubert*'s second prong, raiding the wrong house has no connection to public policy.**

Even when federal law confers discretion on an employee, the discretionary-function exception does not apply reflexively. *Gaubert*, 499 U.S. at 324. Instead, step two of *Gaubert* asks whether the employee's exercise of his discretion "is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23 (quoting *Berkovitz*, 486 U.S. at 536). Not all discretionary acts are created equal. While some are "grounded in policy" and therefore enjoy protection, *id.* at 324, others "obviously" fall outside "the discretionary function exception because [they] cannot be said to be based on the purposes that the regulatory regime seeks to accomplish[,]" *id.* at 325 n.7.

Guerra's wrong-house raid fails *Gaubert*'s second prong for three independent reasons. *First*, the government cannot rely on the discretionary-function exception—which guards agency policy against collateral attack—when

there is no policy to protect. The government conceded no relevant policy exists before this Court. *Second*, as the government conceded before the Supreme Court, the discretionary-function exception does not immunize unconstitutional conduct. The raid of plaintiffs' home was unconstitutional. *Third*, the discretionary-function exception does not shield incompetent acts. Guerra's raid was incompetent; as Justice Gorsuch said during oral argument, "you might look at the address of the house before you knock down the door." *Martin* Transcript at 37.

### 1. When there is no policy, the discretionary-function exception has nothing to shield.

As discussed above, Congress enacted the discretionary-function exception to protect regulatory policy from attack in tort. *See* Part I.A, *supra*. Thus, the *Gaubert*-step-two inquiry boils down to this: If the government can identify a federal policy that conferred discretion on an employee to engage in the challenged conduct, and his exercise of that discretion promoted the policy, the United States may retain sovereign immunity. *See, e.g.*, *Gaubert*, 499 U.S. at 330–34 (agency policy authorizing individual regulators to weigh the appropriateness of agency's banking industry supervision on a case-by-case basis); *Berkovitz*, 486 at 544–47 (agency policy governing vaccine regulation); *Varig Airlines*, 467 U.S. at 820 (agency policy prescribing an inspection regime for airplanes). But if no policy authorizes the

35

employee's actions—or if the employee disobeyed a policy—the discretionary-function exception cannot apply. *See, e.g.*, *Hatahley*, 351 U.S. at 181 (wrongful trespass unauthorized by federal law); *Indian Towing*, 350 U.S. at 69 (negligent upkeep of a lighthouse); *United States v. Union Tr. Co.*, 350 U.S. 907 (1955) (mem.) (negligent operation of an air-traffic control tower).

Federal policy does not give law-enforcement officers discretion to raid the wrong house, committing negligent and intentional torts in the process. *See* Part I.B, *supra*; *Martin* Transcript at 35–36 ("Of course, it's the . . . United States' policy to execute the warrants at the right house[.]"). It is no coincidence, then, that the only time the Supreme Court has ever considered the interaction between law-enforcement officers' intentional torts (rather than negligence claims arising from the enforcement of regulatory policy) and the discretionary-function exception, sovereign immunity was waived. *See Hatahley*, 351 U.S. at 181.

In *Hatahley v. United States*, the Court rejected the discretionary-function exception's application to an FTCA suit alleging the intentional tort of trespass. 351 U.S. at 181. *Hatahley* concerned claims against federal law-enforcement officers who, purporting to enforce a federal statute, illegally killed the plaintiffs' horses. *Id.* at 180–81. The Taylor Grazing Act authorized the Department of the Interior's range

managers to police unauthorized grazing on federal land. *Id.* at 176–78. To carry out that function, officers could order horses' removal from certain pastures and use local governments' impoundment procedures if the owner failed to comply. *Id.* The Act did not, however, authorize the agents to seize and kill horses without notice, a trespass under state law. *Id.* Because the officers went beyond their authority to administer the Act, the Court concluded that their acts were "wrongful trespasses[.]" *Id.* at 180–81. And because the agents lacked statutory authority to commit trespass, the Court did not need to consider the validity of the statute under which the agents purported to act. *Id.* This, in turn, meant there was no risk that the Court would second-guess congressional decision-making by applying the elements of trespass to the case. *Id.* at 181. So the discretionary-function exception did not apply. *Id.*

*Hatahley* shows how simple the discretionary-function analysis becomes in cases that do not involve the implementation of regulatory policy. Without a complex administrative regime like those at issue in *Gaubert*, *Berkovitz*, *Dalehite*, and *Varig Airlines*, the likelihood that a court's application of ordinary tort principles will call federal policy into question becomes minuscule. Thus, in cases that lack such a

37

regime—like *Hatahley*, *Indian Towing*, and *Union Trust Co.*—the Court had no trouble finding the discretionary-function exception inapplicable.

