No. 23-10062-JJ

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

### CURTRINA MARTIN, ET AL.,

*Plaintiffs-Appellants,*

*v.*

### UNITED STATES OF AMERICA, ET AL.,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:19-CV-04106-JPB

## SUPPLEMENTAL BRIEF OF APPELLEE UNITED STATES OF AMERICA

THEODORE S. HERTZBERG
*United States Attorney*

AARON J. ROSS
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000

*Curtrina Martin, et al. v. United States of America, et al.*
No. 23-10062-JJ

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to those listed in Appellants' brief, the following people

and entities have an interest in the outcome of this appeal:

Bidwell, Anya, Attorney for Plaintiffs-Appellants

Boulee, Hon. J.P., United States District Judge

Buchanan, Ryan K., former United States Attorney

Cliatt, Hilliard Toi, Plaintiff-Appellant

Erskine, Kurt R., former United States Attorney

Filipovits, Jeffrey R., Attorney for Plaintiffs-Appellants Curtrina
    Martin and G.W.

Greenamyre, Zack, Attorney for Plaintiff-Appellant Hilliard Toi Cliatt

Guerra, Lawrence, Defendant-Appellee

G.W., Plaintiff-Appellant

Harris, Sarah M., Deputy Solicitor General

Hertzberg, Theodore S., United States Attorney

Institute for Justice, Attorney for Plaintiffs-Appellants

Jaicomo, Patrick, Attorney for Plaintiffs-Appellants

Johnson, Hon. Walter E., United States Magistrate Judge

Kneedler, Edwin S., former Deputy Solicitor General

C - 1 of 2

*Curtrina Martin, et al. v. United States of America, et al.*
No. 23-10062-JJ

Lambert, Lisa C., Attorney for Plaintiffs-Appellants Curtrina Martin and G.W.

Law Office of Lisa C. Lambert, Attorney for Plaintiffs-Appellants Curtrina Martin and G.W.

Liu, Frederick, Assistant to the Solicitor General

Martin, Curtrina, Plaintiff-Appellant

McClain, Jared, Attorney for Plaintiffs-Appellants

Mendel, Gabriel A., Assistant United States Attorney

Mills, Christopher, Supreme Court-appointed *amicus curiae*

Mitchell & Shapiro, LLC, Attorney for Plaintiff-Appellant Hilliard Toi Cliatt

Moore, Dylan, Attorney for Plaintiffs-Appellants

Moultrie, Richard M., former Acting United States Attorney

Pak, Byung J., former United States Attorney

Ross, Aaron J., Assistant United States Attorney

Roth, Yaakov M., Principal Deputy Assistant Attorney General

Salzman, Joshua M., former Attorney, United States Department of Justice, Civil Division

Sommerfeld, Lawrence R., former Assistant United States Attorney

Spears & Filipovits, LLC, Attorney for Plaintiffs-Appellants Curtrina Martin and G.W.

United States of America, Defendant-Appellee

Williams, Samuel H., former Assistant United States Attorney

## STATEMENT REGARDING ORAL ARGUMENT

The Court invited supplemental briefing in light of the Supreme Court's decision in *Martin v. United* States, 605 U.S. 395 (2025). C.A.Doc. 53 at 2.[1] The Court directed the clerk to place this case on an oral argument calendar after conclusion of the briefing. *Id.*

---

[1] The United States uses Plaintiffs' citation format. "C.A.Doc." refers to this Court's docket. "Doc." refers to the district court docket. Page numbers to any transcripts cited are the page numbers designated by the court reporter. *See* 11th Cir. R. 28-5.

i

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ........................................................................... C-1

Statement Regarding Oral Argument ............................................... i

Table of Contents ............................................................................ ii

Table of Citations ........................................................................... v

Statement of Jurisdiction ................................................................ x

Statement of the Issues ................................................................... 1

Statement of the Case ..................................................................... 3

    A. Statement of the Facts ............................................................ 3

    B. Course of Proceedings and Disposition Below ...................... 8

        1. Course of Proceedings ...................................................... 8

        2. District Court Decision .................................................. 10

            a. The *Bivens* decision .................................................. 10

            b. The FTCA decision ................................................... 12

        3. This Court's Prior Decision ........................................... 13

            a. The *Bivens* decision .................................................. 13

            b. The FTCA decision ................................................... 13

        4. The Supreme Court decision .......................................... 15

    C. Standard of Review .............................................................. 17

Summary of the Argument ............................................................ 18

Argument and Citations of Authority ........................................... 20

I. The discretionary-function exception bars all of Plaintiffs' FTCA claims. ............................................................................ 20

    A. The agents' conduct satisfies *Gaubert*'s two-part test. ......... 20

1. The agents' conduct involved an element of judgment or choice. .............................................................. 22

2. The judgment or choice was susceptible to policy analysis. ......................................................................... 26

B. The discretionary-function exception is not categorically inapplicable to the various kinds of conduct that Plaintiffs identify.................................................................................. 32

1. The discretionary-function exception is not categorically inapplicable to the day-to-day acts of line-level federal law-enforcement officers. ...................................................... 32

2. The discretionary-function exception is not categorically inapplicable to unconstitutional conduct, and the agents' conduct was not unconstitutional in any event. ........... 34

3. The discretionary-function exception is not categorically inapplicable to careless conduct, and the agents' conduct was not careless in any event. ......................................... 37

4. The discretionary-function exception is not categorically inapplicable to claims that fall within the law-enforcement proviso. ...................................................... 38

II. Plaintiffs' FTCA claims fail as a matter of Georgia law. ........... 41

A. Plaintiffs' false imprisonment claim fails under Georgia law because none of the agents acted in bad faith. ................... 41

B. Plaintiffs' assault and battery claim fails because the agents' use of force was reasonable.................................................. 48

C. Plaintiffs' trespass and interference with private property claim fails under Georgia's "innocent trespasser" doctrine. ............................................................................... 51

D. Plaintiffs' negligent and intentional infliction of emotional distress claims fail under Georgia law. ................................ 52

1. Negligent infliction of emotional distress....................... 52

iii

2. Intentional infliction of emotional distress ................... 54

E. Plaintiffs' negligence claims fails under Georgia law. .......... 56

Conclusion ....................................................................... 58

Certificate of compliance with type-volume limit, typeface requirements, and type-style requirements ............................... 59

Certificate of Service ....................................................... 60

# TABLE OF CITATIONS

**Federal Cases**

*Andrews v. Marshall,*
845 F. App'x 849 (11th Cir. 2021) .................................................. 55

*Askew v. Bloemker,*
548 F.2d 673 (7th Cir. 1976) ......................................................... 40

*Avina v. United States,*
681 F.3d 1127 (9th Cir. 2012) .................................................. 44, 47

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
403 U.S. 388 (1971) ...................................................................... 1

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
601 U.S. 42 (2024) ....................................................................... 20

*Foley v. Connelie,*
435 U.S. 291 (1978) ........................................................ 23, 33, 34

*Foster Logging, Inc. v. United States,*
973 F.3d 1152 (11th Cir. 2020) ............................................... 26, 27

*Galvez v. Bruce,*
552 F.3d 1238 (11th Cir. 2008) ...................................................... 17

*Gober v. United States,*
778 F.2d 1552 (11th Cir. 1986) ...................................................... 47

*Gomez v. United States,*
601 F. App'x 841 (11th Cir. 2015) ............................................ 43, 44

*Graham v. Connor,*
490 U.S. 386 (1989) ...................................................................... 33

*Hatahley v. United States,*
351 U.S. 173 (1956) ...................................................................... 31

*Heien v. North Carolina,*
574 U.S. 54 (2014) ....................................................................... 40

*Kordash v. United States,*
51 F.4th 1289 (11th Cir. 2022) ...................................................... 13

*Laird v. Nelms,*
406 U.S. 797 (1972) .................................................................. 25, 47

\*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*Liggion v. United States,*
  696 F. Supp. 3d 1257 (N.D. Ga. 2023) ........................45, 46, 47, 51
*Martin v. United States,*
  145 S. Ct. 1158 (2025) ............................................................ 10, 15
*Martin v. United States,*
  605 U.S. 395 (2025) ........i, 1, 10, 15–17, 24, 25, 28, 35, 38, 39, 41
*\*Mesa v. United States,*
  123 F.3d 1435 (11th Cir. 1997).............................. 14, 23, 24, 29, 30
*Mid-South Holding Co., Inc. v. United States,*
  225 F.3d 1201 (11th Cir. 2000).................................................. 23, 24
*Mozlof v. United States,*
  502 U.S. 301 (1992) .................................................................. 20, 21
*Muehler v. Mena,*
  544 U.S. 93 (2005) .......................................................................... 49
*Myers v. Bowman,*
  713 F.3d 1319 (11th Cir. 2013)....................................................... 49
*Nguyen v. United States,*
  556 F.3d 1244 (11th Cir. 2009).......................................................... 9
*Ochran v. United States,*
  273 F.3d 1315 (11th Cir. 2001)................................................... 56, 57
*Rodriguez v. Farrell,*
  280 F.3d 1341 (11th Cir. 2002)....................................................... 49
*Serrano v. United States,*
  766 F. App'x 561 (10th Cir. 2019) ............................................ 44, 47
*Shivers v. United States,*
  1 F.4th 924 (11th Cir. 2021).........................................14, 34, 35, 37
*Solis-Alarcon v. United States,*
  662 F.3d 577 (1st Cir. 2011)..................................................... 44, 47
*United States v. Buselli,*
  106 F.4th 1273 (11th Cir. 2024)...................................................... 32
*\*United States v. Gaubert,*
  499 U.S. 315 (1991).............................12, 21, 22, 26–28, 30–34, 36
*United States v. Orleans,*
  425 U.S. 807 (1976) ...................................................................... 20

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*Unus v. Kane,*
   565 F.3d 103 (4th Cir. 2009) ..................................................... 44, 47

*Vargas on behalf of J.A.M. v. United States,*
   No. 1:17-CV-5052-SCJ,
   2019 WL 13056993 (N.D. Ga. Aug. 28, 2019) ............................ 54

*Villafranca v. United States,*
   587 F.3d 257 (5th Cir. 2009) ...............................................43–47, 51

*Washington v. Drug Enforcement Admin.,*
   183 F.3d 868 (8th Cir. 1999) ...................................................... 56

*Williams v. United States,*
   314 F. App'x 253 (11th Cir. 2009) .....................................23, 24, 49

*Willingham v. Loughnan,*
   321 F.3d 1299 (11th Cir. 2003) ................................................... 40

*Wimberly v. Selent,*
   No. 23-13550, 2024 WL 2845476 (11th Cir. June 5, 2024) ... 43, 44

