No. 23-10062

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

CURTRINA MARTIN, individually and as Parent and
Next Friend of, G.W., a minor, and HILLIARD TOI CLIATT,

*Plaintiffs-Appellants,*

v.

UNITED STATES OF AMERICA, LAWRENCE GUERRA,
SIX UNKNOWN FBI AGENTS,

*Defendants-Appellees.*

On remand from the United States Supreme Court
Case No. 24-362

On appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:19-cv-04106

## Plaintiffs-Appellants' Supplemental Reply Brief

Lisa C. Lambert
LAW OFFICE OF
LISA C. LAMBERT
245 N. Highland Ave.,
Suite 230-139
Atlanta, GA 30307

Jeffrey R. Filipovits
SPEARS & FILIPOVITS
315 W. Ponce de Leon Ave.,
Suite 865
Decatur, GA 30030

Zack Greenamyre
MITCHELL SHAPIRO
GREENAMYRE & FUNT
881 Piedmont Ave. NE
Atlanta, GA 30309

Patrick Jaicomo
*Lead Counsel*
Anya Bidwell
Dylan Moore
Jared McClain
INSTITUTE FOR JUSTICE
901 N. Glebe Rd.,
Suite 900
Arlington, VA 22203
(703) 682-9320
pjaicomo@ij.org

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ....................................................................... ii

ARGUMENT............................................................................................1

    I.    The discretionary-function exception does not bar negligent- or intentional-tort claims arising out of wrong-house raids .................... 4

        A.    Federal law-enforcement officers lack discretion to execute a search warrant anywhere other than the place commanded by the warrant .......................................................5

        B.    Raiding the wrong house bears no connection to public policy ................................................................................... 11

            1.    A PowerPoint slide is not public policy ........................12

            2.    Consistent with *Gaubert*, the discretionary-function exception does not apply to certain categories of conduct ........................................................................ 15

                a.    The discretionary-function exception is categorically inapplicable to unconstitutional conduct ............................................................... 16

                b.    The discretionary-function exception is categorically inapplicable to careless conduct ...... 19

                c.    The discretionary-function exception rarely—if ever—applies to proviso torts ............ 21

    II.    As both the Supreme Court and the district court recognized, a private person in like circumstances would be liable for the torts inflicted on Plaintiffs ........................................................25

CONCLUSION................................................................................. 28

CERTIFICATE OF COMPLIANCE.................................................30

CERTIFICATE OF SERVICE........................................................... 31

i

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Anderson v. Creighton*,
483 U.S. 635 (1987) .......................................................................... 18

*Berkovitz v. United States*,
486 U.S. 531 (1988) ........................................................ 8–11, 14, 27

*Brownback v. King*,
592 U.S. 209 (2021) .......................................................................... 23

*Cope v. Cope*,
137 U.S. 682 (1891) .......................................................................... 19

*\*Dalehite v. United States*,
346 U.S. 15 (1953) ................................................................ 4, 10, 24

*Dalia v. United States*,
441 U.S. 238 (1979) ............................................................................ 6

*Foley v. Connelie*,
435 U.S. 291 (1978) .......................................................................... 22

*Franklin v. Amerson*,
45 S.E. 698 (Ga. 1903) ..................................................................... 27

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) .......................................................................... 18

*\*Hatahley v. United States*,
351 U.S. 173 (1956) .............................................................. 4–5, 10–11

*Indian Towing Co. v. United States*,
350 U.S. 61 (1955) ....................................................... 3, 11, 18, 20, 27

*Jimenez v. Quarterman*,
555 U.S. 113 (2009) .......................................................................... 27

*Liggion v. United States*,
    696 F. Supp. 3d 1257 (N.D. Ga. 2023) ................................................. 26

*Marron v. United States*,
    275 U.S. 192 (1927) ............................................................................. 5, 7

*Martin v. United States*,
    605 U.S. 395 (2025) .................................. 1, 4, 11, 16–17, 20–21, 24–25

*Mesa v. United States*,
    123 F.3d 1435 (11th Cir. 1997) ............................................................ 10

*Millbrook v. United States*,
    569 U.S. 50 (2013) ................................................................................ 27

*Ochran v. United States*,
    117 F.3d 495 (11th Cir. 1997) ................................................................ 9

*Rayonier Inc. v. United States*,
    352 U.S. 315 (1957) ..................................................................... 20–21, 27

*Sheridan v. United States*,
    487 U.S. 392 (1988) ............................................................................. 23

*Shivers v. United States*,
    1 F.4th 924 (11th Cir. 2021) ................................................................ 16

*United States v. Aetna Cas. & Sur. Co.*,
    338 U.S. 366 (1949) ............................................................................. 27

*United States v. Gaubert*,
    499 U.S. 315 (1991) ...................................... 1, 4–6, 8–11, 15–17, 21–22

*United States v. Olson*,
    546 U.S. 43 (2005) ............................................................................... 26

*United States v. Union Tr. Co.*,
    350 U.S. 907 (1955) ............................................................................. 12

*United States v. Varig Airlines*,
    467 U.S. 797 (1984) ..................................................................... 8, 11, 14

iii

*United States v. Yellow Cab Co.*,
  340 U.S. 543 (1951) ............................................................. 18

*Utah v. Strieff*,
  579 U.S. 232 (2016) .......................................................... 6, 10

*Van Buren v. United States*,
  593 U.S. 374 (2021) ............................................................ 25

*Wyatt v. Cole*,
  504 U.S. 158 (1992) ............................................................ 18

*Xi v. Haugen*,
  68 F.4th 824 (3d Cir. 2023) ................................................ 11