Other examples abound. As discussed above, the easiest is driving. *See* Part I.A.2. Consider, too, the case of a U.S. Army B-25 airplane crashing into the Empire State Building.[7] If the crash had resulted from a military policy that required pilots to fly in a straight line below 1,000 feet to preserve fuel, the policy decision and its consequences (though both terrible) would not be appropriate for judicial resolution under the FTCA.[8] But if the military set no flight path or altitude policy, the pilot's decision to fly low in bad weather through Manhattan would be actionable because it involved no judicial evaluation of policy.[9] Clearer still, if the pilot had *intentionally* steered his plane into the building—perhaps because his wife's lover worked on the 80th floor—his "conduct [would] not involve any permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 538 n.3.

---

[7] This real-life example occurred in 1945 and may have been the final impetus for Congress's passage of the FTCA. Gregory C. Sisk, *The Continuing Drift of Federal Sovereign Immunity Jurisprudence*, 50 Wm. & Mary L. Rev. 517, 536 (2008).

[8] *Cf. Berkovitz*, 486 U.S. at 546 (discretionary-function exception bars claims challenging the government's "formulation of policy as to the appropriate way in which to regulate" vaccines—even if that policy caused injury).

[9] *Cf. Indian Towing*, 350 U.S. at 69 (where no policy governed the Coast Guard's maintenance of a lighthouse, the discretionary-function exception did not apply to claims alleging it did so negligently).

Like flying a plane, driving a car, or killing a horse, the day-to-day acts of line-level federal law-enforcement officers—though suffused with ordinary decision-making—are not "grounded in regulatory policy." *Gaubert*, 499 U.S. at 325 n.7; *see also Martin* Transcript at 34 (statement of Sotomayor, J.) (explaining that raiding the wrong house is "like driving negligently. You got to that house by mistake. You drove negligently and hit someone."). To determine whether the government is liable for torts inflicted during a wrong-house raid, a court need not evaluate the legitimacy of any governmental policies. We know this because, as the government has explained, the FBI "*has no* official policy or practice with respect to how agents are to locate or navigate to the target address of a search warrant." Doc. 147 at 13 (emphasis added); C.A.Doc. 23 at 27 ("No FBI policy or standard operating procedure sets forth how to locate or navigate to a target[.]"). And no law gives the FBI discretion to raid a house without a warrant or an exception to the warrant requirement.

With no statute or regulation guiding his actions, whatever judgment Guerra had in deciding how to execute the raid was untethered from an "established governmental policy" that the discretionary-function exception was intended to shield. *Gaubert*, 499 U.S. at 324. As a result, a judgment in Plaintiffs' favor does not require a judicial inquiry into any regulatory regime; there is no policy to attack

"through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814; *see also Hatahley*, 351 U.S. at 180–81. The discretionary-function exception does not apply.

### 2. As the government concedes, the discretionary-function exception does not immunize unconstitutional conduct.

The parties agree that the discretionary-function exception does not shield constitutional violations. *See* Petition for Certiorari at 31–33, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362); BIO at 13 ("The government agrees that a constitutional mandate, no less than a federal statutory or regulatory one, can eliminate a government official's discretion . . . ."). So, too, does nearly every circuit that has considered the issue. *See Xi*, 68 F.4th at 838 n.10 (collecting cases).

The discretionary-function exception cannot cover unconstitutional acts because the Constitution sets the outer bounds of federal employees' lawful discretionary action. *See Limone v. United States*, 579 F.3d 79, 102 n.13 (1st Cir. 2009) (explaining that an unconstitutional act "negat[es] the discretionary function defense"). Given this fundamental tenet of our republic, "[i]t is . . . a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority." *Meyers & Meyers, Inc. v. USPS*, 527 F.2d 1252, 1261 (2d Cir. 1975). *Contra Shivers*, 1 F.4th at 929–30.

Again, the government agrees with this basic premise. *See* BIO at 13. Yet it tries to avoid the consequences of its position by importing the qualified-immunity standard into FTCA cases. *Id.* While Guerra's conduct violated the Fourth Amendment, the argument goes, sovereign immunity applies because he did not violate clearly-established law. *Id.* The parties' only disagreement, then, concerns whether qualified immunity has a place in the discretionary-function analysis. *See id.* It does not.