**State Cases**

*Anderson v. Little & Davenport Funeral Home, Inc.,*
   242 Ga. 751, 251 S.E.2d 250 (1978) ........................................... 42

*Blocker v. Clark,*
   126 Ga. 484, 54 S.E. 1022 (1906) ............................................ 42, 43

*City of Richmond Hill v. Maia,*
   301 Ga. 257, 800 S.E.2d 573 (2017) ........................................... 56

*Ford v. Whipple,*
   225 Ga. App. 276, 483 S.E.2d 591 (1997) .................................. 53

*Landis v. Rockdale County,*
   212 Ga. App. 700, 445 S.E.2d 264 (1994) .................................. 57

*Lee v. State Farm Mut. Ins. Co.,*
   272 Ga. 583, 533 S.E.2d 82 (2000) ........................................ 52, 53

*Malibu Boats, LLC v. Batchelder,*
   347 Ga. App. 742, 819 S.E.2d 315 (2018) .................................. 54

*Miller v. Grand Union Co.,*
   250 Ga. App. 751, 552 S.E.2d 491 (2001) .............................. 41, 42

*Newsome v. Cooper-Wiss, Inc.,*
   179 Ga. App. 670, 347 S.E.2d 619 (1986) .................................. 48

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*Odem v. Pace Academy,*
   235 Ga. App. 648, 510 S.E.2d 326 (1998) ..................................... 55
*Phillips v. Marquis at Mt. Zion-Morrow, LLC,*
   305 Ga. App. 74, 699 S.E.2d 58 (2010) ......................................... 53
*Roddy v. Tanner Med. Ctr., Inc.,*
   262 Ga. App. 202, 585 S.E.2d 175 (2003) ..................................... 55
*Ryckeley v. Callaway,*
   261 Ga. 828, 412 S.E.2d 826 (1992) .............................................. 52
*Wallace v. Stringer,*
   250 Ga. App. 850, 553 S.E.2d 166 (2001) ..................................... 48
*Williams v. Smith,*
   179 Ga. App. 712, 348 S.E.2d 50 (1986) ....................................... 42
*Williams v. State,*
   364 Ga. App. 340, 874 S.E.2d 838 (2022) ..................................... 50
*Woodstone Townhouses, LLC v. Southern Fiber Worx, LLC,*
   358 Ga. App. 516, 855 S.E.2d 719 (2021) ..................................... 51

**Federal Statutes**
18 U.S.C. § 3052 ............................................................................... 33
18 U.S.C. § 3107 ............................................................................... 33
28 U.S.C. § 1291 .................................................................................x
28 U.S.C. § 1331 .................................................................................x
28 U.S.C. § 1346(b)(1) .............................................................. 1, 25, 41
28 U.S.C. § 2674 ........................................................... 2, 7, 17, 41, 57
28 U.S.C. § 2680(a) ................................... 1, 12, 21, 26, 34, 35, 37, 38
28 U.S.C. § 2680(h) ..................................................................... 12, 38

**State Constitution**
Ga. Const. art. 1, § 2, para. IX ......................................................... 46

**State Statutes**
O.C.G.A. § 16-3-21(a) ...................................................................... 49
O.C.G.A. § 17-4-60 ........................................................................... 49
O.C.G.A. § 51-1-13 ..................................................................... 48, 49
O.C.G.A. § 51-1-14 ..................................................................... 48, 49
O.C.G.A. § 51-7-2 ............................................................................. 53

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

O.C.G.A. § 51-7-20 ............................................................41, 46, 47, 48
O.C.G.A. § 51-7-21 ................................................... 42, 43, 46, 47, 48
O.C.G.A. § 51-9-1 ................................................................................ 51

**Federal Rules**
Fed. R. App. P. 4(b)(1)(A) ..........................................................................x
Fed. R. App. P. 32(a)(5)(A) .................................................................. 59
Fed. R. App. P. 32(a)(6) ........................................................................ 59
Fed. R. App. P. 32(a)(7)(B)(i) ............................................................... 59
Fed. R. App. P. 32(f) .............................................................................. 59
Fed. R. Civ. P. 56(a) ....................................................................... 17, 20

**Legislative Materials**
S. Rep. No. 93-588, 93d Cong., 2d Sess. 3 (1973),
*reprinted in* 1974 U.S.C.C.A.N. 2789 ................................................... 41


**Other Authorities**
Perma.cc Record, Transcript of Oral Arg. at 36,
*Martin*, 605 U.S. 395 (No. 24-362),
    https://perma.cc/v7Sd-md38 (Nov. 9, 2025) ................................. 24

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

No. 23-10062-JJ

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

CURTRINA MARTIN, ET AL.,

*Plaintiffs-Appellants,*

*v.*

UNITED STATES OF AMERICA, ET AL.,

*Defendants-Appellees.*

## STATEMENT OF JURISDICTION

(A) The district court had subject matter jurisdiction over the underlying case based on 28 U.S.C. § 1331.

(B) The court of appeals has jurisdiction over this direct appeal from the judgment of the district court under 28 U.S.C. § 1291.

(C) The notice of appeal was timely filed on January 6, 2023, within 60 days of the entry of the district court's judgment on January 3, 2023. Fed. R. App. P. 4(b)(1)(A).

(D) This appeal is from a final order and judgment that disposes of all the parties' claims in this civil case.

x

## STATEMENT OF THE ISSUES

Plaintiffs filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671 *et seq.* Docs. 1, 115. The district court granted summary judgment to Defendants, and this Court affirmed. Docs. 124, 141; C.A.Doc. 33-1.

Plaintiffs did not petition the Supreme Court for certiorari on their *Bivens* claims, and the Supreme Court did not pass on those claims. *See Martin*, 605 U.S. at 403. Additionally, while this Court invited supplemental briefing on any issues that the parties deem appropriate, Plaintiffs do not challenge this Court's prior decision on their *Bivens* claims in their supplemental briefing. C.A.Doc. 53 at 2; C.A.Doc. 54 at 1. Consequently, this Court should reinstate its prior decision on Plaintiffs' *Bivens* claims.

As set forth in the Court's supplemental briefing order, there are two issues on remand:

1. Whether 28 U.S.C. § 2680(a)'s discretionary-function exception bars either plaintiffs' negligent- or intentional-tort claims?

2. Whether, under Georgia law, a private individual under like circumstances would be liable for the acts and omissions the

1

plaintiffs allege, subject to the defenses discussed in 28 U.S.C.

§ 2674?

## STATEMENT OF THE CASE

### A. Statement of the Facts

On October 18, 2017, during the predawn hours, an FBI SWAT team led by FBI Special Agent Lawrence Guerra attempted to execute valid search and arrest warrants at Plaintiffs' home by mistake despite taking several precautionary measures to ensure proper execution of the warrants. C.A.Doc. 33-1 at 3.[2]

The warrant executions were part of an operation concerning violent gang activity in Georgia, which resulted in the issuance of arrest warrants for several individuals and search warrants for several locations. *Id.* at 2-3; Doc. 83-6 at 19. These included an arrest warrant for Joseph Riley, a violent gang member, and a search warrant for his home at 3741 Landau Lane, SW, Atlanta, Georgia 30331. C.A.Doc. 33-1 at 2-3. Due to the high risk of violence or injury to agents, the FBI determined that the warrants would be executed simultaneously at 5:00 a.m. to ensure surprise. *Id.* at 3; Doc. 83-6 at 17, 19, 26.

3741 Landau Lane is located approximately three houses away, or 436 feet, from Plaintiffs' home at 3756 Denville Trace, SW, Atlanta,

---

[2] The United States primarily cites the Court's prior findings of fact, which Plaintiffs do not challenge. *Compare* C.A.Doc. 33-1 at 3-8 *with* C.A.Doc. 54. A more detailed statement is contained in Defendants' initial brief. *See* C.A.Doc. 23 at 16-27.

3

Georgia 30331. C.A.Doc. 33-1 at 3, 5. Although Plaintiffs' home bears an address for Denville Trace, it faces Landau Lane. *Id.* at 5. Furthermore, the house number for Plaintiffs' home did not appear anywhere on or in front of Plaintiffs' home and was not visible from the front of the home. *Id.* at 4-5. It appeared only on a small mailbox on a separate street. *Id.* Similar to the target address, Plaintiffs' home was beige; it was located on the corner of the street; it was split-level; it contained a stairwell to the front door; there was a very large tree in front of the house; and it had a side-entry garage on a separate street that ran perpendicular to the front door. *Id.*

In preparation for the warrant executions, Guerra reviewed the FBI's general operation plan and SWAT addendum, which contained details about executing the search and arrest warrants at Riley's home. *Id.* at 3-4. The SWAT Addendum identified various objectives for the mission, including "[c]onduct[ing] a well coordinated operation to safely and efficiently serve Federal arrest and search warrants," "[m]aintain[ing] a high level of operational security," and "achiev[ing] a near simultaneous start to ensure surprise." Doc. 83-6 at 26.

Guerra also, among other things, conducted a site survey of 3741 Landau Lane, took photographs of the home, documented physical features of the home that he believed were unique to the home, and attended an operational briefing that included presentations on Riley

4

and 3741 Landau Lane. C.A.Doc. 33-1 at 4-5. Additionally, on the morning of the warrant executions, Guerra attempted to conduct a pre-raid drive-by of 3741 Landau Lane with FBI Special Agent Michael Lemoine. *Id.* at 5.

When Guerra and Lemoine attempted to conduct the pre-raid drive-by, it was completely dark outside, Guerra had dimmed his headlights to avoid tipping off Riley, and Guerra used his personal GPS device to navigate to 3741 Landau Lane. *Id.*; Doc. 87 at 106:18-107:12. Although Guerra entered 3741 Landau Lane into his GPS device, it alerted he and Lemoine that they had arrived at that address on Landau Lane in front of Plaintiffs' home. C.A.Doc. 33-1 at 5. Guerra further believed that he was at 3741 Landau Lane because it had the same features that he had identified for that address. *Id.* Guerra and Lemoine noticed a black Camaro in Plaintiffs' driveway and a large tree that they used as reference points when they returned with the other agents for the warrant executions. *Id.* at 6.