**Statutory & Constitutional Provisions**

28 U.S.C. § 1346(b) ............................................................ 9, 22

28 U.S.C. § 1346(b)(1) .................................................. 3, 23, 26, 28

28 U.S.C. § 2674 ........................................................... 9, 18, 25

28 U.S.C. § 2680 ................................................................. 9

28 U.S.C. § 2680(a) ............................................................ 21

28 U.S.C. § 2680(h) ..................................................... 14, 16, 19

Ga. Code Ann. § 51-1-13 .................................................. 8, 9, 23

Ga. Code Ann. § 51-1-14 ...................................................... 23

Ga. Code Ann. § 51-7-20 ................................................... 8, 23

Ga. Code Ann. § 51-7-21 ................................................... 26–27

Ga. Code Ann. § 51-7-81 ...................................................... 23

U.S. Const. amend. IV ......................................................... 7

iv

**Rules**

Fed. R. Crim. P. 41(e)(2)(A) ......................................................................7

**Other Authorities**

Eric Wang, Note, *Tortious Constructions*,
95 N.Y.U. L. Rev. 1943 (2020).......................................................... 19

Transcript of Oral Argument, *Martin v. United States*,
605 U.S. 395 (2025) (No. 24-362) ................................................2, 6, 12, 20, 24

## ARGUMENT

When this case was before the Supreme Court, it recognized that "important questions surround whether and under what circumstances [the discretionary-function] exception may *ever* foreclose a suit like this one." *Martin v. United States*, 605 U.S. 395, 415 (2025) (emphasis added). Before addressing those questions itself, however, the Court explained that it "would benefit from the Eleventh Circuit's careful reexamination of this case in the first instance." *Id.*

To help this Court conduct its careful reexamination, Plaintiffs have offered a ground-up construction of the discretionary-function exception. They identified that the exception codifies a term of art—"discretionary function"—that cannot be disentangled from administrative law. They showed that, in the nearly 80 years since the FTCA was enacted, the Supreme Court has applied the exception only when doing so would protect regulatory policy or its implementation from collateral attack in tort. Then, drawing from this thorough review of the exception's text and history, Plaintiffs explained why the FBI's decision to conduct a warrantless, unconstitutional, and careless raid on Plaintiffs' house fails both prongs of the test the Supreme Court announced in *United States v. Gaubert*, 499 U.S. 315 (1991).

The United States, meanwhile, urges this Court to ignore the Supreme Court's instructions. The government does not confront the text or original public

meaning of the discretionary-function exception; it simply cherry-picks snippets of *Gaubert* to justify its policy preferences. The government sidesteps the fact that Guerra and his SWAT team violated the black-letter command of a federal warrant by executing it at the wrong house. And the government abandons its prior arguments—made before both this Court and the Supreme Court—to advance the novel position that a single slide in a PowerPoint presentation (a slide the government dubs "the SWAT addendum," *see* page 13, *infra*) vested Guerra with the policy-making discretion to raid the wrong house. *But see* C.A.Doc. 23 at 27[1] (United States claiming "[n]o FBI policy or standard operating procedure" governed Guerra's conduct); Transcript of Oral Argument at 35–36, *Martin v. United States*, 605 U.S. 395 (2025) (No. 24-362) ("*Martin* Transcript") ("[I]t's the . . . United States' policy to execute the warrants at the right house[.]").

At bottom, the United States advances an atextual, ahistorical, and incoherent interpretation of the discretionary-function exception. The government would have this Court conclude that "discretionary function" means "any action that is not *specifically proscribed* by federal statutes, federal regulations, or clearly established constitutional law." That is backwards. Decades of Supreme Court precedent show

---

[1] Plaintiffs continue to use the record citation form outlined in their opening supplemental brief. *See* C.A.Doc. 54 at 14 n.1.

that, to *exercise* protected discretion, a federal employee must first be *given* such discretion by some source of law. When (as here) no relevant, discretion-conferring policy exists, the discretionary-function exception cannot apply. Nor can it apply when (as here), officers disobey the text of a warrant, violate the Constitution, or cause harm through sheer incompetence. In each scenario, the officers' actions either violate federal policy or bear no connection to policy at all.

Unable to offer a lucid theory of the discretionary-function exception, the government claims that it should be entitled to Georgia tort defenses available only to public employees. This argument lacks merit. The FTCA's text makes the government liable when a *private* person in like circumstances would be liable under state law. 28 U.S.C. § 1346(b)(1). Here, both the Supreme Court and the district court correctly concluded that, under Georgia law, a private person in like circumstances would be liable for the torts committed against Plaintiffs. The government's arguments to the contrary ignore the FTCA's text and ask this Court to create the exact sort of "uniquely governmental" activity exception that the Supreme Court has repeatedly rejected. *See, e.g.*, *Indian Towing Co. v. United States*, 350 U.S. 61, 68 (1955).

In reviving all Plaintiffs' FTCA claims—including those that this Court previously dismissed under the discretionary-function exception, alone—the

Supreme Court signaled that this Court should address the important, circuit-splitting issues surrounding the exception. *Martin*, 605 U.S. at 414–15 (identifying several circuit splits). The Supreme Court would not have reinstated Plaintiffs' negligence claims, for instance, if it believed this Court would reflexively dismiss them on remand. Indeed, to do so would be inconsistent with the "careful reexamination" the Supreme Court instructed this Court to undertake. *Id.* at 415. This Court should instead conduct the fresh-eyed analysis the Supreme Court requested, cut itself free from any decisions that conflict with Supreme Court precedent, and hold that Plaintiffs' FTCA claims may proceed to trial.

## I.    The discretionary-function exception does not bar negligent- or intentional-tort claims arising out of wrong-house raids.