Under the government's theory, federal employees exercise discretion under *Gaubert*'s first prong whenever their actions involve an "element of judgment or choice," unless "clearly established statutory or constitutional" law "*specifically prescribes* a course of action[.]" Respondent's Brief at 36–37, *Martin v. United States*, 145 S. Ct. 1689 (2025) (No. 24-362) ("*Martin* Gov't Br.") (mashing together *Gaubert* and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). And the exercise of discretion satisfies *Gaubert*'s second prong whenever an officer merely *executes* federal policy. *Id.* at 42–43. *But see* 28 U.S.C. § 2680(h) (waiving immunity when officers "empowered . . . to execute searches" commit enumerated torts). The upshot is that—unless a law-enforcement officer violates a mandatory statute or

41

clearly-established constitutional law—the discretionary-function exception applies. *See Martin* Gov't Br. at 37.

The government's interpretation defies text, history, and the linear nature of time. The discretionary-function exception, which Congress enacted in 1946, predates the Supreme Court's creation of the clearly-established test by nearly four decades. *See Harlow*, 457 U.S. at 818 (creating the modern doctrine of qualified immunity in 1982). Yet the government maintains that the FTCA's drafters clairvoyantly embedded qualified sovereign immunity "into a statute designed to limit" immunity. *Indian Towing*, 350 U.S. at 69.

The FTCA's text forecloses the government's crabbed interpretation. Through the FTCA, Congress "expressly bound the federal government to accept liability under state tort law on the same terms as a 'private individual.'" *Martin*, 145 S. Ct. at 1702 (quoting 28 U.S.C. § 2674). Private individuals, of course, do not enjoy qualified immunity. *Wyatt v. Cole*, 504 U.S. 158, 168 (1992). And it makes no sense to superimpose a doctrine that defends officers against *individual* liability onto a statute that assumes *government* liability. *Xi*, 68 F.4th at 839–40 ("[T]he chilling effect and 'social costs'" associated with individual liability "are absent in the FTCA context[.]").

42

The government's interpretation also ignores the fact that *every* tort involves some exercise of discretion. A defendant's decision to enter someone's land without authorization (trespass), drive while distracted or intoxicated (negligence), or take a swing in a heated argument (battery) creates the very basis of tort liability. Each decision involves discretion in the loosest sense (and, depending on the circumstances, may not run afoul of clearly-established constitutional law). But none involves the sort of regulatory policy-making discretion Congress enacted the discretionary-function exception to shield. *See Gaubert*, 499 U.S. at 325 & n.7. The presence of such ordinary discretion cannot transform these common-law torts into protected conduct just because a federal officer is involved.

No circuit has ever adopted the government's position, though several have rejected it. *Xi*, 68 F.4th at 839–40; *Torres-Estrada v. Cases*, 88 F.4th 14, 22 (1st Cir. 2023); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) (declining to incorporate the clearly-established test into the discretionary-function exception without settling the issue). These courts have rightly concluded that the "'clearly established' requirement has no place in [the discretionary-function analysis], where it is unmoored from both precedent and purpose." *Xi*, 68 F.4th at 839. Thus, the

43

weight of circuit precedent holds that a constitutional violation alone (without regard to clearly-established law) is enough to pierce the discretionary-function exception.

Reconsidering this case "in the first instance," *Martin*, 145 S. Ct. at 1703, this Court should hold the same. It's easy to do so here because this case presents fundamental constitutional violations. Indeed, "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant" for that home "are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).

The Supreme Court laid out the Fourth Amendment standard for assessing the reasonableness of a wrong-house raid in *Maryland v. Garrison*, 480 U.S. at 88. In *Garrison*, Baltimore police officers executed a search warrant at the wrong apartment because they mistakenly believed that the third floor of a complex contained one unit, rather than two. *Id.* at 80. Before executing the warrant, the officers attempted to identify their target, but none of their efforts alerted them to the fact that the third floor contained two apartments.[10] *Id.* at 88. Even the suspect—who met the police

---

[10] For instance, the officers (1) reviewed the warrant, which (mistakenly) authorized them to search the entire third floor; (2) traveled to the complex before executing the warrant to confirm that it matched an informant's (and the warrant's) description; (3) confirmed with the utility company that only one customer resided on the third

44

outside the complex and gave them his key—did not mention that he had a neighbor. *Id.* at 81 & n.2. So when the officers executed the warrant, they "reasonably believed [the suspect] was the only tenant on that floor." *Id.* at 85 n.10.