Guerra and Lemoine returned to the staging area, where Guerra showed the SWAT team members photographs of Riley and 3741 Landau Lane and briefed the agents on his tactical plan. *Id.* While it was still dark outside, the SWAT team and Atlanta Police Department officers—led by Guerra—headed toward the target address in a caravan of vehicles. *Id.* When Guerra spotted the black Camaro, he stopped

his vehicle in front of Plaintiffs' home, believing that the home was 3741 Landau Lane, and the other vehicles followed suit. *Id.*

None of the agents, including neither Guerra nor FBI Task Force Officer Joshua Thompson, who had conducted more than two hours of surveillance at 3741 Landau Lane only two weeks earlier, realized that they were at the wrong home. Doc. 87 at 140:5-15; Doc. 88 at 66:22-68:3, 92:10-21; Doc. 96 at 69:20-71:4. That Riley had not previously been associated with a black Camaro "did not stand out either way" because it was "not uncommon in [their] line of work if there's a different vehicle" at a target address, especially for someone like Riley who "dealt with vehicles." Doc. 88 at 12:20-14:13.

The SWAT team quickly exited the vehicles and reported to their assigned locations in front of Plaintiffs' home. C.A.Doc. 33-1 at 6. Guerra knocked and announced the presence of law enforcement before an agent breached the front door. *Id.*[3] Another agent deployed a flashbang at the entrance of the home, and the SWAT team entered the house. *Id.*

After the agents entered the home, Plaintiffs Cliatt and Martin went into their bedroom closet, where Cliatt kept a shotgun. *Id.* at 6-7.

---

[3] Contrary to the Court's prior description, the search warrant was not a "no-knock" warrant. *Compare* C.A.Doc. 33-1 at 2 *with* Doc. 83-6 at 10.

6

A SWAT team member located Cliatt and Martin in the closet, dragged Cliatt out of the closet and onto the bedroom floor with guns pointed at him, and handcuffed him. *Id.* at 7. During the same time, Martin fell in the closet, and a SWAT team member allegedly pointed a gun in her face while yelling at her to keep her hands up. *Id.* No one handcuffed or touched Martin. *Id.*

Guerra entered the bedroom and realized that Cliatt did not have the same face and tattoos that he had seen in the photographs of Riley, so he asked Cliatt for his name and address, which Cliatt provided. *Id.* At or about that time, Lemoine noticed a piece of mail in the home that showed a different address from 3741 Landau Lane and brought it to Guerra. *Id.* Upon realizing that they were at the wrong house, Guerra immediately ended the raid: an agent lifted Cliatt off the ground and uncuffed him; Guerra told Cliatt that he would come back later and explain what happened; and the agents left the house. *Id.*

In total, the agents were inside Plaintiffs' home for five minutes or less. Doc. 83-6 at 4-5 (¶ 4(f)), 49-78; Docs. 83-15, Exs. 1(a)-(b); Doc. 84. At or about 5:07 a.m., the agents made entry at 3741 Landau Lane, where Riley was arrested after attempting to flee. Doc. 83-6 at 49-78; Doc. 83-15, Exs. 1(c), (d), (e); Doc. 84; Doc. 88 at 66:22-68:13; Doc. 93 at 23:17-25:16.

Neither Guerra nor any other agent violated any FBI policy. C.A.Doc. 33-1 at 4, 13. The FBI affords its agents discretion in preparing for warrant executions. *Id.* at 13.

### B. Course of Proceedings and Disposition Below

#### 1. Course of Proceedings

This case began as two separate lawsuits filed, respectively, by Plaintiff Curtrina Martin, on behalf of herself and her minor child, G.W., and Plaintiff Hilliard Toi Cliatt. Docs. 1, 115. The district court consolidated the lawsuits in April 2022. Doc. 113. As to Guerra, Plaintiffs alleged a *Bivens* claim (Count VI) based on alleged Fourth Amendment violations for illegal entry, illegal detention, and false arrest. Doc. 1 ¶¶ 80-93; Doc. 115 ¶¶ 80-92. As to the United States, Plaintiffs allege FTCA claims for false arrest/false imprisonment (Count I),[4] assault and battery (Count II), trespass and interference with private property (Count III), negligent and intentional infliction of emotional distress (Count IV), and negligence (Count V) based on Georgia law. Doc. 1 ¶¶ 43-79; Doc. 115 ¶¶ 47-79.

---

[4] Plaintiffs appear to concede that this claim may proceed only on a false imprisonment theory. C.A.Doc. 15 at 37. The United States thus refers to this claim as only a false imprisonment claim.

8

Defendants moved for summary judgment after discovery had closed. Doc. 83. Defendants argued that qualified immunity barred Plaintiffs' *Bivens* claims; Plaintiffs' FTCA claims for false imprisonment and assault and battery failed under Georgia law; and the FTCA's discretionary-function exception barred Plaintiffs' remaining FTCA claims. Doc. 83-1 at 15-35. At the time, the United States noted that, although each of Plaintiffs' FTCA claims arises from the same conduct, *Nguyen v. United States*, 556 F.3d 1244, 1260 (11th Cir. 2009), precluded application of the discretionary-function exception to Plaintiffs' claims for false imprisonment and assault and battery. Doc. 83-1 at 26 n.5. The district court held oral argument on April 27, 2022. Doc. 113.

The district court granted summary judgment on Plaintiffs' *Bivens* claims; granted summary judgment on Plaintiffs' FTCA claims for trespass and interference with private property, negligent and intentional infliction of emotional distress, and negligence based on the discretionary-function exception; and denied summary judgment on Plaintiffs' FTCA claims for false imprisonment and assault and battery. Doc. 124.

The United States moved for reconsideration of the denial of summary judgment on the claims for false imprisonment and assault and battery, and Plaintiffs moved for reconsideration of the grant of

9

summary judgment on their *Bivens* claim. Docs. 133, 134. The district court granted the United States' motion for reconsideration and denied Plaintiffs' motion for reconsideration. Doc. 141.

This Court affirmed summary judgment to Defendants and denied Plaintiffs' petition for panel rehearing. C.A.Docs. 33-1, 37-2.

Plaintiffs petitioned the Supreme Court for a writ of certiorari only as to their FTCA claims. Pet. at i, *Martin v. United States*, 605 U.S. 395 (2025) (No. 24-362), 2024 WL 4374198, at *i. The Supreme Court granted Plaintiffs' petition in part, granting certiorari on one issue requested by Plaintiffs and one issue requested by the United States. *See Martin v. United States*, 145 S. Ct. 1158 (2025); C.A.Doc. 41.

On June 12, 2025, the Supreme Court vacated this Court's opinion and remanded. *Martin*, 605 U.S. at 415.

### 2. District Court Decision

#### a. The *Bivens* decision

The district court granted qualified immunity to Guerra on Plaintiffs' *Bivens* claims, first noting that Plaintiffs did not dispute that Guerra was acting within the scope of his discretionary authority and then determining that Guerra acted reasonably and did not violate clearly established law. Doc. 124 at 14-23 & n.5 (citations omitted).

The district court disagreed with Plaintiffs that there was a genuine dispute of fact as to whether Guerra completed the site survey and

10

second drive-by, but explained that, even if it credited Plaintiffs' contention, the record contained undisputed evidence of several other reasonable steps that Guerra took to locate the targets of the warrants and avoid mistake. *Id.* at 20-21. The district court further identified that "the execution of the warrant occurred in the dark, and the house number was not affixed anywhere on the house." In addition, the district court noted that "Plaintiffs agreed during oral argument that checking the mailbox in the midst of executing the warrant would have caused some delay in the operation," which "could have been problematic because the warrant was being served on a dangerous individual under the cover of darkness, and the simultaneous execution of multiple related warrants was important to the overall operation." *Id.* And, the district court explained that while Plaintiffs' home and the target home were dissimilar in some respects, "Plaintiffs do not dispute that the two homes shared several conspicuous features." *Id.*

The district court thus determined that "the record supports the conclusion that Guerra simply made a mistake—based on reasonable but mistaken judgment." *Id.* at 22. The district court held that, as a result, Guerra's actions did not violate the Fourth Amendment or clearly established law. *Id.* at 22-23.

11

### b. The FTCA decision

Applying the two-part test articulated in the Supreme Court's decision in *United States v. Gaubert*, 499 U.S. 315 (1991), the district court held that all of Plaintiffs' FTCA claims fell within the discretionary-function exception. Doc. 124 at 23-27. But the district court observed that this Court had interpreted the law-enforcement proviso in 28 U.S.C. § 2680(h) to override not just the intentional-tort exception in that section but also the discretionary-function exception in § 2680(a). *Id.* at 28. The district court then divided Plaintiffs' FTCA claims into two groups: (1) claims covered by the law-enforcement proviso (hereinafter, "proviso claims"), which included Plaintiffs' claims for false imprisonment and assault and battery; and (2) claims that fell outside the proviso (hereinafter, "non-proviso claims"), which included Plaintiffs' claims for trespass and interference with private property, negligent/intentional infliction of emotional distress, and negligence. *Id.* at 29.

With respect to Plaintiffs' non-proviso claims, the district court held that the discretionary-function exception applied and thus preserved the United States' sovereign immunity. *Id.* With respect to Plaintiffs' proviso claims, the district court held that the proviso overrode both the intentional-tort exception and the discretionary-function exception. *Id.* at 28-29. The district court explained that,

12

"[t]herefore, those claims survive, despite [its] finding that they are excluded by the discretionary function exception." *Id.* at 29.

As to Plaintiffs' proviso claims, the district court then denied summary judgment based on its determination that Georgia' good faith and reasonableness defenses to those claims were not available under the FTCA's private-person standard. *Id.* at 30-37. On the United States' motion for reconsideration, the district court granted summary judgment on those claims based on this Court's Supremacy Clause defense in *Kordash v. United States*, 51 F.4th 1289 (11th Cir. 2022). Doc. 141.

### 3. This Court's Prior Decision

#### a. The *Bivens* decision

The Court affirmed qualified immunity to Guerra on Plaintiffs' *Bivens* claims. C.A.Doc. 33-1 at 10-13. The Court agreed, among other things, that "the decisions that Guerra made—albeit mistaken—in the rapidly-changing and dangerous situation of executing a high-risk warrant at night constitute the kind of reasonable mistakes that the Fourth Amendment contemplates." *Id.* at 13 (citations omitted).

#### b. The FTCA decision

The Court also affirmed summary judgment to the United States on Plaintiffs' FTCA claims. *Id.* at 14-17. Regarding Plaintiffs' non-proviso claims, the Court affirmed summary judgment based on the

13

discretionary-function exception. *Id.* at 14-16. Regarding Plaintiffs' proviso claims, the Court affirmed summary judgment based on its Supremacy Clause defense in *Kordash. Id.* at 16-17.