Congress enacted the discretionary-function exception to bar administrative policy disputes disguised as tort suits. *See* C.A.Doc. 54 at 34–40 (analyzing the exception's text and history). As a result, the Supreme Court has consistently applied the exception only when the adjudication of a plaintiff's claims would require the Court to question regulatory policy or its implementation. *See, e.g.*, *Dalehite v. United States*, 346 U.S. 15, 40 (1953) (exception bars claims attacking "a plan developed at a high level under a direct delegation of plan-making authority from the apex of the Executive Department"); *Hatahley v. United States*, 351 U.S. 173, 181 (1956) (exception does not protect trespass unauthorized by agency policy); *Gaubert*,

4

499 U.S. at 325 (exception shields only "conduct . . . grounded in the policy of the regulatory regime"). But when federal law-enforcement officers take an action completely *untethered* from regulatory policy—like raiding a home full of innocent people—the discretionary-function exception does not apply. *See Hatahley*, 351 U.S. at 180–81.

The government does not engage with these arguments. Instead, it selectively quotes *Gaubert* to claim that Guerra's decision to unleash a SWAT team at Plaintiffs' house was a permissible choice within his discretion. In the government's view, Guerra had discretion under *Gaubert*'s first prong because no federal policy forced him to take specific steps to locate the house listed in his warrant. C.A.Doc. 62 at 36. From there, the government views *Gaubert* step two as a tautology. It elevates a single PowerPoint slide to the status of protected federal policy and concludes that this Court must presume Guerra furthered that policy by raiding Plaintiffs' home. *Id.* at 40. Each argument misses the mark.

## A.   Federal law-enforcement officers lack discretion to execute a search warrant anywhere other than the place commanded by the warrant.

Federal law-enforcement officers have no discretion to execute search warrants at the wrong place. *See, e.g.*, *Marron v. United States*, 275 U.S. 192, 196 (1927) ("nothing" about where to search or what to seize "is left to the discretion of

the officer"); *Utah v. Strieff*, 579 U.S. 232, 240 (2016) (executing an arrest warrant is "a ministerial act" that is "independently compelled" by the warrant). Recognizing this basic feature of warrant execution, the government conceded before the Supreme Court that "it's the . . . United States' policy to execute the warrants at the right house[.]" *Martin* Transcript at 35–36. And the government has long acknowledged that Guerra and his SWAT team "executed the warrants at the wrong house[.]" C.A.Doc. 62 at 35. This—standing alone—is enough to show that the government cannot satisfy *Gaubert*'s first prong. 499 U.S. at 322 ("The requirement of judgment or choice is not satisfied if a federal . . . policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." (cleaned up)).

To avoid this straightforward conclusion, the government moves the goalposts. It claims that, although federal policy requires officers to execute warrants at the right place, that policy "doesn't foreclose or prescribe any particular course of action in how an officer goes about identifying the right house." C.A.Doc. 62 at 37–38 (quoting *Martin* Transcript at 36). This distinction is irrelevant. Though law-enforcement officers enjoy some leeway to determine the "details of how best to proceed" with a search, *Dalia v. United States*, 441 U.S. 238, 257 (1979), the fundamental question of *which* place officers may search is no mere "detail." Indeed,

6

all lawful warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. They must also "command the officer to . . . execute the warrant" at that place or on that person. Fed. R. Crim. P. 41(e)(2)(A). Search warrants, in other words, *necessarily* give officers authority to search an identified location. In doing so, they *necessarily* forbid officers from searching any other location. *Marron*, 275 U.S. at 196. There is no room for choice.

In any other context, the government's argument would be a nonstarter. Consider a real-world example: A homeowner hires a plumber to install a new shower in her bathroom. To complete the job, the plumber has discretion to make certain preparatory decisions. He can decide which tools he will use, which suppliers he will buy his parts from, and which employees he will bring along for help. But no matter how much discretion the plumber has on the margins, he's not getting paid if he puts the shower in the living room. So too for federal police: Officers may decide which time of day to execute a warrant, which path to take to the target location, or which equipment they will bring to breach a door. But they have no discretion to breach the wrong door altogether.

Still, the United States urges the Court to hold that, so long as an officer has discretion to prepare for executing a search warrant, it does not matter whether he executes that warrant at the right place. C.A.Doc. 62 at 37–38. This is wrong. As the

7

Supreme Court has explained, "the basic inquiry concerning the application of the discretionary function exception is whether the *challenged acts* of a Government employee . . . are of the nature and quality that Congress intended to shield[.]" *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984) (emphasis added); *see also Gaubert*, 499 U.S. at 322 (focusing on an employee's "challenged conduct" (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Here, the "challenged acts" are Guerra and his SWAT team entering the wrong house and accosting Plaintiffs at gunpoint. Plaintiffs' substantive tort claims do not challenge anything Guerra did or failed to do as he prepared to execute his warrant. *Contra* C.A.Doc. 62 at 38–39. Indeed, Plaintiffs' claims *cannot* challenge Guerra's pre-raid conduct. That's because merely preparing to act is not a tort. *See, e.g.*, Ga. Code Ann. §§ 51-1-13 (battery) (requiring "[a] physical injury done to another"); 51-7-20 (false imprisonment) (requiring "the unlawful detention of the person of another"). Had Guerra taken the exact same preparatory steps and raided the correct house, Plaintiffs would have no claims at all. And had the SWAT team breached Plaintiffs' door, immediately realized their mistake, and left, Plaintiffs would still have some claims (like negligence and trespass) but not others (like battery and false imprisonment).