Because "[t]he objective facts available to the officers at the time suggested no distinction between" the apartments, *Garrison* held that the search complied with the Fourth Amendment. *Id.* at 88. If the officers "should have known[] that the third floor contained two apartments[,]" however, the search of the wrong dwelling would have been unconstitutional. *Id.* at 86–87. This is a diligence inquiry: Before executing a warrant, officers must make "a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." *Id.* at 88. In *Garrison*, they did, and none of their efforts revealed they were about to search the wrong place—even though they were. *Id.*

This Court has recognized that, under *Garrison*, officers violate the Fourth Amendment when they raid a house without taking steps to confirm it is the house described in the warrant. *Hartsfield*, 50 F.3d at 955. This description fits Guerra's actions to a T. He could have easily checked the posted address before instructing

---

floor; and (4) verified through police records that the suspect lived at the address. *Garrison*, 480 U.S. at 80–82, 85 n.10.

his SWAT team to breach Plaintiffs' door. But, as the Supreme Court pointed out, Guerra "neither noticed the street sign for 'Denville Trace,' nor [Plaintiffs'] house number, which was visible on the mailbox at the end of the driveway." *Martin*, 145 S. Ct. at 1695. He also "failed to appreciate that a different car was parked in the driveway"—a car that did not belong to the suspect. *Id.*

In short, Guerra "did not check to make sure that he was leading the other officers to the correct address" or take "precautionary measures such as those performed by the officers in *Garrison*." *Hartsfield*, 50 F.3d at 955. As a result, he violated the Fourth Amendment and exceeded any lawful discretion he could have possessed. This Court should therefore join its sisters and hold that the discretionary-function exception does not apply.

### 3.     The discretionary-function exception does not immunize careless conduct.

The discretionary-function exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. The circuits are split over whether this means the exception applies to torts caused by an employee's carelessness rather than actual policy considerations. This Court has not weighed in on this split. It should do so here and conclude that Guerra's carelessness in raiding Plaintiffs' home precludes immunity.

46

Careless acts cannot trigger the discretionary-function exception because the government must "exercise[] its discretion" with due care. *Indian Towing*, 350 U.S. at 69; *see also Rayonier Inc. v. United States*, 352 U.S. 315, 317 (1957) (reversing circuit court's dismissal of FTCA complaint that premised its claims on "carelessness by the Forest Service in fighting [a] fire"); *E. Air Lines, Inc. v. Union Tr. Co.*, 221 F.2d 62, 77 (D.C. Cir. 1955) ("[D]iscretion was exercised when it was decided to operate [an air-traffic control] tower, but the tower personnel had no discretion to operate it negligently."), *aff'd sub nom. Union Tr. Co.*, 350 U.S. 907.[11] An official's carelessness or lack of diligence in executing a policy does not advance that policy—it undermines it. Such oversights and mistakes, therefore, cannot be even "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. Thus, as Professor Gregory C. Sisk explains, "[t]he discretionary function exception is not a license for government to be careless

---

[11] *Eastern Air Lines, Inc.* involved two sets of negligence claims arising out of an airplane crash: one against the airline under private tort law, and another against the United States under the FTCA. 221 F.2d at 64. The D.C. Circuit reversed the jury's judgment against the airline, *id.* at 73, but upheld the district court's holding that the government air-traffic controllers had been negligent, *id.* at 78. Both judgments were appealed, and the Supreme Court affirmed only the ruling against the United States. *Compare Union Tr. Co.*, 350 U.S. 907 (affirming FTCA judgment), *with Union Tr. Co. v. E. Air Lines, Inc.*, 350 U.S. 907 (1955) (mem.) (reversing judgment in favor of private airline).

and neglectful." Gregory C. Sisk, *Immunity for Imaginary Policy in Tort Claims Against the Federal Government*, 100 Notre Dame L. Rev. 729, 782 (2025).

Three circuits (the Second, Fourth, and Seventh) have recognized this limitation. They hold that—because careless action does not require the weighing of policy considerations—the discretionary-function exception cannot apply when an officer's sheer incompetence or laziness causes harm. *Coulthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000); *Rich v. United States*, 811 F.3d 140, 147 (4th Cir. 2015); *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003); *see also Cestonaro v. United States*, 211 F.3d 749, 753 (3d Cir. 2000) (explaining that, to trigger immunity, a federal employee's acts must actually—not just hypothetically—"be grounded in the policy of a regulatory regime"). On the other side, three circuits (the Eighth, Ninth, and Tenth) allow careless acts to trigger the exception. *Willis v. Boyd*, 993 F.3d 545, 549 (8th Cir. 2021); *Gonzalez v. United States*, 814 F.3d 1022, 1033 (9th Cir. 2016); *Kiehn v. United States*, 984 F.2d 1100, 1105 (10th Cir. 1993). They find that an employee's carelessness is always irrelevant because "the government is not required to prove either that an affirmative decision was made, or that any decision actually involved the weighing of policy considerations, in order to claim immunity." *Gonzalez*, 814 F.3d at 1033.