Without addressing whether the discretionary-function exception also would have applied to Plaintiffs' proviso claims, the Court agreed that the discretionary-function exception barred Plaintiffs' non-proviso claims because "[t]he government has satisfied both elements" of *Gaubert*'s two-part test. *Id.* at 16. As to the first prong, the Court stated that "Guerra enjoyed discretion in how he prepared for the warrant execution." *Id.* As to the second prong, the Court stated that "the preparatory actions Guerra took before the warrant execution satisfy the second element" because "a federal officer's 'decision as to how to locate and identify the subject of an arrest warrant prior to service of the warrant is susceptible to policy analysis.'" *Id.* (quoting *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997)). The Court concluded that, "[a]lthough it is unfortunate that despite his preparatory efforts, Guerra executed the warrant at the wrong house, his actions, nevertheless, 'fall squarely within the discretionary function exception.'" *Id.* (quoting *Shivers v. United States*, 1 F.4th 924, 929 (11th Cir. 2021)).

With respect to Plaintiffs' proviso claims, this Court agreed with the district court that the United States had a meritorious Supremacy

14

Clause defense. *Id.* at 16-17. It therefore upheld the dismissal of those claims as well, without reaching the merits of the United States' state-law defenses. *Id.*

### 4. The Supreme Court decision

Plaintiffs petitioned the Supreme Court for a writ of certiorari only as to their FTCA claims. Pet. at i, *Martin*, 605 U.S. 395 (No. 24-362), 2024 WL 4374198, at *i. The first issue concerned the Supremacy Clause defense, and the second issue asked "[w]hether the FTCA's discretionary-function exception bars claims for torts arising from wrong-house raids and similar negligent or wrongful acts by federal employees." *Id.*

But the Supreme Court granted certiorari only on the Supremacy Clause issue and a different discretionary-function exception issue: "Whether the discretionary-function exception is categorically inapplicable to claims arising under the law enforcement proviso to the intentional torts exception." *Martin*, 145 S. Ct. at 1158.

Though Plaintiffs nevertheless briefed and argued to the Supreme Court that the discretionary-function exception should not apply to their claims, the Supreme Court again declined to review that issue in its decision. *See Martin*, 605 U.S. at 414 ("Having resolved that much, the plaintiffs ask us to decide more still. In particular, they call on us to determine whether and under what circumstances the

15

discretionary-function exception bars suits for wrong-house raids and similar misconduct. . . . But [Plaintiffs'] questions lie well beyond the two we granted certiorari to address. . . . It is work enough for the day to answer the questions we took to resolve this case.").

Based on only the two questions for which it granted certiorari, the Supreme Court vacated and remanded. *Id.* at 415. In doing so, it rendered two holdings. First, the Supreme Court held that this Court erred in *Nguyen* in concluding that "the law enforcement proviso overrides not just the intentional-tort exception but also the discretionary-function exception." *Id.* at 403; *see id.* at 403-08. Second, the Supreme Court held that this Court erred in *Kordash* because "[t]he FTCA does not permit [this Court's] Supremacy Clause defense." *Id.* at 409. The Supreme Court thus faulted this Court for adopting an "expansive and plaintiff-friendly reading of the proviso" and then "compensat[ing]" for that reading by allowing the government to assert "a particular affirmative defense under the Constitution's Supremacy Clause." *Id.* at 402-03. The Supreme Court explained that, instead of applying the discretionary-function exception *only* to Plaintiffs' non-proviso claims, the Court should have asked whether that exception bars their non-proviso claims *and* their proviso claims. *Id.* at 402, 414.

The Supreme Court therefore remanded for this Court to consider "whether subsection (a)'s discretionary-function exception bars either the plaintiffs' [non-proviso] or [proviso] claims," "without reference to [this Court's] mistaken view that the law enforcement proviso applies to subsection (a)." *Id.* at 414. The Supreme Court further instructed that if "some or all of the plaintiffs' claims survive the discretionary-function exception, [this Court] must then ask whether, under Georgia state law, a 'private individual under like circumstances' would be liable to the acts and omissions the plaintiffs allege, subject to the defenses discussed in [28 U.S.C.] § 2674." *Id.*

## C. Standard of Review

The Court reviews a "summary judgment *de novo*, applying the same legal standards used by the district court." *Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

17

## SUMMARY OF THE ARGUMENT

Because Plaintiffs do not challenge this Court's prior decision on their *Bivens* claims, this Court should reinstate that decision. As to Plaintiffs' FTCA claims, the discretionary-function exception bars each claim and, independently, each claim fails under Georgia law.

The district court correctly held that all of Plaintiffs' FTCA claims fall within the FTCA's discretionary-function exception because each claim satisfies *Gaubert*'s two-part test. All of Plaintiffs' FTCA claims arise from the same conduct—the FBI's attempted execution of warrants at the wrong house by mistake. This mistake occurred because of decisions made by the FBI regarding how to locate and identify the targets of the warrants. As this Court has held, such decisions, both before and during execution of a warrant, are discretionary in nature and susceptible to policy analysis.

Plaintiffs' challenges to application of the discretionary-function exception are misplaced. As the district court recognized, though the search warrant identified a specific location, the agents had to make numerous decisions regarding how to execute the warrant, which is the epitome of discretion. Further, there is no merit to Plaintiffs' contentions that the discretionary-function exception is categorically inapplicable to the day-to-day acts of line-level federal law enforcement officers, to unconstitutional conduct, to careless conduct, or to

18

conduct subject to the law enforcement proviso. Moreover, the agents' conduct here was neither unconstitutional nor careless.

Plaintiffs' FTCA claims also fail as a matter of Georgia law. Like other circuits and a subsequent published decision from the underlying district, this Court appears to recognize that the appropriate private-person analog here is whether an individual, acting under color of state law, would be personally liable in similar circumstances. Thus, the fact that a private person would never be in a position of executing warrants generally, much less by mistake at the wrong home, does not foreclose the United States from invoking Georgia's good-faith and reasonableness defenses to Plaintiffs' false imprisonment and assault and battery claims. And Plaintiffs have not satisfied the state-law elements of their other FTCA claims.

The Court should affirm summary judgment for Defendants.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. The discretionary-function exception bars all of Plaintiffs' FTCA claims.

Applying the two-part test articulated in *Gaubert*, the district court held that all of Plaintiffs' FTCA claims fall within the discretionary-function exception. Doc. 124 at 23-27. This Court previously upheld the district court's reasoning, C.A.Doc. 33-1 at 16, and nothing in the Supreme Court's opinion casts doubt on that prior decision. This Court should therefore reach the same conclusion as it did before and hold that "[t]he government has satisfied both elements of the discretionary function exception." *Id.*

#### A. The agents' conduct satisfies *Gaubert*'s two-part test.

The United States, "as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). In the FTCA, Congress provided a "limited waiver" of that immunity for certain tort claims. *United States v. Orleans*, 425 U.S. 807, 813 (1976). At the same time, Congress recognized that too broad a waiver could expose the United States to claims that would disrupt "important governmental functions and prerogatives." *Mozlof v. United States*, 502 U.S. 301, 311 (1992). So Congress enacted various exceptions, thereby "retain[ing]" the United States' "sovereign immunity with respect to certain governmental

20

functions that might otherwise be disrupted by FTCA lawsuits." *Id.* at 312 (emphasis omitted).

One exception is the discretionary-function exception in 28 U.S.C. § 2680(a). That exception preserves the United States' sovereign immunity for any claim "based upon the exercise or performance or the failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* Its purpose is to "prevent judicial 'second-guessing'" of "governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323 (citation omitted).

In *Gaubert*, the Supreme Court set forth a two-prong test for determining whether challenged conduct falls within the discretionary-function exception. *Id.* at 322-23. First, a court must determine whether the conduct was "discretionary in nature"—that is, whether it involved "an element of judgment or choice." *Id.* at 322. Second, a court must evaluate "whether that judgment is of the kind that the discretionary function exception was designed to shield," *id.* at 322-23 (citation omitted)—which is to say, judgment that is "susceptible to policy analysis," *id.* at 325.

### 1. The agents' conduct involved an element of judgment or choice.

Whether the challenged conduct involved "an element of judgment or choice" depends on whether the Constitution or other federal law or binding policy "specifically prescribe[d] a course of action for an employee to follow." *Id.* at 322 (citations omitted). When the Constitution or other federal law or binding policy requires or forbids a course of conduct with sufficient specificity and clarity, "[t]he requirement of judgment or choice is not satisfied." *Id.* In the absence of such a clear and specific directive, however, the employee's conduct is "discretionary in nature," thereby satisfying the first part of *Gaubert*'s test. *Id.*

Here, all of Plaintiffs' claims arise from the agents' execution of warrants at the wrong house. *See* Docs. 1, 115. The agents executed the warrants at the wrong house because of a mistake that the agents made in the process of locating and identifying the subjects of the warrants. C.A.Doc. 33-1 at 5-6. The question, then, is whether the Constitution or other federal law or binding policy "specifically prescribe[d] a course of action for [the agents] to follow" in locating and identifying the subjects of the warrants. *Gaubert*, 499 U.S. at 322.

As the district court and this Court previously concluded, the answer is no. Doc. 124 at 26; C.A.Doc. 33-1 at 16. Law enforcement officers "exercise an almost infinite variety of discretionary powers."

22

*Foley v. Connelie*, 435 U.S. 291, 297 (1978). In this case, those discretionary powers included deciding how to locate and identify the subjects of the warrants. Neither the Constitution nor any other federal law or binding policy specifically prescribed a course of action for the agents to follow in carrying out that function. C.A.Doc. 33-1 at 4, 13. Instead, federal law and policy afforded the agents discretion—*i.e.*, an element of judgment or choice—in deciding how to locate and identify the subjects of the warrants. *Id.* at 13.

Indeed, this Court's precedents recognize that "decisions regarding how to locate and identify the subject of [a] warrant . . . are discretionary in nature and involve an element of judgment or choice." *Mesa*, 123 F.3d at 1438; *accord Mid-South Holding Co., Inc. v. United States*, 225 F.3d 1201, 1206-07 (11th Cir. 2000); *Williams v. United States*, 314 F. App'x 253, 258 (11th Cir. 2009). In *Mesa*, DEA agents inadvertently executed an arrest warrant on the wrong person and at the wrong address and then allegedly failed to cease and desist in their detention and questioning of the plaintiffs after discovering their mistake. *Id.* The plaintiffs challenged the agents' conduct "both before and during the service of the warrant": first, the agents' failure to locate and identify the subject of their warrant before executing it; and, second, the agents' conduct after entering their home. *Id.* at 1437-39. The Court summed up the challenged conduct as the agents'

23

"decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant." *Id.* at 1438. For both types of conduct, this Court "readily conclude[d]" that the challenged conduct was discretionary in nature. *Id.*

Similarly, in *Mid-South Holding Co., Inc.,* this Court held that both "the U.S. Custom Service's decision to board and search" a fishing vessel and "the on-site decisions of the agents of the Customs Service concerning the manner in which to search" were discretionary in nature. 225 F.3d at 1206-07. And in *Williams*, where an FBI agent struck a fleeing suspect with an SUV and handcuffed him while he was exhibiting signs of pain, the Court held that decisions "how to best effectuate an arrest warrant" were discretionary in nature. 314 F. App'x at 258.