8

Plaintiffs' injuries began—and their claims started to accrue—the moment Guerra mistakenly executed the warrant at 3756 Denville Trace instead of 3741 Landau Lane. So while Guerra's pre-raid failure to ensure that he was at the right house might be relevant to determining the degree of his negligence or the "assessment of damages," Ga. Code Ann. § 51-1-13, such preparatory actions cannot be the "challenged conduct" that gives rise to Plaintiffs' claims, *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536).

Finally, the government contends that a ruling in Plaintiffs' favor would hold the United States "strictly liable for entering the wrong house." C.A.Doc. 62 at 38. Not so. Plaintiffs agree that, under the FTCA, the United States is liable only for the "'negligent or wrongful' conduct of its employees." *Id.* (emphasis omitted) (quoting 28 U.S.C. § 1346(b)). But a plaintiff's obligation to prove that a federal official acted negligently or wrongfully under Section 1346(b) persists even when the discretionary-function exception does not apply. *See, e.g.*, *Ochran v. United States*, 117 F.3d 495, 504 & n.6 (11th Cir. 1997) (holding that the discretionary-function exception did not bar a plaintiff's negligence claim and remanding the question of Florida tort liability to the district court). Finding the exception inapplicable to certain kinds of conduct does not leave the government strictly liable. It simply removes one of the government's many defenses. *See* 28 U.S.C. §§ 2674, 2680.

If the government is concerned that liability will reliably arise in situations like this one—where the elements of Section 1346(b) are satisfied and the exceptions in Section 2680 do not apply—its fears are justified. But that is not strict liability; it is just how the FTCA works.

Though the government seeks to inject confusion, the first prong of *Gaubert* is straightforward: To determine whether the discretionary-function exception reinstates sovereign immunity, "a court must first consider whether the action is a matter of choice for the acting employee." *Berkovitz*, 486 U.S. at 536. Here, Guerra's warrant gave him "no rightful option but to adhere to [its] directive": Search 3741 Landau Lane. *Gaubert*, 499 U.S. at 322 (quotation omitted); *see* Doc. 89 at 24 (search warrant). Yet he ordered his SWAT team to raid 3756 Denville Trace, instead. Because no source of federal law gave Guerra discretion to substitute one address for another, the exception does not apply.[2] *See, e.g.*, *Hatahley*, 351 U.S. at 180–81.

---

[2] This Court has suggested that the discretionary-function exception shields the United States from liability when federal agents execute an arrest warrant on the wrong person. *Mesa v. United States*, 123 F.3d 1435, 1437–38 (11th Cir. 1997).

*Mesa*'s reasoning has been abrogated, and it should not bind the outcome here. Nearly two decades after *Mesa*, the Supreme Court clarified that executing a warrant is a "ministerial act[.]" *Strieff*, 579 U.S. at 240. And when conduct is ministerial (meaning that it is not a matter of choice), the discretionary-function exception does not apply. *See, e.g.*, *Dalehite*, 346 U.S. at 34 & n.30 (discussing mandamus actions and damages cases against individual officers); *Gaubert*, 499 U.S. at 324 (explaining that protected functions must arise from a "statute, regulation, or agency

**B.    Raiding the wrong house bears no connection to public policy.**

Even if Guerra had some discretion in executing the warrant, it was not the type protected by the discretionary-function exception. Raiding the wrong house is not "grounded in policy"; it cannot be "based on the purposes that [a] regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 324, 325 n.7.

To satisfy *Gaubert*'s second step, the government must identify a policy that confers discretion on an employee to engage in the challenged conduct, and the employee must have exercised his conferred discretion to promote the policy. *See, e.g.*, *id.* at 330–34 (agency policy implementing banking regulations); *Berkovitz*, 486 at 544–47 (agency policy governing vaccine regulation); *Varig Airlines*, 467 U.S. at 820 (agency policy prescribing an inspection regime for airplanes). If no discretion-conferring policy exists, or if the employee frustrates policy, the discretionary-function exception does not apply. *See, e.g.*, *Hatahley*, 351 U.S. at 181 (wrongful trespass unauthorized by federal law); *Indian Towing*, 350 U.S. at 69 (negligent

---

guideline[]" that "allows a Government agent to exercise discretion"); *see also Xi v. Haugen*, 68 F.4th 824, 843 (3d Cir. 2023) (Bibas, J., concurring).

After *Strieff*, this Court should not rely on *Mesa* to dismiss Plaintiffs' claims. It should instead conduct a "careful reexamination of this case in the first instance[,]" *Martin*, 605 U.S. at 415, and avoid any approach that would "run headlong into [the Supreme Court's] precedents[,]" *id.* at 418 (Sotomayor, J., concurring).

upkeep of a lighthouse); *United States v. Union Tr. Co.*, 350 U.S. 907 (1955) (mem.) (negligent operation of an air-traffic control tower).

Retreating from its long-held position that *no policy* governed Guerra's conduct, *see, e.g.*, C.A.Doc. 23 at 27, the United States now offers a single PowerPoint slide, calls it "the SWAT addendum," and contends that it is the kind of policy Congress enacted the exception to shield, C.A.Doc. 62 at 40. From there, the government claims that Plaintiffs' arguments about the discretionary-function exception's scope—each of which implicates a recognized circuit split—seek unfounded, categorical exceptions to *Gaubert. Id.* at 45. The government is wrong on all fronts.