48

The latter approach undermines the very purpose of the FTCA. Congress passed the Act specifically to compensate victims of federal employees' negligent mistakes. *See Feres*, 340 U.S. at 139–40. Treating carelessness as a discretionary function ignores the Court's longstanding warning that the FTCA must not be "whittle[d ] down by refinements" that countermand the statute's "clearly defined breadth of purpose[.]" *United States v. Yellow Cab Co.*, 340 U.S. 543, 550 (1951). And it accepts the government's invitation to create extratextual barriers to the relief Congress has guaranteed, even though the Supreme Court has repeatedly "refuse[d] the invitation[.]" *Mass. Bonding & Ins. Co. v. United States*, 352 U.S. 128, 134 (1956); *see Martin*, 145 S. Ct. at 1702 (rejecting extratextual Supremacy Clause defense to FTCA claims).

So long as a plaintiff's claims do not require courts to assess "the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act[,]" those claims fall outside the discretionary-function exception. *Varig Airlines*, 467 U.S. at 809. A court imposing liability for an employee's carelessness does not run afoul of any of these limitations—if anything, it protects the other branches' policy decisions by holding responsible those who haphazardly execute them.

49

Here, Guerra did not make a discretionary policy choice when he ordered a SWAT team to raid Plaintiffs' house. Instead, he made a series of careless mistakes: He failed to confirm that the address listed in the warrant matched the address he instructed his SWAT team to raid. *Martin*, 145 S. Ct. at 1695. He used Plaintiffs' car—one never associated with the suspect—to confirm which house to assault. *Id.* And he blamed his personal GPS for directing him to the wrong address, but he threw away that GPS before anyone could corroborate his story. *Id.* at 1694–95. None of these mistakes resulted from Guerra weighing regulatory-policy choices—actual or hypothetical. And they could have been prevented with minimal diligence. More bluntly, they were mistakes that we would expect an average pizza delivery driver to avoid. This Court should hold that the discretionary-function exception cannot insulate such carelessness from accountability.

## II.   Applying the discretionary-function exception to intentional-tort claims arising from a wrong-house raid is particularly inappropriate.

Apart from *Hatahley*, Supreme Court caselaw construing the discretionary-function exception has focused on negligence cases. *See* Part I.A, *supra*. As a result, courts face "significant confusion" construing the exception when a plaintiff's claims arise out of the FTCA's law-enforcement proviso. *See Xi*, 68 F.4th at 843 (Bibas, J., concurring).

50

Most of the confusion surrounding the discretionary-function exception—and its interaction with the law-enforcement proviso—is unwarranted. Properly understood, there is little (if any) overlap between the provisions. That's because, as discussed above, Congress enacted the discretionary-function exception to protect *regulatory policy* from collateral attack in tort. *See* Part I.A, *supra*. As this section explains, Congress passed the law-enforcement proviso to create a cause of action for wrongful torts that, as a matter of law, *cannot arise* from the execution of regulatory policy. *See Martin*, 145 S. Ct. at 1706 (Sotomayor, J., concurring) ("Courts . . . should not ignore the existence of the law enforcement proviso, or the factual context that inspired its passage, when construing the discretionary-function exception."). But if the discretionary-function exception is read too broadly, it threatens to nullify the proviso altogether—including in the exact sort of cases that sparked the proviso's passage.

## A. The law-enforcement proviso waives sovereign immunity for certain intentional torts that are necessarily unlawful.

The FTCA's intentional-tort exception, 28 U.S.C. § 2680(h), bars claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." At the outset, Section 2680(h)'s very existence

51

suggests that Congress did not believe the discretionary-function exception would bar intentional-tort claims on its own. *See Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010) (applying "the canon against interpreting any statutory provision in a manner that would render another provision superfluous"); *Cope v. Cope*, 137 U.S. 682, 688–89 (1891) (explaining that an exception created in a later-enacted proviso showed that Congress did not think a broader, prior-enacted provision in the statute already barred recovery).