Plaintiffs fail to point to any federal law or binding policy that specifically prescribed a course of action for the agents to follow in locating and identifying the subjects of the warrants. They observe that the United States acknowledged at oral argument in the Supreme Court that it is "the United States' policy" to execute warrants "at the right house." C.A.Doc. 54 at 30 (quoting Tr. of Oral Arg. at 36, *Martin*, 605 U.S. 395 (No. 24-362), https://perma.cc/v7Sd-md38). But as the United States explained in the very next breath, that policy

24

"doesn't foreclose or prescribe any particular course of action in how an officer goes about in identifying the right house." Tr. of Oral Arg. at 36, *Martin*, 605 U.S. 395 (No. 24-362). Thus, "[w]hile it is true that the warrant named 3741 Landau as the place of execution, and the warrant therefore could not be served at another location, it is also true that Guerra had to make numerous decisions regarding how to execute the warrant. This is the epitome of discretion." Doc. 124 at 27.

Plaintiffs insist that they are challenging only the execution of the warrants at the wrong house, not "anything Guerra did as he *prepared* to execute the warrant[s]." C.A.Doc. 54 at 32. But under the FTCA, the United States may not be held *strictly liable* for entering the wrong house; the FTCA authorizes suit against the United States only for the "*negligent or wrongful*" conduct of its employees. 28 U.S.C. § 1346(b)(1) (emphasis added); *see Laird v. Nelms*, 406 U.S. 797, 802-03 (1972). And under Georgia law, the agents' conduct was "negligent or wrongful" only if the agents had no reasonable or justifiable basis to believe that they were in the right house. 28 U.S.C. § 1346(b)(1); see Part II, *infra*. Indeed, Plaintiffs do not allege that the agents should have done anything differently *after* they entered the house. Rather, what Plaintiffs allege that the agents should have done differently is what they did *before* they entered, in locating and identifying the

25

house. *See, e.g.*, C.A.Doc. 54 at 45-46 (suggesting that the agents should have checked the address on the mailbox before entering the home). Plaintiffs' claims are thus "based upon" how the agents located and identified the house. 28 U.S.C. § 2680(a).

Plaintiffs' assertion that this Court's previous decision "seemed to conflate whether Guerra's mistake was constitutionally reasonable" with *Gaubert*'s first prong is unfounded. C.A.Doc. 54 at 32. This Court correctly determined that "Guerra enjoyed discretion in how he prepared for the warrant execution." C.A.Doc. 33-1 at 16.

Because each of Plaintiffs' claims is based upon the agents' process and decisions regarding how to locate and identify the subjects of the warrants, either before or during the warrants' execution, and no federal law or policy specifically prescribed a course of conduct for the agents to follow in undertaking that conduct, *Gaubert*'s first prong is satisfied here.

### 2. The judgment or choice was susceptible to policy analysis.

The second prong of *Gaubert*'s test asks whether the judgment or choice was "susceptible to policy analysis." 499 U.S. at 325. "This inquiry is not concerned with the subjective intent of the government employee or whether he or she actually weighed social, economic, and political policy considerations before acting." *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1158 (11th Cir. 2020) (citations

26

omitted). Instead, it requires courts "to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one that we would expect inherently to be grounded in considerations of policy." *Id.* at 1159 (citation omitted). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

Here, the SWAT addendum to the general operation plan established the relevant governmental policy. The SWAT addendum explained that the purposes of the mission were to "[c]onduct a well coordinated operation to safely and efficiently serve Federal arrest and search warrants," to "[m]aintain a high level of operational security," and to "achieve a near simultaneous start to ensure surprise." Doc. 83-6 at 26. Under *Gaubert*, that governmental policy, established by the SWAT addendum, "is presumed to have been furthered when the [agents] exercised their discretion to choose from various courses of action" in executing the warrants. *See* 499 U.S. at 332.

Because "it must be presumed that the agent[s'] acts [we]re grounded in policy when exercising that discretion," *id.* at 324, "an action in tort" would necessarily involve "judicial 'second-guessing'"

27

of policy judgments, *id.* at 323 (citation omitted). Plaintiffs suggest (C.A.Doc. 54 at 45-46), for example, that Guerra should have checked the address on their mailbox before entering their home. But as the district court found, the "delay" from checking the mailbox "could have been problematic because the warrant was being served on a dangerous individual under the cover of darkness, and the simultaneous execution of multiple related warrants was important to the overall operation." Doc. 124 at 21. Deciding how to identify and approach the right house as part of executing the warrants thus "require[d] judgment as to which of a range of permissible courses [wa]s the wisest" in light of the various policy considerations identified in the SWAT addendum. *See Gaubert*, 499 U.S. at 325. Thus, as the district court and this Court previously concluded, the agents' actions "satisfy the second element of the discretionary function exception test." C.A.Doc. 33-1 at 16; *see* Doc. 124 at 26.[5]

---

[5] In an opinion concurring in the Supreme Court's decision, Justice Sotomayor suggested that this Court had addressed "only the first of *Gaubert*'s two questions." *Martin*, 605 U.S. at 418. That is incorrect. In stating that "[t]he discretionary function exception applies *unless* a source of federal law 'specifically prescribes' a course of conduct," C.A.Doc. 33-1 at 15 (citation omitted), this Court meant only that *Gaubert*'s first prong—"the requirement of judgment or choice"—"is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,'" *Gaubert*, 499 U.S. at 322 (citation omitted). Far from treating the

That conclusion follows from this Court's decision in *Mesa*. This Court in *Mesa* held that the process and decisions regarding how to locate and identify the subject of a warrant, both before and during the service of the warrant, "fundamentally" are susceptible to policy analysis. 123 F.3d at 1438-39. Regarding the time period before execution of a warrant, this Court explained that the government must weigh the availability and allocation of resources; the urgency of apprehension in light of, for example, the threat to public safety and the potential destruction of evidence; and a desire to keep the investigation secret, including for tactical reasons or to protect agents or sources. *Id.* at 1438. Regarding the time period during execution of a warrant, this Court explained that the government may consider the possible repercussions of erroneously deciding that the person apprehended is not in fact the person named in the warrant and letting that person go free, which potentially would create a serious danger to public safety or to the agents involved or lead to that person fleeing or destroying evidence. *Id.* at 1438-39.

---

absence of such a specific prescription as dispositive, this Court went on to address "the second element of the discretionary function test"— which this Court correctly recognized as asking whether the agents' actions were of a kind "'susceptible to policy analysis.'" C.A.Doc. 33-1 at 16 (citation omitted).

29

As the SWAT addendum shows, the very same policy considerations apply here. Doc. 83-6 at 26. The execution of the warrants on Riley and 3741 Landau created a high risk of danger not only to the agents assigned to those warrants but also to the agents executing the other warrants that were part of the larger operation. As a result, the FBI called for the simultaneous execution of the warrants at 5:00 a.m., and Guerra and Lemoine conducted their drive-by with their car lights dimmed, so as to avoid tipping off Riley and, in turn, the other suspects. As noted above, even "checking the mailbox in the midst of executing the warrant would have caused some delay in the operation," which "could have been problematic." Doc. 124 at 20-21. As in *Mesa*, executing the warrants here involved weighing the availability and allocation of resources, the urgency of apprehension in light of the threat to agent and public safety, and a desire to keep the investigation secret. *See* 123 F.3d at 1438.

Failing to engage with any of the analysis above, Plaintiffs contend that "there is no policy to protect" in this case. C.A.Doc. 54 at 35. But that contention ignores the policy established by the SWAT addendum. Doc. 83-6 at 26. Of course, the SWAT addendum did not "specifically prescribe[]" a course of action for the agents to follow in locating or identifying the subjects of the warrants. *See Gaubert*, 499 U.S. at 322 (citation omitted). But the SWAT addendum did identify

30

the "considerations of public policy" guiding the agents' exercise of their discretion. *See id.* at 323 (citation omitted). Those considerations of public policy distinguish this case from Plaintiffs' hypotheticals. C.A.Doc. 54 at 38-39. While driving a car is not grounded in considerations of public policy, *see Gaubert*, 499 U.S. at 325 n.7, deciding how to locate or identify the subject of a warrant *is* grounded in such considerations, as the SWAT addendum shows.

*Hatahley v. United States*, 351 U.S. 173 (1956), does not suggest otherwise. The seizure of Navajo Nation horses by federal agents in that case was not covered by the discretionary-function exception because a federal regulation expressly required the agents to provide notice to the Navajo Nation before seizing its horses, and the agents failed to provide such notice. *See id.* at 178-81. In other words, the exception did not apply because a federal regulation "specifically" prescribed a course of conduct for the agents to follow, and they "failed to" follow it. *Id.* at 180. Because *Hatahley* turned on *Gaubert*'s first prong, not on its second prong, Plaintiffs' reliance on *Hatahley* is misplaced.

Because the agents' conduct satisfies both prongs of *Gaubert*'s test, Plaintiffs' claims are barred by the discretionary-function exception.

31

### B. The discretionary-function exception is not categorically inapplicable to the various kinds of conduct that Plaintiffs identify.

Unable to prevail under *Gaubert*'s two-part test, Plaintiffs ask this Court to declare the discretionary-function exception categorically inapplicable to four kinds of conduct. Contrary to Plaintiffs' assertion, however, this Court does not write "on a blank slate." *Compare* C.A.Doc. 54 at 16 *with United States v. Buselli*, 106 F.4th 1273, 1286 (11th Cir. 2024). Rather, this Court is bound by the statutory text and by the Supreme Court's and this Court's interpretation of that text. And the statutory text and relevant precedents foreclose Plaintiffs' attempts to carve out entire categories of conduct from the exception's scope.

### 1. The discretionary-function exception is not categorically inapplicable to the day-to-day acts of line-level federal law-enforcement officers.