### 1. A PowerPoint slide is not public policy.

Throughout this litigation, the United States has repeatedly claimed that it is entitled to immunity because "[n]o FBI policy or standard operating procedure" governed Guerra's conduct. C.A.Doc. 23 at 27; Doc. 83-1 at 15 ("There is no evidence that Guerra or any other agent violated any FBI policy with respect to the planning of or execution of the warrants."). The government changed its tune when pressed by the Supreme Court, finally conceding that "it's the . . . United States' policy to execute the warrants at the right house[.]" *Martin* Transcript at 35–36. Now, scrambling for a new argument, the government claims that there *is* a relevant

federal policy this Court must immunize from tort claims—a pre-raid PowerPoint slide consisting of three bullet points:



Doc. 83-6 at 26; C.A.Doc. 62 at 40. This slide could not bear the load of the government's argument even if it were a generally applicable policy of conducting "well coordinated" SWAT raids. But this slide, which was part of an internal presentation given to the SWAT team assigned to raid 3741 Landau Lane, is even farther afield. *See* Doc. 83-6 at 4. It is not a statute, regulation, or policy vesting SWAT commanders with discretion. It merely tells the agents preparing to raid 3741 Landau Lane that they should endeavor to do a good job.

13

The SWAT team's PowerPoint slide is miles away from the type of public policy that Congress enacted the discretionary-function exception to protect. The exception was created to bar suits that challenge the "formulation of" regulations and the delegated "policy judgments" required to implement those regulations. *Berkovitz*, 486 U.S. at 546; *see also, e.g.*, *Varig Airlines*, 467 U.S. at 820 (holding that the exception forbids claims that "require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function"). The government's PowerPoint slide did not (and could not) vest Guerra with the authority to make regulatory policy judgments. It is not a policy at all.

If three bullet points encouraging officers to conduct a "well coordinated operation" are enough to trigger the discretionary-function exception, effectively all law-enforcement actions would be exempt from FTCA liability.[3] But that was not Congress's design. *See* 28 U.S.C. § 2680(h) (expressly authorizing claims against the United States for its law enforcement officers' tortious conduct). Here, Guerra's decision to raid Plaintiffs' house bore no connection to "established governmental

---

[3] Indeed, the government cites statutes authorizing FBI officers to enforce the law generally as a source of Guerra's discretion. *See* C.A.Doc. 62 at 46. If those statutes are sufficient to defeat FTCA liability here, they would defeat liability in every case involving law enforcement.

policy."[4] *Gaubert*, 499 U.S. at 324. Thus, the discretionary-function exception does not apply.

### 2. Consistent with *Gaubert*, the discretionary-function exception does not apply to certain categories of conduct.

Rather than address Plaintiffs' thorough construction of the discretionary-function exception head-on, the United States accuses them of seeking categorical exceptions to *Gaubert*. C.A.Doc. 62 at 45. This mischaracterizes Plaintiffs' position. Plaintiffs do not ask for blanket carve-outs from the Supreme Court's precedents interpreting the discretionary-function exception; they explain why, under *Gaubert* and the cases it relied on, the exception does not apply to certain types of government conduct. *See* C.A.Doc. 54 at 40–59.

This idea is hardly revolutionary. *Gaubert* recognizes that the exception categorically does not apply when (as here) an employee violates federal policy. 499

---

[4] Because no policy vested Guerra with discretion to raid the wrong house, there is no reason to presume that his decision to do so was grounded in policy. *Contra* C.A.Doc. 62 at 40. But even if such a presumption were appropriate, raiding Plaintiffs' home undermined the very "policy" the United States identifies. Guerra did not "[c]onduct a well coordinated operation," "safely and efficiently serve" warrants, "[m]aintain a high level of operational security," or "achieve a near simultaneous start" with his fellow officers, Doc. 83-6 at 26. He botched the operation by negligently unleashing a squad of armed strangers into an innocent family's home. Indeed, by the time Guerra's officers made their way to the house they *were* authorized to raid, their suspect was already attempting to flee. *See* C.A.Doc. 62 at 20.

U.S. at 234; *see* Part I.A, *supra*. Properly construed, the exception likewise does not apply when line-level federal law-enforcement officers violate the Constitution or cause harm through carelessness. And for similar reasons, the exception rarely (if ever) applies when officers commit intentional torts listed in the FTCA's law-enforcement proviso. *See* 28 U.S.C. § 2680(h).

### a. The discretionary-function exception is categorically inapplicable to unconstitutional conduct.

The parties agree that federal employees lack discretion to violate the Constitution. *See* C.A.Doc. 54 at 40; C.A.Doc. 62 at 48. As a result, this Court need only consider whether the government is wrong to suggest that only clearly-established constitutional violations pierce the discretionary-function exception.[5]

---

[5] The United States suggests that this Court should rely on its decision in *Shivers v. United States*, 1 F.4th 924, 929–35 (11th Cir. 2021), to hold that Guerra's unconstitutional conduct is shielded by the discretionary-function exception, *see* C.A.Doc. 62 at 47–48. The government is wrong for two reasons. First, as Justice Sotomayor noted in this case, not even the government agrees with *Shivers*. *See Martin*, 605 U.S. at 418 (Sotomayor, J., concurring); *see also* C.A.Doc. 62 at 49 (claiming that the Constitution should be treated "the same as any other source of federal law"). As a result, if this Court summarily dismisses Plaintiffs' claims under *Shivers*, its ruling will stand on grounds that both parties—and most federal courts of appeals—believe to be wrong. *Cf. Martin*, 605 U.S. at 409–13 (reversing this Court's "outlier position" on the Supremacy Clause that the government declined to defend).