The intentional-tort exception is subject to an exception of its own. In 1974, Congress amended Section 2680(h) to add a law-enforcement proviso, which waives sovereign immunity for six intentional torts when committed by law-enforcement officers. 28 U.S.C. § 2680(h). Congress enacted the proviso in response to two wrong-house raids conducted by federal police in Collinsville, Illinois, the year before. *See* Boger et al., *supra*, at 499–517. Although these raids sparked the proviso's passage, its text extends beyond their circumstances. The proviso negates the intentional-tort exception for *all* claims based on certain torts committed by officers who have "legal authority" to "execut[e] a search, seiz[e] evidence, or mak[e] an arrest" under federal law. *Millbrook v. United States*, 569 U.S. 50, 56 (2013). Thus, if a plaintiff can establish that a federal law-enforcement officer's conduct met the

52

elements of a state intentional tort, the proviso provides her a cause of action under the FTCA.

When Congress passed the proviso, it knew that state tort law, by design, cannot impose liability for law-enforcement actions authorized by federal law. Consider the elements of a battery in Georgia. To prevail, a plaintiff must prove his injury was not "justified under some rule of law." Ga. Code Ann. § 51-1-13. If an officer entered a house for which he had a warrant and arrested the suspect inside, there would be no tort under Georgia law because the officer's actions were justified. See *Haile v. Pittman*, 389 S.E.2d 564, 566 (Ga. Ct. App. 1989) (no claim for battery against security guard and police officers who had probable cause to arrest alleged trespassers). And without an actionable tort under state law, the arrestee's FTCA claim could not satisfy the elements of Section 1346(b).[12] *See* 28 U.S.C. § 1346(b)(1) (imposing liability "in accordance with the law of the place where the act or omission occurred").

---

[12] The other proviso torts work the same way. Under Georgia law, for example, assault is only actionable if it's "illegal" or "violent," Ga. Code. Ann. § 51-1-14; false imprisonment covers only "unlawful detention," Ga. Code Ann. § 51-7-20; false arrest and malicious prosecution must lack "probable cause," Ga. Code Ann. §§ 51-7-1, 51-7-40; and abuse of process can only be committed "[w]ithout substantial justification," Ga. Code. Ann. § 51-7-81.

At that point, it would be improper to apply the discretionary-function exception to the arrestee's claim. The Supreme Court has explained that the FTCA's exceptions should only be construed to apply to claims that independently satisfy Section 1346(b)'s requirements—an impossible task for tort claims challenging lawful law-enforcement action. *See Sheridan v. United States*, 487 U.S. 392, 400 (1988) ("[T]he intentional tort exception is simply inapplicable to torts that fall outside the scope of § 1346(b)'s general waiver.").

This analysis demonstrates that law-enforcement proviso claims are, categorically, not based on a discretionary function: To fall within Section 1346(b)'s waiver of sovereign immunity, an intentional tort *must be* unlawful. Law-enforcement actions explicitly authorized by valid federal law, of course, *cannot be* unlawful. As a result, any FTCA suit challenging lawful actions to enforce the law will fail without reference to any exception in Section 2680—least of all the discretionary-function exception. Other circuits have reached a similar conclusion by explaining that day-to-day law-enforcement activities—and the intentional torts they sometimes cause—do not involve the kinds of policy concerns the discretionary-function

54

exception shields.[13] To ensure that the law-enforcement proviso permits the cause

of action Congress intended, this Court should follow suit.

B.     An all-encompassing interpretation of the discretionary-function
        exception would nullify the proviso.

Rather than engage with the nuances of the discretionary-function exception

and the law-enforcement proviso, the government advances a staggeringly broad

theory: The discretionary-function exception defeats nearly every proviso claim

unless the federal officer's conduct violated clearly-established constitutional law.