Plaintiffs contend that "the day-to-day acts of line-level federal law enforcement officers" can never satisfy the discretionary-function exception. C.A.Doc. 54 at 39. That contention cannot be squared with *Gaubert*. There, the respondent similarly argued that "the discretionary function exception protects only those acts of negligence which occur in the course of establishing broad policies, rather than individual acts of negligence which occur in the course of day-to-day activities." *Gaubert*, 499 U.S. at 334. The Supreme Court readily

"disposed of that submission." *Id.* It explained that "[d]iscretionary conduct is not confined to the policy or planning level." *Id.* at 325. And it found no "dichotomy between discretionary functions and operational activities." *Id.* at 326.

Indeed, federal law enforcement officers often engage in conduct involving "an element of judgment or choice." *See id.* at 322 (citation omitted). Federal law vests such officers with the authority to execute searches, to seize evidence, and to make arrests for violations of federal law. *See*, *e.g.*, 18 U.S.C. § 3052 (authorizing FBI agents to make arrests and serve warrants); 18 U.S.C. § 3107 (authorizing FBI agents "to make seizures under warrant"). And the exercise of that kind of "police authority calls for a very high degree of judgment and discretion," *Foley*, 435 U.S. at 298, especially when "mak[ing] split-second judgments" in "circumstances that are tense, uncertain, and rapidly evolving," *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Moreover, the type of judgment that federal law enforcement officers exercise is often judgment that is "susceptible to policy analysis." *See Gaubert*, 499 U.S. at 325. Although "[p]olice officers in the ranks do not formulate policy, *per se*," they "very clearly fall within the category of 'important non-elective . . . officers who participate directly in the . . . *execution* . . . of broad public policy.'" *Foley*, 435 U.S. at 297, 300 (citation omitted). Deeming the discretionary-

33

function exception categorically inapplicable to the day-to-day acts of federal law enforcement officers would thus open the door to judicial second-guessing of policy judgments made in the exercise of "one of the basic functions of government": law enforcement. *Id.* at 297.

Plaintiffs also argue that the discretionary-function exception extends only to conduct grounded in "regulatory policy." C.A.Doc. 54 at 20. If, by "regulatory policy," Plaintiffs mean something more formal than a statement of policy like the SWAT addendum, they are mistaken. *Gaubert* rejected any requirement that the government identify "formal regulations governing the conduct in question." 499 U.S. at 329. And unlike the first clause of § 2680(a), the text of the discretionary-function exception does not require reliance on any "statute or regulation." 28 U.S.C. § 2680(a).

### 2. The discretionary-function exception is not categorically inapplicable to unconstitutional conduct, and the agents' conduct was not unconstitutional in any event.

Plaintiffs further contend that the discretionary-function exception is categorically inapplicable to "unconstitutional conduct." C.A.Doc. 54 at 35. But there was no unconstitutional conduct here. C.A.Doc. 33-1 at 3. Regardless, this Court already rejected Plaintiffs' contention in *Shivers*, 1 F.4th at 929-35—and for good reason. The discretionary-function exception applies to "[a]ny claim" based on the exercise of a discretionary function, "whether or not the discretion involved be

34

abused." 28 U.S.C. § 2680(a). The word "[a]ny," *id.*, indicates that the exception applies regardless of the nature of the claim; it is not categorically inapplicable to claims alleging unconstitutional conduct. In addition, because the exception applies "whether or not the discretion involved be abused," *id.*, application of the exception does not turn on whether the employee has exercised the discretion in a permissible manner. "The inquiry is not about how poorly, abusively, or unconstitutionally the employee exercised his or her discretion but whether the underlying function or duty itself was a discretionary one." *Shivers*, 1 F.4th at 931 (emphasis omitted).

Plaintiffs contend that the United States conceded in its brief in opposition to Plaintiffs' petition for certiorari that "the discretionary-function exception does not shield constitutional violations." C.A.Doc. 54 at 40. That is a mischaracterization of the United States' brief. The relevant sentence of that brief states in full: "The government agrees that a constitutional mandate, no less than a federal statutory or regulatory one, can eliminate a government official's discretion *when it is sufficiently specific or when an authoritative construction and application with sufficient specificity was clearly established before the officer acted.*" Br. in Opp. at 13, *Martin*, 605 U.S. 395 (No. 24-362), 2024 WL 5079980, at *13 (emphasis added). Thus, far from taking the position that *any* constitutional violation will negate the

35

application of the discretionary-function exception, the United States explained that the Constitution will negate the element of judgment or choice—and thus negate the applicability of the exception—*only when* the Constitution "prescribes a course of action" with sufficient "specific[ity]." *Gaubert*, 499 U.S. at 322 (citation omitted).

Plaintiffs accuse the United States of "importing the qualified-immunity standard into FTCA cases." C.A.Doc. 54 at 41. But the United States is simply treating the Constitution the same as any other source of federal law for purposes of *Gaubert*'s first prong. Like any other source of federal law, the Constitution can eliminate an employee's discretion, but only when it "*specifically prescribes* a course of action." *Gaubert*, 499 U.S. at 322 (emphasis added; citation omitted). The scope of the exception thus mirrors the doctrine of qualified immunity in that respect. But that is simply a function of *Gaubert*'s interpretation of the statutory text, which was enacted against the backdrop of the common-law doctrine of official immunity.

In any event, this case does not present the question whether, or to what extent, the exception is applicable to unconstitutional conduct because, as both the district court and this Court correctly determined, the agents' conduct "did not violate the Fourth Amendment." C.A.Doc. 33-1 at 17; *see* Doc. 141 at 7-8. Plaintiffs did

36

not challenge that determination in the Supreme Court, and nothing in the Supreme Court's decision calls into question this Court's Fourth Amendment analysis.

> ### 3. The discretionary-function exception is not categorically inapplicable to careless conduct, and the agents' conduct was not careless in any event.

Plaintiffs further contend that the discretionary-function exception is categorically inapplicable to "careless conduct." C.A.Doc. 54 at 46. But this Court in *Shivers* rejected that contention as well. By its terms, the discretionary-function exception applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As *Shivers* recognized, "the language Congress chose in § 2680(a) is unqualified—there is nothing in the statutory language that limits application of this exception based on the 'degree' of the abuse of discretion or the egregiousness of the employee's performance." 1 F.4th at 930. Thus, while "Congress could have adopted language that carved out certain behavior"—such as careless behavior—"Congress did not do so." *Id.*[6]

In any event, the agents' conduct in this case was not careless. Rather, as the district court and this Court previously recognized, the

---

[6] To the extent Plaintiffs contend that the discretionary-function exception is categorically inapplicable to "intentional behavior" (*see* C.A.Doc. 54 at 51-52), that contention is likewise foreclosed by *Shivers* and the statutory text. 1 F.4th at 930.

agents took "reasonable" steps to correctly identify the subjects of the warrants and simply made a mistake in the "rapidly-changing and dangerous situation of executing a high-risk warrant at night." C.A.Doc. 33-1 at 12-13; *see* C.A.Doc. 124 at 20-23. This case thus presents no occasion to consider whether the exception is categorically inapplicable to "incompetent" or "careless" conduct. C.A.Doc. 54 at 35, 46.

### 4. The discretionary-function exception is not categorically inapplicable to claims that fall within the law-enforcement proviso.

Finally, Plaintiffs argue that the discretionary-function exception is categorically inapplicable to claims covered by the law-enforcement proviso. C.A.Doc. 54 at 50-59. But if that had been Congress's intent, Congress would have made the proviso applicable to § 2860(a). Instead, Congress made the proviso applicable only to § 2860(h), the intentional-tort exception. *Martin*, 605 U.S. at 403-08. Plaintiffs cannot reconcile their interpretation with that choice.

Plaintiffs contend that the United States' understanding of the relationship between the discretionary-function exception and the law-enforcement proviso renders the proviso "useless." C.A.Doc. 54 at 56. That is incorrect. Before Congress enacted the proviso, the United States could generally invoke two layers of immunity for law enforcement officers' conduct—the discretionary-function exception

and the intentional-tort exception. Congress's enactment of the proviso removed the added layer of immunity provided by the intentional-tort exception, thus forcing the United States to resort to the often more difficult task of litigating the discretionary-function exception. *See* Tr. of Oral Arg. at 40-42, *Martin*, 605 U.S. 395 (No. 24-362).

Plaintiffs assert that in the United States' view, the discretionary-function exception would "defeat[] nearly every proviso claim unless the federal officer's conduct violated clearly-established constitutional law." C.A.Doc. 54 at 55. That is also incorrect. An officer's conduct falls within the discretionary-function exception only if it satisfies both prongs of *Gaubert*'s test. The existence of clearly established constitutional law is relevant only to the first prong; an officer's conduct must still satisfy the second prong even if it does not violate clearly established constitutional law. And even with respect to the first prong, the existence of clearly established constitutional law is only one way in which the element of judgment or choice in an officer's conduct can be negated.

Plaintiffs also cite the legislative history of the law-enforcement proviso. C.A.Doc. 54 at 57-58. But the Supreme Court rejected Plaintiffs' reliance on the same legislative history, admonishing that "[l]egislative history is not the law." *Martin*, 605 U.S. at 408 (citation

39

omitted). In any event, Plaintiffs misread the legislative history. The Constitution specifically proscribed the Collinsville raids because those raids violated clearly established Fourth Amendment rights: no reasonable agent could have thought that those raids were justified by probable cause or exigent circumstances. *See Askew v. Bloemker*, 548 F.2d 673, 675, 680 (7th Cir. 1976). The Collinsville raids therefore did not fall within the discretionary-function exception, and Congress's enactment of the law-enforcement proviso overrode the intentional-tort exception and thus removed the only barrier to liability for those raids.

Here, by contrast, neither the Constitution nor any other federal law or binding policy specifically proscribed the agents' conduct. Indeed, the agents' conduct did not violate any constitutional right, much less a clearly established one. *See* C.A.Doc. 33-1 at 13 ("[T]he decisions that Guerra made—albeit mistaken—in the rapidly-changing and dangerous situation of executing a high-risk warrant at night constitute the kind of reasonable mistakes that the Fourth Amendment contemplates.") (citing *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014), and *Willingham v. Loughnan*, 321 F.3d 1299, 1303 (11th Cir. 2003)). Because there is no federal law or binding policy here, as there was in the Collinsville raids, that negates the element of judgment or choice in the agents' conduct, application of the

40

discretionary-function exception to Plaintiffs' claims is consistent with the legislative history. *See* S. Rep. No. 93-588, 93d Cong., 2d Sess. 3 (1973), *reprinted in* 1974 U.S.C.C.A.N. 2789, 2792 (explaining that the purpose of the proviso was to provide a remedy for innocent victims "of Federal law enforcement abuses").

Because the discretionary-function exception covers each of Plaintiffs' claims under *Gaubert*'s two-prong test, this Court should affirm summary judgment to the United States.