Second, any reliance on *Shivers* to dismiss Plaintiffs' claims would ignore the Supreme Court's instructions on remand. The Supreme Court directed this Court to undertake a "careful reexamination of this case in the first instance" and determine from first principles whether the discretionary-function exception "may

*See* C.A.Doc. 62 at 48–49. Aware that Congress could not have embedded qualified immunity (which did not exist until 1982) into the text of the discretionary-function exception (which was enacted in 1946), *see* C.A.Doc. 54 at 55–56, the government claims that the Supreme Court grafted the doctrine onto the FTCA with its decision in *Gaubert*, C.A.Doc. 62 at 49 ("The scope of the exception thus mirrors the doctrine of qualified immunity . . . . But that is simply a function of *Gaubert*[.]").

The Court did no such thing. There is no evidence—not in *Gaubert*, not in Section 2680, and not in the pages of the U.S. or Federal Reports—to support the government's interpretation. *Gaubert* had nothing to do with unconstitutionality; it considered negligence claims challenging the implementation of banking regulations. *See* 499 U.S. at 318–19.

Still, the government contends that its strained reading of *Gaubert* comports with Section 2680's text because the discretionary-function exception "was enacted against the backdrop of the common-law doctrine of official immunity."[6] C.A.Doc.

---

*ever* foreclose a suit like this one." *Id.* at 415 (emphasis added). To accomplish this task, this Court should construe the exception free from any "faulty assumptions on which [it] has relied in the past[.]" *Id.*

[6] Without analysis, the United States also claims that Guerra's decision to raid Plaintiffs' home without a warrant complied with the Fourth Amendment. *See* C.A.Doc. 62 at 49–50. The government is wrong for the reasons explained in Plaintiffs' opening supplemental brief. *See* C.A.Doc. 54 at 58–60.

62 at 49. This argument misunderstands both the FTCA and the qualified-immunity standard the government splices into it. Congress enacted the FTCA to "waive[] the Government's immunity from suit in sweeping language." *United States v. Yellow Cab Co.*, 340 U.S. 543, 547 (1951). To accomplish this task, Congress made the government liable "on the same terms as a 'private individual.'" *Martin*, 605 U.S. at 412 (quoting 28 U.S.C. § 2674). And private individuals do not enjoy qualified immunity. *Wyatt v. Cole*, 504 U.S. 158, 168 (1992). The FTCA "is not self-defeating by covertly embedding the casuistries of" official immunity into a statute "designed to limit" immunity. *Indian Towing*, 350 U.S. at 65, 69.

Even so, the government's argument fails on its own terms. When the Supreme Court created the clearly-established-law test in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), it "completely reformulated qualified immunity along principles not at all embodied in the common law," *Anderson v. Creighton*, 483 U.S. 635, 645 (1987). Thus, whatever common-law backdrop the drafters of the discretionary-function exception legislated against, that backdrop could not have included *anything* like the clearly-established-law test.

The government's related claim that the Collinsville raids would defeat the discretionary-function exception only because they violated clearly-established law similarly ignores the FTCA's text and history. *See* C.A.Doc. 62 at 53. Those raids

18

occurred in 1973, and Congress responded by enacting the law-enforcement proviso a year later—still nearly a decade before *Harlow* was decided. *See* 28 U.S.C. § 2680(h) (1974). Thus, when the proviso was enacted, no one in Congress would have had a clue what it meant to violate someone's "clearly established Fourth Amendment rights." *Contra* C.A.Doc. 62 at 53.

Congress added the proviso to the intentional-torts exception because *that* exception barred the Collinsville victims from recovering. *See* Eric Wang, Note, *Tortious Constructions*, 95 N.Y.U. L. Rev. 1943, 1954–55 (2020). The discretionary-function exception had nothing to do with it. *See Cope v. Cope*, 137 U.S. 682, 688–89 (1891) (explaining that a later-enacted proviso showed that Congress did not think a different, prior-enacted provision in the statute independently barred recovery). As Plaintiffs have explained, no federal court of appeals has accepted the government's invitation to impose this ahistorical and atextual barrier to relief under the FTCA. *See* C.A.Doc. 54 at 57 (collecting cases). This Court should not be the first.

> **b.   The discretionary-function exception is categorically inapplicable to careless conduct.**

This Circuit has not yet determined whether the discretionary-function exception applies to incompetent or careless conduct.[7] *See* C.A.Doc. 54 at 62

---

[7] The government claims that this Court's decision in *Shivers* forecloses Plaintiffs' argument that careless conduct falls outside the discretionary-function exception.

(surveying the circuit split). The United States asks the Court not to do so here, claiming that "the agents' conduct in this case was not careless." C.A.Doc. 62 at 50. In the government's view, Guerra and his SWAT team "took 'reasonable' steps to correctly identify the subjects of the warrants and simply made a mistake in the 'rapidly-changing and dangerous situation of executing a high-risk warrant at night.'" *Id.* at 51 (quoting C.A.Doc. 33-1 at 12–13). Justice Gorsuch disagrees. *Martin* Transcript at 37 ("Really? . . . Checking the street sign, is that . . . asking too much?"). So does Justice Sotomayor: "[I]t is hard to see how Guerra's . . . failure to check the street sign or house number on the mailbox . . . involved the kind of policy judgments that the discretionary-function exception was designed to protect." *Martin*, 605 U.S. at 419 (Sotomayor, J., concurring).

Federal law-enforcement officers may elect to serve a search warrant in the dead of night. But once they decide to do so, the officers are "obligated to use due care to make certain" that they execute the warrant at the right place. *Indian Towing*, 350 U.S. at 69. Here, Guerra's failure to check the address on the mailbox was not a policy decision. It was a careless, preventable mistake that traumatized two law-abiding adults and a seven-year-old child. *See Rayonier Inc. v. United States*, 352 U.S.

---

C.A.Doc. 62 at 50. *Shivers* does not address carelessness—or the circuit split surrounding it—at all.