*Martin* Gov't Br. at 36–37. As discussed above, every circuit to confront this position

has rejected it. *Xi*, 68 F.4th at 839–40; *Torres-Estrada*, 88 F.4th at 22; *Loumiet*, 828

F.3d at 943. But this Court, too, has "suggested" that the discretionary-function

---

[13] *See, e.g.*, *Caban v. United States*, 671 F.2d 1230, 1233 (2d Cir. 1982) (holding that the actions of INS agents who wrongly detained an individual were "not the kind that involve weighing important policy choices"); *Gray v. Bell*, 712 F.2d 490, 508 (D.C. Cir. 1983) (explaining that law-enforcement officers' "jobs do not typically include discretionary functions"); *Pooler v. United States*, 787 F.2d 868, 872 (3d Cir. 1986) (noting that "[i]t is hard to imagine circumstances in which the activities of officers engaging in searches, seizures or arrests would fall" under the discretionary-function exception), *abrogated in part on other grounds by Millbrook*, 569 U.S. 50; *Garcia v. United States*, 826 F.2d 806, 809 (9th Cir. 1987) (reasoning that, "[w]hile law enforcement involves exercise of a certain amount of discretion on the part of individual officers, such decisions do not involve the sort of generalized social, economic and political policy choices that Congress intended to exempt from tort liability").

exception applies beyond its textual bounds. *See Martin*, 145 S. Ct. at 1703 (citing *Shivers*, 1 F.4th at 931). In *Shivers*, this Court supposed that the exception applies "*unless* a source of federal law specifically prescribes a course of conduct." 1 F.4th at 931 (cleaned up).

Both the government's clearly-established theory and this Court's suggestion in *Shivers* "run headlong into [the Supreme] Court's precedents." *Martin*, 145 S. Ct. at 1705 (Sotomayor, J., concurring); *see also id.* at 1703 (unanimous op.) (offering several reasons to question *Shivers*). In doing so, they ignore the exception's roots in regulatory policymaking and allow *Gaubert*'s permissive first step to override its restrictive second step. Such faulty reasoning leads to cases like this one, where Plaintiffs must fight tooth and nail to invoke the cause of action Congress tailor-made for them by passing the proviso. Indeed, if Plaintiffs' proviso claims—those arising out of a wrong-house raid by federal officers enforcing narcotics laws—are barred by the discretionary-function exception, then Congress accomplished nothing by adding the proviso to the FTCA.

We must presume Congress did not enact a useless proviso. This Court should reject the government's call to introduce needless conflict into the FTCA by holding otherwise.

C.    **The historical context confirms that wrong-house raids are actionable under the FTCA.**

All contextual evidence shows that Congress enacted the law-enforcement proviso with cases like this one in mind. *See Martin*, 145 S. Ct. at 1705 (Sotomayor, J., concurring) ("The FTCA's history [] confirms Congress's intention to subject the United States to liability for intentional torts committed by law enforcement officers like Agent Guerra."). As this Court has recognized, Congress passed the proviso shortly after a pair of "highly-publicized raids by federal narcotics agents on the homes of innocent families[.]" *Nguyen*, 556 F.3d at 1254.

The Supreme Court has explained that it was "crystal clear" to Congress that the proviso would give "'innocent individuals who are subjected to raids . . . a cause of action against'" the United States. *Carlson*, 446 U.S. at 20 (quoting S. Rep. No. 93-588, at 3). And according to the same Senate Report the Supreme Court quoted in *Carlson*, that cause of action strips the government "of the defense of sovereign immunity in cases in which Federal law enforcement agents, acting within the scope of their employment, or under color of Federal law, commit" an enumerated tort. S. Rep. No. 93-588, at 3. Nowhere did Congress hint that this cause of action could be rendered instantly meaningless in its core applications by the discretionary-function exception. But an overbroad reading of the discretionary-function exception

57

threatens to do just that. After all, if the discretionary-function exception applies whenever a federal law-enforcement officer tries to enforce criminal law generally, even the Collinsville raids would have been barred. Such a result would contradict Congress's design. *See Carlson*, 446 U.S. at 20.

*　　*　　*

No matter how this Court ultimately construes the discretionary-function exception, one thing is clear: The answer to the first question the Supreme Court posed on remand should be that the exception cannot "*ever* foreclose a suit like this one[.]" *Martin*, 145 S. Ct. at 1703 (emphasis added). This is because, at its core, the discretionary-function exception protects decisions within a government functionary's delegated power that are "grounded in the policy of [a] regulatory regime." *Gaubert*, 499 U.S. at 325. This protection does not extend to unconstitutional or easily-preventable mistakes that frustrate (or exist outside) the execution of federal policy. Nor does the exception reach the law-enforcement proviso, which allows plaintiffs to bring claims for intentional torts that are definitionally unlawful. At bottom, the discretionary-function exception applies only when resolving the case requires a court to assess the wisdom of regulatory policy.

58

Policy is absent here. Agent Guerra's decision to sic a SWAT team on Plaintiffs' house—the wrong house—bore no connection to policy whatsoever. It was instead a serious, unconstitutional, and incompetent mistake with terrifying consequences. Reviewing this case from the ground up, this Court should conclude that the discretionary-function exception cannot prevent Plaintiffs from recovering for the negligent and intentional torts inflicted on them.