## II. Plaintiffs' FTCA claims fail as a matter of Georgia law.

Under the FTCA, the United States may be held liable only if a private person, under like circumstances, would be liable under the law of the State where the alleged tort occurred, and only if the defenses discussed in § 2674 do not apply. See 28 U.S.C. §§ 1346(b)(1), 2674; *Martin*, 605 U.S. at 413. Because the alleged torts here occurred in Georgia, Georgia law applies to Plaintiffs' FTCA claims.

### A. Plaintiffs' false imprisonment claim fails under Georgia law because none of the agents acted in bad faith.

Under Georgia law, false imprisonment is "the *unlawful* detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20 (emphasis added). It "is an intentional tort, not a tort of negligence." *Miller v.*

*Grand Union Co.*, 250 Ga. App. 751, 754, 552 S.E.2d 491, 494 (2001) (citation omitted). The only elements are the "detention and the unlawfulness thereof." *Id.* Whether a detention is unlawful depends on whether it was "legally authorized under the circumstances." *Williams v. Smith*, 179 Ga. App. 712, 714, 348 S.E.2d 50, 52 (1986).

O.C.G.A. § 51-7-21 establishes a good-faith defense (or privilege) that, when applicable, means that a detention was not unlawful. Specifically, O.C.G.A. § 51-7-21 provides: "If imprisonment is by virtue of a warrant, neither the party who procured the warrant in good faith nor the officer who executed the warrant in good faith shall be liable for false imprisonment even if the warrant is defective in form or is void for lack of jurisdiction." Good faith, in turn, means "a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further investigation." *Anderson v. Little & Davenport Funeral Home, Inc.*, 242 Ga. 751, 753, 251 S.E.2d 250, 252 (1978).

In *Blocker v. Clark*, 126 Ga. 484, 484, 54 S.E. 1022, 1024 (1906), the Georgia Supreme Court acknowledged that protecting one who "acts in good faith, although the wrong person may be arrested," will result in cases "where a person who is innocent will be deprived of his liberty, and will have no redress for the wrong." It nevertheless held that this "good faith" defense was necessary so as not to impede the

42

administration of law through the execution of warrants or to allow criminals to escape due to timidity or caution. *Id.*

Here, the undisputed evidence is that all of the agents were acting in good faith when attempting to execute the warrants at Plaintiffs' home. Upon realizing their mistake, all of the agents immediately left Plaintiffs' home, and Guerra returned to Plaintiffs' home later to apologize.

In denying summary judgment based on the United States' state-law defenses, the district court determined that O.C.G.A. § 51-7-21 is inapplicable to FTCA claims because, although it protects a private person who procures a warrant in good faith, it concerns good faith in the execution of a warrant only by an "officer" rather than a private person. Doc. 124 at 32-33. The district court found that point determinative because, as noted, the United States may be held liable under the FTCA only if a private person, under like circumstances, would be liable under the law of the State where the alleged tort occurred. This reasoning, however, takes too narrow a view of the elements of the false imprisonment tort and is inconsistent with how this Court and other circuits have addressed these types of FTCA claims in the law enforcement context. *See Wimberly v. Selent*, No. 23-13550, 2024 WL 2845476, at *4 (11th Cir. June 5, 2024); *Gomez v. United States*, 601 F. App'x 841, 851 (11th Cir. 2015); *Villafranca v.*

43

*United States*, 587 F.3d 257, 264 (5th Cir. 2009); *Avina v. United States*, 681 F.3d 1127, 1131-32 (9th Cir. 2012); *Unus v. Kane*, 565 F.3d 103, 117-21 (4th Cir. 2009); *Solis-Alarcon v. United States*, 662 F.3d 577, 583 (1st Cir. 2011); *Serrano v. United States*, 766 F. App'x 561, 570-71 (10th Cir. 2019).

In *Wimberly*, this Court expressly "note[d] that the district court properly considered Florida's legal standards" on the "defense to officers using force to effectuate an arrest" as to the plaintiffs' FTCA claims for assault and battery based on an incident in which a federal agent kicked one of them in the face. 2024 WL 2845476, at *4.

In *Gomez*, this Court similarly applied Florida law providing that "an officer is liable for damages only where the force used is clearly excessive" in addressing an FTCA battery claim based on an arrest by a federal officer. 601 F. App'x at 851 (citation omitted). Because the Court already had decided that the officer's use of force was de minimis for purposes of rejecting the plaintiff's *Bivens* claim, it "likewise conclude[d]" that the plaintiff failed to state an FTCA battery claim based on excessive force under Florida law. *Id.*

The Fifth Circuit has ruled likewise, and noted that reasoning similar to the district court's reasoning here "would lead to the absurd result that all federal arrests would subject the Government to tort liability under the FTCA absent a finding that the Government's

44

actions conformed with the state's specific law regarding 'private person' arrests." *Villafranca*, 587 F.3d at 264. In *Villafranca*, the plaintiff brought an FTCA claim for assault after DEA agents forced him to the ground and forcibly handcuffed him while executing a search warrant. *Id.* at 259. The district court entered judgment for the United States, and the Fifth Circuit affirmed on the ground that "the agents' actions were privileged under Texas law"—specifically, Texas has a "civil privilege defense" for "peace officer[s]" who reasonably believe their use of force was necessary. *Id.* at 259, 261.

The Fifth Circuit distinguished state law enforcement "privileges" like the one above from state law enforcement "immunities," which insulate an officer from liability for public policy reasons. *Id.* at 263. As the court explained, unlike an immunity, a "privilege recognizes that, because of the nature of their duties, some public officers may perform certain acts that might otherwise be tortious if committed by someone not having those duties." *Id.* (citation omitted). The court determined that, while the United States may not invoke state law enforcement *immunities* to defeat an FTCA claim, it may invoke state law enforcement *privileges*. *Id.* at 264.

Since the district court's decision, another district court in the underlying district has published a decision that adopts *Villafranca*'s approach. *See Liggion v. United States*, 696 F. Supp. 3d 1257, 1271

45

(N.D. Ga. 2023) ("After a thorough review of these various avenues, the Court concludes that the Fifth Circuit's approach in *Villafranca*, which allows federal police officers to invoke state law privileges but not immunities, strikes the right balance."). In *Liggion*, the court explained that "many lawful arrests conducted by federal agents would meet the elements for certain intentional torts, if committed by a private citizen," and, therefore, "[t]o hold the United States liable in tort 'absent a finding that the Government's actions conformed with the state's specific law regarding 'private person' arrests' would render the United States liable for nearly every federal detention." *Id.* at 1272 (quoting *Villafranca*, 587 F.3d at 264).

Here, the United States does not invoke any state law enforcement immunity, such as Georgia's official-immunity doctrine, which immunizes state and local law enforcement officers for discretionary acts performed without malice. *See id.* at 1272-74 (discussing Ga. Const. art. 1, § 2, para. IX). Rather, the United States relies on a state law privilege—the "good faith" defense under O.C.G.A. § 51-7-21— which addresses whether detention is unlawful in the first place under the definition of "false imprisonment" applicable to private persons under O.C.G.A. § 51-7-20.

As the *Liggion* court deduced, in the absence of applying such a privilege, reasoning such as that by the district court here would allow

46

the United States to be liable under the FTCA for what amounts to strict liability. *See Gober v. United States*, 778 F.2d 1552, 1556-57 & n.9 (11th Cir. 1986) (discussing *Laird v. Nelms*, 406 U.S. 797 (1972), and explaining that strict liability cannot serve as a basis for recovery under the FTCA). Where, as here, a federal officer mistakenly executes a warrant on the wrong person or at the wrong house, that scenario always will involve the execution of a warrant by an officer rather than a private person, and under the district court's reasoning, the United States always will be liable. But that result need not obtain: although Georgia law has had no occasion to address the execution of a warrant by a private person, were that scenario to arise, Georgia law makes clear that the lawfulness of the detention would be governed by a good faith standard.

Consequently, as *Liggion* and the other circuits properly recognize, "the appropriate private person analog" here is whether an individual, "acting under color of state law," would be personally liable in similar circumstances. *Liggion*, 696 F. Supp. 3d at 1272; *accord Villafranca*, 587 F.3d at 264; *Avina*, 681 F.3d at 1131-32; *Unus*, 565 F.3d at 117-21; *Solis-Alarcon*, 662 F.3d at 583; *Serrano*, 766 F. App'x at 571-72. Under that rule, O.C.G.A. § 51-7-21's good faith defense would be available here. O.C.G.A. § 51-7-20 is the standard that applies to private persons under Georgia law, and it defines "[f]alse imprisonment" as

47

"unlawful detention." O.C.G.A. § 51-7-21, in turn, identifies particular circumstances in which detention would *not* be unlawful. The private-person standard in O.C.G.A. § 51-7-20 thus incorporates O.C.G.A. § 51-7-21.

Because there is no evidence that any federal agent acted in bad faith, this Court should affirm summary judgment on Plaintiffs' FTCA false imprisonment claim.

### B.  Plaintiffs' assault and battery claim fails because the agents' use of force was reasonable.

Under Georgia law, assault and battery are codified in O.C.G.A. § 51-1-13 (battery) and § 51-1-14 (assault). *Wallace v. Stringer*, 250 Ga. App. 850, 853, 553 S.E.2d 166, 169 (2001); *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672, 347 S.E.2d 619, 621 (1986). O.C.G.A. § 51-1-13 provides that "[a] physical injury done to another shall give a right of action to the injured party, whatever may be the intention of the person causing the injury, unless he is *justified under some rule of law*." (Emphasis added.) O.C.G.A. § 51-1-14 provides that "[a]ny violent injury or *illegal* attempt to commit a physical injury a person is a tort for which damages may be recovered." (Emphasis added.)

Georgia law also provides, however, that "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to

defend himself or herself or a third person against such other's imminent use of unlawful force." O.C.G.A. § 16-3-21(a). In addition, during the relevant time period, Georgia law provided that "a private person performing a lawful citizen's arrest has the right to use that force reasonably necessary to restrain the arrested individual." *Williams v. United States*, 314 F. App'x 253, 259 (11th Cir. 2009) (citing, *inter alia*, O.C.G.A. § 17-4-60, *repealed* May 10, 2021). By specifying when conduct is justified or illegal, these laws form part of the standards that apply to private persons under O.C.G.A. §§ 51-1-13 and 51-1-14.