315, 317 (1957) (reversing circuit court's dismissal of FTCA complaint alleging "carelessness by the Forest Service in fighting [a] fire"). Such an oversight is not "susceptible to policy analysis."[8] *Gaubert*, 499 U.S. at 325.

### c. The discretionary-function exception rarely—if ever—applies to proviso torts.

This Court's construction of the discretionary-function exception "should not ignore the existence of the law enforcement proviso, or the factual context that inspired its passage[.]" *Martin*, 605 U.S. at 420 (Sotomayor, J., concurring). Plaintiffs have explained that the discretionary-function exception rarely, if ever, bars claims allowed by the law-enforcement proviso because Congress enacted each provision with different goals in mind. *See* C.A.Doc. 54 at 65–70.

The government accuses Plaintiffs of seeking to categorically impose tort liability at the operational level, an interpretation of the discretionary-function exception *Gaubert* foreclosed. *See* C.A.Doc. 62 at 46 (citing *Gaubert*, 499 U.S. at 325). This mischaracterizes Plaintiffs' position and *Gaubert*'s analysis. *Gaubert*

---

[8] If the government contends that Guerra merely abused his discretion by raiding Plaintiffs' home, the government is wrong. *See* C.A.Doc. 62 at 50; 28 U.S.C. § 2680(a). That argument asks the Court to hold that Guerra abused discretion he never possessed. *See* Doc. 89 at 24 (warrant authorizing Guerra to raid 3756 Denville Trace, not Plaintiffs' home). No one would say a pizza delivery driver "abused his discretion" by dropping a box off at the wrong house. They would say he made a careless delivery.

merely recognized that the discretionary-function exception extends to the implementation of policy at an operational level. But even at that level, the federal employee must be vested with discretion to implement an "established governmental policy." *See Gaubert*, 499 U.S. at 324. Here, no "established governmental policy" gave Guerra discretion to decide which house to raid. Indeed, Guerra *violated* federal policy by raiding a house he had no authority to search. *See* Doc. 89 at 24; Part I.A, *supra*.

The United States next worries that, if the discretionary-function exception does not bar proviso claims like Plaintiffs', judges will be forced to second-guess "policy judgments made in the exercise of 'one of the basic functions of government': law enforcement." C.A.Doc. 62 at 46–47 (quoting *Foley v. Connelie*, 435 U.S. 291, 297 (1978)). This fear is unfounded. As the government points out, federal law gives law-enforcement officers "authority to execute searches, to seize evidence, and to make arrests for violations of federal law." *Id.* at 46 (citations omitted). When officers exercise this authority lawfully—*i.e.*, when they search the right place, seize evidence they are allowed to seize, or arrest a person for whom they have a warrant—there can be no FTCA liability because sovereign immunity was never waived. *See* 28 U.S.C. § 1346(b); C.A.Doc. 54 at 67 & n.12.

Simply put: The government need not worry about FTCA liability for lawful searches and seizures because those actions are not torts. By definition, an intentional tort *must be* "unlawful,"[9] "illegal,"[10] "[un]justified,"[11] or similarly wrongful.[12] If federal law explicitly allows an officer to take a challenged action, the action cannot be tortious as a matter of state law. This means that a plaintiff challenging an officer's lawful action will fail to pierce sovereign immunity in the first place, *see* 28 U.S.C. § 1346(b)(1) (requiring that conduct be tortious under state law), and federal courts will lack subject-matter jurisdiction over her suit, *see Brownback v. King*, 592 U.S. 209, 217 (2021) ("[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional."). At that point, the government does not need the discretionary-function exception to *reinstate* sovereign immunity; it was never waived. That's why the FTCA's exceptions are "simply inapplicable" when challenged conduct falls "outside the scope of [the statute's] general waiver" of immunity. *Sheridan v. United States*, 487 U.S. 392, 400 (1988).

---

[9] *See, e.g.*, Ga. Code Ann. § 51-7-20.

[10] *See, e.g.*, Ga. Code Ann. § 51-1-14.

[11] *See, e.g.*, Ga. Code Ann. § 51-1-13.

[12] *See, e.g.*, Ga. Code Ann. § 51-7-81 (explaining that abuse of process requires a lack of "substantial justification").

But if a federal law-enforcement officer commits an intentional tort—an action which definitionally requires a lack of legal justification—the discretionary-function exception cannot apply. As the Supreme Court has explained, the exception comes into play only when a government employee commits "a *legally authorized* activity" that "would be tortious" if committed "by a private individual[.]" *Dalehite*, 346 U.S. at 27 (emphasis added) (citation omitted). Intentional torts cannot satisfy this standard.

Finding the discretionary-function exception inapplicable in cases like this one will not call federal policy into question or open the floodgates to frivolous litigation. But reading the exception too broadly threatens to nullify the proviso in its heartland cases—this case being a prime example. *See Martin*, 605 U.S. at 420 (Sotomayor, J., concurring) ("[A]ny interpretation should allow for liability in the very cases Congress amended the FTCA to remedy.").

The United States nevertheless maintains that, when Congress passed the proviso, it did not actually intend for claims like Plaintiffs' to proceed. C.A.Doc. 62 at 52. According to the government, the proviso merely "removed the added layer of immunity provided by the intentional-tort exception." *Id.* This argument did not go over well before the Supreme Court. *See Martin* Transcript at 41 (Sotomayor, J.) ("[T]hat is so ridiculous."). And for good reason. "When Congress amends

24

legislation, courts must presume it intends the change to have real and substantial effect." *Van Buren v. United States*, 593 U.S. 374, 393 (2021). Congress would not have enacted the proviso if the very claims that sparked its passage—those arising out of wrong-house raids by federal agents enforcing narcotics laws—would be doomed from the start by the discretionary-function exception.