### III. A private individual would be liable under Georgia law for the torts committed against Plaintiffs, and no defense in 28 U.S.C. § 2674 applies.

When this case was before the Supreme Court, it explained that "Georgia law would permit a homeowner to sue a private person for damages if that person intentionally or negligently raided his house and assaulted him." *Martin*, 145 S. Ct. at 1700 (citing *Hendricks v. S. Bell Tel. & Tel. Co.*, 387 S.E.2d 593, 594–95 (Ga. Ct. App. 1989) (discussing assault, battery, and trespass); *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1301 (M.D. Ga. 2012) (discussing negligence)). The district court similarly concluded that the government is not entitled to summary judgment on all but one of Plaintiffs' proviso claims. Doc. 124 at 29–37. Thus, after concluding that the discretionary-function exception does not bar Plaintiffs' claims, the only question left for this Court to decide is whether any other defense listed in 28 U.S.C. § 2674 bars them. *See Martin*, 145 S. Ct. at 1703. The answer is no.

59

Section 2674 allows the United States to assert two types of defenses to FTCA claims: "judicial and legislative immunity," and "any other defenses to which the United States is entitled." Legislative and judicial immunity do not apply to this case. Nor do "any other defenses." This language was introduced to the FTCA through the passage of the Westfall Act in 1988. Before Congress enacted the Westfall Act, individuals harmed by the common-law torts of federal employees could (1) sue those employees individually under state law and (2) sue the United States under the FTCA. *See generally Westfall*, 484 U.S. at 293. The Act amended the FTCA to make the United States the exclusive defendant for common-law claims arising out of federal officials' actions taken in the scope of their employment. *See* 28 U.S.C. § 2679. After making this change, Congress added the "other defenses" language to Section 2674 to make sure that the United States could assert "ordinary tort defenses" in FTCA suits. H.R. Rep. No. 100-700, at 5 (1988).

The district court already concluded that, under Georgia law, ordinary tort defenses do not bar Plaintiffs' claims. *See* Doc. 124 at 29–37. No intervening order has disturbed that holding, and this Court should not disturb it now.

If the government believes that immunities available only to state law-enforcement officers shield it from liability, *see* Doc. 133 at 9–14 (motion for

60

reconsideration), the government is mistaken. Those are not immunities to which a "private individual" or "the United States" is entitled. 28 U.S.C. § 2674; *see also Martin*, 145 S. Ct. at 1702 (rejecting Supremacy Clause bar because neither the United States nor a private person "could deploy *In re Neagle* to his advantage"); *Villafranca v. United States*, 587 F.3d 257, 263–64 (5th Cir. 2009) (holding that immunities available to state law-enforcement officers do not apply to FTCA claims). Thus—like the discretionary-function exception—these immunities do not bar Plaintiffs' claims.

## CONCLUSION

For the reasons discussed above, this Court should (1) hold that the discretionary-function exception does not bar Plaintiffs' negligent- or intentional-tort claims, (2) hold that, under Georgia law, a private person in like circumstances would be liable to Plaintiffs in tort, and (3) remand this case for trial.

Respectfully submitted on September 22, 2025,

|  | /s/ Patrick Jaicomo |
|---|---|
| Lisa C. Lambert | Patrick Jaicomo |
| LAW OFFICE OF | *Lead Counsel* |
| LISA C. LAMBERT | Anya Bidwell |
| 245 N. Highland Ave., | Dylan Moore |
| Suite 230-139 | Jared McClain |
| Atlanta, GA 30307 | INSTITUTE FOR JUSTICE |
|  | 901 N. Glebe Rd., |

61

Zack Greenamyre
MITCHELL SHAPIRO
GREENAMYRE & FUNT
881 Piedmont Ave. NE
Atlanta, GA 30309

Jeffrey R. Filipovits
SPEARS & FILIPOVITS
315 W. Ponce de Leon Ave., Suite 865
Decatur, GA 30030

Suite 900
Arlington, VA 22203
(703) 682-9320
pjaicomo@ij.org

*Attorneys for Plaintiffs-Appellants*

62

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 12,924 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity A font.

September 22, 2025.

/s/ Patrick Jaicomo
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which automatically sends notice of such filing to all parties and counsel of record.

/s/ Patrick Jaicomo
*Counsel for Plaintiffs-Appellants*