Here, the force used by the agents was both reasonable and de minimis given their belief that they were at the home of a violent, gun-possessing gang member. *See Muehler v. Mena*, 544 U.S. 93, 100 (2005) ("The governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises."); *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (holding that officers used de minimis and reasonable force where they grabbed potentially armed suspect, forced him to the ground, and applied handcuffs); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (holding that officer used reasonable force where, in mistakenly arresting compliant individual pursuant to a warrant, the

49

officer "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him"); *Williams v. State,* 364 Ga. App. 340, 343-44, 874 S.E.2d 838, 841 (2022) ("We have previously held that in sufficiently dangerous circumstances, law enforcement officers may effect and maintain an investigatory detention by drawing weapons, forcing individuals to the ground, and/or handcuffing suspects without transforming the detention into a de facto arrest.") (citations omitted).

In initially denying summary judgment, the district court determined that Georgia's self-defense statute did not apply because "Plaintiffs did not resist arrest or otherwise challenge the agents," and Georgia's citizen's arrest statute did not apply because it applied only to felony offenses committed in a citizen's presence or within his immediate knowledge. Doc. 124 at 33-37. But this reasoning leads to the same absurd result and impermissible strict liability standard discussed above with respect to the district court's reasoning on Plaintiffs' FTCA false imprisonment claim. A mistaken warrant execution not only always will involve execution of the warrant by an officer rather than a private person, but it also always will involve a show or use of force by the officer before any resistance by the plaintiff and never will be based on a felony offense committed by the

plaintiff. Under the district court's reasoning, therefore, the United States always would be liable under the FTCA for assault and battery for a mistaken warrant execution, no matter the good faith or reasonableness of the officers involved. The "appropriate private person analog" here thus is whether an individual, "acting under color of state law," would be personally liable in similar circumstances. *See Liggion*, 696 F. Supp. 3d at 1272; *accord Villafranca*, 587 F.3d at 264. Under that rule, Georgia's right to use reasonable force to effectuate an arrest or to defend oneself or a third person from potential imminent harm would be available here.

And because the agents' use of force was reasonable and de minimis, this Court should affirm summary judgment on Plaintiffs' FTCA assault and battery claim.

## C. Plaintiffs' trespass and interference with private property claim fails under Georgia's "innocent trespasser" doctrine.

Under Georgia law, a person commits the tort of trespass or interference with private property if he "*unlawfully* interferes" with another's "right of enjoyment of private property." O.C.G.A. § 51-9-1 (emphasis added). At the same time, Georgia recognizes the "innocent trespasser" doctrine, which protects from liability "individuals who enter the land of another under the mistaken belief that it is permissible to do so." *Woodstone Townhouses, LLC v. Southern Fiber*

51

*Worx, LLC*, 358 Ga. App. 516, 522, 855 S.E.2d 719, 728 (2021) (citation omitted).

Here, the evidence shows—and, indeed, Plaintiffs acknowledge—that the agents entered Plaintiffs' home solely based on their mistaken belief that it was permissible to do so. *See*, *e.g.*, C.A.Doc. 33-1 at 13; C.A.Doc. 54 at 1, 4. Accordingly, this Court should affirm summary judgment on Plaintiffs' trespass and interference with private property claim.

### D. Plaintiffs' negligent and intentional infliction of emotional distress claims fail under Georgia law.

Plaintiffs Martin and G.W. bring a claim for negligent infliction of emotional distress, and Plaintiff Cliatt brings a claim for intentional and/or negligent infliction of emotional distress. Doc. 1 ¶¶ 64-70; Doc. 115 ¶¶ 66-71. Both of these claims fail under Georgia law.

#### 1. Negligent infliction of emotional distress

Negligent infliction of emotional distress is not a separate tort under Georgia law. *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 588, 533 S.E.2d 82, 86 (2000). Rather, "[i]n a claim concerning negligent conduct," Georgia law allows a recovery for emotional distress in two scenarios. *Id.* at 584, 533 S.E.2d at 84 (quoting *Ryckeley v. Callaway*, 261 Ga. 828, 828 412 S.E.2d 826, 826 (1992)). The first applies the "impact rule" and has three elements: "(1) a physical impact to the

52

plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." *Id.* at 586, 533 S.E.2d at 85. The second requires the alleged conduct both to have been "directed toward the plaintiff" and also to have been "malicious, willful or wanton." *Id.* at 584 n.2, 533 S.E.2d at 84 n.2 (citation omitted). For conduct to have been directed toward the plaintiff, the plaintiff must have been more than merely "in the path" between the defendant and the defendant's target, as a defendant's alleged "[d]isregard of general consequences" alone is insufficient. *Ford v. Whipple*, 225 Ga. App. 276, 278, 483 S.E.2d 591, 593 (1997). Conduct is malicious, willful, or wanton if it "consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured"; "is based on an actual intention to do harm or inflict injury"; or "is that which is so reckless or so charged with indifference to consequences as to be the equivalent in spirit to actual intent." O.C.G.A. § 51-7-2; *Phillips v. Marquis at Mt. Zion-Morrow, LLC*, 305 Ga. App. 74, 76-77, 699 S.E.2d 58, 61 (2010) (citation omitted).

Here, leaving aside the absence of negligence, addressed in subpart E below, Plaintiffs cannot satisfy these elements. Martin and G.W. did not sustain any physical impact or physical injury, and there is no evidence that the agents directed any conduct toward them, much less

maliciously, willfully, or wantonly. *See* Doc. 85 at 150:5-19; Doc. 86 at 71:12-14; *Vargas on behalf of J.A.M. v. United States*, No. 1:17-CV-5052-SCJ, 2019 WL 13056993, at *9 (N.D. Ga. Aug. 28, 2019) (conduct was not directed toward plaintiffs when ICE agents entered plaintiffs' residence to detain other members of their family).

And while Cliatt did sustain a physical impact that caused him a physical injury, he does not allege that his physical injury (a sore knee for which he did not seek treatment) caused his alleged mental suffering or emotional distress. *See* Doc. 85 at 150:5-19; *Malibu Boats, LLC v. Batchelder*, 347 Ga. App. 742, 748, 819 S.E.2d 315, 320 (2018) (explaining that a plaintiff cannot recover emotional damages "solely for being exposed to the 'overall traumatic scene,'" and that "only those damages related to the sustained physical injury itself may be recoverable") (citation omitted).

Plaintiffs' claim for negligent infliction of emotional distress thus fails under Georgia law.

### 2. Intentional infliction of emotional distress

Under Georgia law, a claim for intentional infliction of emotional distress has four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) The emotional distress must be severe."

54

*Odem v. Pace Academy*, 235 Ga. App. 648, 654, 510 S.E.2d 326, 332 (1998) (citation omitted). "Whether a claim rises to the level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Id.* (citation omitted). To meet that standard, the conduct must be "so outrageous in character, and so extreme in danger, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted). Further, the defendant must have "intended to harm the plaintiff." *Roddy v. Tanner Med. Ctr., Inc.*, 262 Ga. App. 202, 205, 585 S.E.2d 175, 178 (2003).

Here, only Cliatt brings a claim for intentional infliction of emotional distress; but he cannot succeed on his claim because the agents made a reasonable mistake. *See* C.A.Doc. 33-1 at 13. They did not intend to harm him or act with a reckless disregard of his rights, and their conduct did not go beyond all possible bounds of decency. *See id.*; *accord Andrews v. Marshall*, 845 F. App'x 849, 857 (11th Cir. 2021) (holding that officer's conduct of dragging plaintiff suspected of stealing political campaign signs out of her truck, frisking her, and handcuffing her tightly, resulting in injuries to her wrists, arm, and thigh, did not go beyond all possible bounds of decency and was not

55

atrocious or utterly intolerable). Cliatt's claim for intentional infliction of emotional distress therefore fails under Georgia law.

Accordingly, the Court should affirm summary judgment on Plaintiffs' negligent and intentional infliction of emotional distress claims.

### E.  Plaintiffs' negligence claims fail under Georgia law.

To establish negligence under Georgia law, a plaintiff must show four elements: (1) a duty; (2) a breach of that duty; (3) causation; and (4) damages. *City of Richmond Hill v. Maia*, 301 Ga. 257, 258, 800 S.E.2d 573, 576 (2017) (citation omitted).

Here, Plaintiffs allege that the agents had a duty "to act with reasonable care and to abide by the U.S. Constitution and follow [the FBI's] own practices and procedures." *See* Doc. 1 ¶ 74; Doc. 115 ¶ 74. But to the extent those are viable duties,[7] none of the agents breached them because the agents acted reasonably and did not violate the Constitution or any FBI policy or practice. *See* C.A.Doc. 33-1 at 13.

Furthermore, in *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001), this Court assessed the plaintiff's FTCA negligence claim by looking to the applicable state's law on "whether a governmental

---

[7] *See Washington v. Drug Enforcement Admin.*, 183 F.3d 868, 873 (8th Cir. 1999) (holding that "the application process for, and execution of, a search warrant has no private analogue") (citation omitted).

entity owes a duty of care to an individual." The Court explained that, under Florida law, whether a governmental entity owes a duty of care to an individual "depends on the presence of a 'special relationship,'" which is formed "only when 'a law enforcement officer promises or agrees to take some specific action at the individual's request.'" *Id.* at 1317-18 (citations omitted).

Georgia has the same law. *See Landis v. Rockdale County*, 212 Ga. App. 700, 701, 445 S.E.2d 264, 266 (1994). To prove the existence of a special relationship, a plaintiff must show: "(1) an explicit assurance by the [governmental unit], through promises or action, that it would act on behalf of the injured party; (2) knowledge on the part of the [governmental unit] that inaction could lead to harm; and (3) justifiable and detrimental reliance by the injured party on the [governmental unit's] affirmative undertaking." *Id.* (citation omitted). But none of these elements is met here, and the government may assert any defense to which "the United States," as a governmental entity, "is entitled." 28 U.S.C. § 2674.

Accordingly, Plaintiffs' negligence claims fail under Georgia law.

Because each of Plaintiffs' claims fails as a matter of Georgia law, this Court should affirm summary judgment to the United States even if the discretionary-function exception were not to bar any of Plaintiffs' FTCA claims.

## CONCLUSION

The United States respectfully requests that this Court affirm summary judgment to Defendants.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

/s/ Aaron J. Ross

AARON J. ROSS
*Assistant United States Attorney*

58

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,288 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared by a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style.

November 21, 2025

/s/ Aaron J. Ross

AARON J. ROSS
*Assistant United States Attorney*

59

## CERTIFICATE OF SERVICE

This day the Appellee's Supplemental Brief was filed and served using the Court's CM/ECF system, which automatically sends notification to parties and counsel of record.

November 21, 2025

*/s/ Aaron J. Ross*

AARON J. ROSS
*Assistant United States Attorney*