## II.   As both the Supreme Court and the district court recognized, a private person in like circumstances would be liable for the torts inflicted on Plaintiffs.

Because the discretionary-function exception does not bar Plaintiffs' claims, this Court must next "ask whether, under Georgia state law, a 'private individual under like circumstances' would be liable for the acts and omissions the plaintiffs allege, subject to the defenses discussed in §2674[.]" *Martin*, 605 U.S. at 414. The Supreme Court simplified this inquiry by explaining that "Georgia law would permit a homeowner to sue a private person for damages if that person intentionally or negligently raided his house and assaulted him." *Id.* at 410 (citations omitted). Thus, the only question left for this Court to decide is whether any other defense listed in 28 U.S.C. § 2674 bars Plaintiffs' claims. *See id.* at 414. Section 2674 allows the United States to assert two types of defenses to FTCA claims: "judicial and legislative immunity," and "any other defenses to which the United States is entitled."

25

The government does not address judicial or legislative immunity, seemingly agreeing that neither applies. Nor does the government attempt to identify "any defense[] to which the United States is entitled."[13] Instead, it takes aim at the FTCA's imposition of private-person liability. Section 1346(b) plainly states that FTCA liability arises when "the United States, if a private person, would be liable to the claimant[.]" 28 U.S.C. § 1346(b)(1). Yet the government attempts to rewrite this statutory requirement by suggesting that "'the appropriate private person analog' here is whether an individual, 'acting under color of state law,' would be personally liable in similar circumstances." C.A.Doc. 62 at 60 (quoting *Liggion v. United States*, 696 F. Supp. 3d 1257, 1272 (N.D. Ga. 2023)). By shifting the focus from private persons to those acting under color of state law, the government seeks to avail itself of the "good faith" privilege available to Georgia law-enforcement officers (but *not* private persons). *Id.* at 59 (citing Ga. Code Ann. § 51-7-21).

The Supreme Court, however, has "consistently adhered to this 'private person' standard." *See United States v. Olson*, 546 U.S. 43, 46 (2005). And "when

---

[13] To the extent the United States contends that a private person would not be liable for the torts Guerra and his SWAT team inflicted on Plaintiffs, *see, e.g.*, C.A.Doc. 62 at 63–70 (asserting private-person defenses to Plaintiffs' claims for assault, battery, trespass, interference with private property, infliction of emotional distress, and negligence), its arguments are wrong for the reasons the district court explained, *see* Doc. 124 at 29–37.

the statutory language is plain," courts "must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). Thus, the Court has repeatedly warned against reading nonexistent "limitation[s] into [the FTCA's] unambiguous text." *Millbrook v. United States*, 569 U.S. 50, 57 (2013); *see also, e.g.*, *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 383 (1949) ("The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced." (citation omitted)).

Applying Section 1346(b)'s private-person standard would not subject the government to strict liability or anything like it. *See* Part I.A, *supra*. *Contra* C.A.Doc. 62 at 59–60. It simply means that the government may not invoke tort defenses that are available only to government officials.[14]

The Supreme Court has repeatedly—and forcefully—rejected the government's attempts to graft a "uniquely governmental" activities exception onto Section 1346(b)(1). *See, e.g.*, *Indian Towing*, 350 U.S. at 64; *Rayonier*, 352 U.S. at 318–19; *Berkovitz*, 486 U.S. at 539. By its terms, Section 1346(b) already imposes

---

[14] Even if Georgia's good-faith privilege *could* apply to FTCA cases, it would not shield Guerra's actions. That defense is only available "[i]f imprisonment is by virtue of a warrant[.]" Ga. Code Ann. § 51-7-21. Because Guerra had no warrant for Plaintiffs or for their home, the defense does not apply. *See Franklin v. Amerson*, 45 S.E. 698, 700 (Ga. 1903).

numerous limits on FTCA lawsuits. *See* 28 U.S.C. § 1346(b)(1). "Had Congress intended to further narrow the scope of" the FTCA, it could have done so. *Millbrook*, 569 U.S. at 57. Yet it did not. If the United States wants to change the FTCA's private-person liability standard, it should go to Congress—not the courts—for redress. Until then, this Court should apply Section 1346(b)'s plain text.

## CONCLUSION

For the reasons discussed above, this Court should (1) hold that the discretionary-function exception does not bar Plaintiffs' negligent- or intentional-tort claims, (2) hold that, under Georgia law, a private person in like circumstances would be liable to Plaintiffs in tort, and (3) remand this case for trial.

Respectfully submitted on December 12, 2025,

<div style="display:flex">

Lisa C. Lambert
LAW OFFICE OF
LISA C. LAMBERT
245 N. Highland Ave.,
Suite 230-139
Atlanta, GA 30307

Zack Greenamyre
MITCHELL SHAPIRO
GREENAMYRE & FUNT
881 Piedmont Ave. NE
Atlanta, GA 30309

Jeffrey R. Filipovits
SPEARS & FILIPOVITS

</div>

/s/ Patrick Jaicomo
Patrick Jaicomo
  *Lead Counsel*
Anya Bidwell
Dylan Moore
Jared McClain
INSTITUTE FOR JUSTICE
901 N. Glebe Rd.,
Suite 900
Arlington, VA 22203
(703) 682-9320
pjaicomo@ij.org

28

315 W. Ponce de Leon Ave., Suite 865
Decatur, GA 30030

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 6,425 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity A font.

December 12, 2025.

/s/ Patrick Jaicomo
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which automatically sends notice of such filing to all parties and counsel of record.

/s/ Patrick Jaicomo
*Counsel for Plaintiffs-Appellants*